1           IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF OREGON

3   FEREYDUN TABAIAN and AHMAD        )
    ASHRAFZADEH,                      )
4                                     )
              Plaintiffs,             )  No. 3:18-cv-00326-HZ
5                                     )
         vs.                          )  June 27, 2018
6                                     )
    INTEL CORPORATION,                )  Portland, Oregon
7                                     )
              Defendant.              )
8   ---------------------------------

9

10

11

12

13

14

15                  **TELEPHONIC HEARING**

16              TRANSCRIPT OF PROCEEDINGS

17      BEFORE THE HONORABLE MARCO A. HERNANDEZ

18        UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23

24

25

```
1                              APPEARANCES

2    FOR THE PLAINTIFF:    Jeffrey S. Love
                           Mark W. Wilson
3                          Klarquist Sparkman LLP
                           121 S. W. Salmon Street
4                          Suite 1600
                           Portland, OR  97204
5
                           Howard L. Close
6                          Kathleen S. Rose
                           Patrick B. McAndrew
7                          Wright Close & Barger, LLP
                           One Riverway
8                          Suite 2200
                           Houston,  TX 77057
9
                           Luke Motley, IV
10                         Law Offices of Luke Motley, IV PC
                           111 s. Travis Street
11                         Sherman, TX  75090

12   FOR THE DEFENDANT:    Renee E. Rothauge
                           Markowitz Herbold PC
13                         1211 S. W. Fifth Avenue
                           Suite 3000
14                         Portland, OR  97204-3730

15                         Michael J. Summersgill
                           Jordan L. Hirsch
16                         Wilmer Cutler Pickering Hale and Dorr LLP
                           60 State Street
17                         Boston, MA 02109

18   ALSO PRESENT:         Mashood Rassam, Intel counsel

19   COURT REPORTER:       Nancy M. Walker, CSR, RMR, CRR
                           United States District Courthouse
20                         1000 S. W. Third Avenue, Room 301
                           Portland, OR  97204
21                         (503) 326-8186

22

23

24

25
```

1               P R O C E E D I N G S

2           THE CLERK:  Good morning.  This is the matter of

3   Tabaian, et al. versus Intel Corporation, Case No. 18-cv-326,

4   Judge Hernandez presiding.

5           This is the time set for a Rule 16 conference.

6   Please note we have a court reporter present, so please

7   identify yourself each time you speak.

8           Counsel, please tell me who all is on the record,

9   starting with the plaintiff.

10          MR. CLOSE:  Good morning, Your Honor.  This is Howard

11  Close with Wright Close & Barger in Houston, Texas.

12          MR. MOTLEY:  This is Luke Motley with Luke Motley, IV

13  PC.

14          MR. LOVE:  Jeff Love with Klarquist Sparkman, and

15  also Mark Wilson with Klarquist Sparkman.

16          MR. McANDREW:  And additionally, Your Honor, Patrick

17  McAndrew and Kathleen Rose with Wright Close & Barger in

18  Houston.

19          THE CLERK:  And for defendant?

20          MS. ROTHAUGE:  Good morning.  For Intel, I am Renee

21  Rothauge of Markowitz Herbold.  I'm joined by Michael

22  Summersgill of Wilmer Hale, lead trial counsel; Jordan Hirsch

23  of Wilmer Hale; and Mashhood Rassam, Intel.

24          THE COURT:  Good morning.

25          MR. SUMMERSGILL:  Good morning, Your Honor.

```
 1              THE COURT:  Good morning.  This is Judge Hernandez.
 2              We're here to try to put together a schedule for you
 3   leading up to a Markman hearing.  I know that you are asking
 4   that -- I think -- that we use Western Washington's local
 5   rules regarding patent.
 6              Are both sides asking that I do that, turning first
 7   to the plaintiff?
 8              MR. CLOSE:  Yes, Your Honor.  We are.
 9              THE COURT REPORTER:  This is the reporter.  I'm going
10   to remind you, I don't know who is speaking.
11              MR. CLOSE:  Yes, ma'am.  I apologize.  This is Howard
12   Close.
13              Yes, we are, Your Honor.
14              THE COURT:  Thank you.
15              And is the defense in agreement with that?
16              MR. SUMMERSGILL:  Your Honor, this is Michael
17   Summersgill.
18              And, no, we are not in agreement on that.  Our
19   understanding, based on having been in this jurisdiction
20   before and speaking with Ms. Rothauge, is that typically the
21   Courts apply, you know, a particular course that's appropriate
22   for a given case, and that's one of the reasons why patent
23   local rules have not been adopted.  And we think that's
24   particularly appropriate for this case, and that's why we
25   disagree with that.
```

1          And I can get into that whenever it's appropriate,

2    Your Honor.

3          THE COURT:  No.  That's okay.  I like to do whatever

4    I want to do anyway, so don't worry about it.

5          (Laughter.)

6          THE COURT:  All right.  So then let's talk about what

7    we need to accomplish together between now and your *Markman*

8    hearing.

9          And I want to first turn to the plaintiff.  And on my

10   list of things to do are figuring out the infringement and

11   invalidity contentions, disclosing -- disclosure of claims to

12   construe and the terms to construe.  My job will be to limit

13   the number of those claims and terms to construe so that you

14   don't drive me crazy by giving me too many.

15         As I understand it, there's only one patent in issue

16   and one claim in issue.  So let's confirm that.

17         MR. CLOSE:  There's one independent claim, Your

18   Honor, and I think there's 18 dependent claims, but there's

19   only one independent claim at issue.

20         THE COURT:  Oh, okay.  All right.

21         And then we need to kind of take into

22   consideration -- I'm not familiar with the technology.  It's

23   described to me in a way that makes it so that I generally

24   understand what it does, but I'm sure that at some point it

25   may become more technical than I'm familiar with.  And so one

of the things to keep in the back of your minds is if this
technology is that, how you're going to educate me in a way
that is understandable.

So let's start at the beginning, and I'm turning to
the plaintiffs and your list of things that need to be
accomplished and the schedule that you think you will need in
order to get those things accomplished.

MR. CLOSE:  Certainly, Your Honor.  This is Howard
Close for the plaintiffs.

We've worked with the other side on the various
issues in the Rule 26 order.  And basically there's a couple
of things that we have disagreement on, and those are the
things I think we need to get accomplished with the Court
today.

One of them is we would like to get discovery so that
we could be able to -- so that the Court would know, when it's
evaluating the claim terms, basically how this all fits
together, whether what we're saying our patent does matches
what they say their product does.

We've proposed some discovery.  We have a
disagreement on the timing of that discovery, but we think we
need to get that done.

We have a disagreement on deposition limitations.
We had talked about an hour limit.  The other side had talked
about a specific number of depositions and specifically

1   limiting us to a specific number of depositions for Intel.  We

2   just weren't able to agree on that point.

3          And then the third thing is a protective order.

4   We're working on a protective order.  We had a conference call

5   with defendants today on a proposed way to try to work out a

6   protective order.  So we need to work out those issues so that

7   we can get this thing moving forward.

8          THE COURT:  On the discovery part of it, do you have

9   agreement as to the scope of discovery and what it will -- you

10  know, what it's going to include and what it's not going to

11  include?

12         MR. CLOSE:  I don't -- I don't know if we have --

13         UNIDENTIFIED SPEAKER:  We haven't discussed it.

14         MR. CLOSE:  We haven't really discussed scope so

15  much.  It's more of the timing, Your Honor, that we've been

16  having a hard time agreeing on.  We'd like to have discovery

17  of -- some basic core discovery about the product at issue so

18  that we can make sure, when we're trying to talk to you about

19  what claim terms we need to construe and things like that, we

20  know whether that's important or not, based on the product at

21  issue.

22         We're not trying to discover all types of outside

23  things.  In fact, we're fine with pushing off, you know,

24  discovery on damages and things like that, since we're not

25  worried about those, as opposed to focusing in on whether or

1    not the product that Intel makes infringes on our patent.

2              And so that's, I think, the only scope issues that

3    we've really talked about.

4              THE COURT:  And have you figured out -- and maybe you

5    believe that your claim does it sufficiently, but what the

6    specific infringement contentions are?

7              MR. CLOSE:  We're --

8              UNIDENTIFIED SPEAKER:  We're working on that.

9              MR. CLOSE:  We're working on that.  But we think that

10   we need -- there are certain -- you know, all we have are what

11   we know about our patent and what we know about the Intel

12   product from publicly available data.  But we don't have the

13   specific data that's necessary to make sure that we're

14   accurately describing how the Intel product infringes on our

15   particular patent.

16             THE COURT:  So what you're saying is you need

17   discovery in order to define for the defendant what the

18   specific infringement contentions are.

19             MR. McANDREW:  Yes, Your Honor.  This is Patrick

20   McAndrew, also for the plaintiffs.

21             And what we really would like to do is to be able to

22   have some discovery take place prior to the claim construction

23   that occurs.  And this kind of requires us to do some

24   discovery on the accused device so we know what claim terms

25   need resolution and what issues really are valid, mainly so we

1    don't ask you to construe a term without guidance and, you

2    know, essentially have the Court improperly issue some sort of

3    advisory opinion.

4         We would like to have the discovery take place early

5    on.  And if we can do that, I think, you know, we can move

6    towards a greater understanding by both sides of what issues

7    are valid and whether or not, you know, as the defendants

8    contend, the case can be disposed of on summary judgment.

9    We'd like to know that very quickly.

10         THE COURT:  What kinds of things are you going to be

11   asking for?

12         MR. McANDREW:  Sure.  You know, Your Honor, we

13   exchanged, both sides -- I'm sorry.  Again, this is Patrick

14   McAndrew.

15         We exchanged initial discovery and we sent the

16   plaintiffs one -- the defendant one interrogatory that

17   requests them to identify schematics and other design

18   documents that they contend support their non-infringement

19   allegations that are listed in its Answer and Counterclaim and

20   describe how those support the allegations.

21         We additionally sent a number of requests for

22   production that cover a lot of those issues as well, and Intel

23   has propounded discovery on us as well.  Those responses are

24   due on Monday.

25         And, as Mr. Close said, we had an initial

1  conversation today with counsel for Intel regarding the

2  protective order and trying to get closer to where we are,

3  where the parties currently are.  And we proposed to go back

4  and speak again early next week.

5          You know, one possibility, Your Honor, could be that

6  we allow the parties to try to work out the protective order

7  and do some discovery and schedule another Rule 16 conference

8  a little bit down the road, that then once we have a better

9  understanding of where we are, we can really lay out the road

10  map to get to the *Markman* hearing.

11          THE COURT:  Okay.  Thank you.

12          Let me hear from the defendants.

13          MR. SUMMERSGILL:  Thank you, Your Honor.  This is

14  Michael Summersgill.

15          A couple of things.  Let me start with the last point

16  Your Honor made about at some point giving you a helpful

17  understanding of the technology.  I'm sure the parties can

18  work together, as we've done in other cases, to put together a

19  tutorial where we can walk through the technology.

20          As far as these cases go, the technology in this case

21  is relatively straightforward.  It's about a particular type

22  of voltage regulator which, as its name suggests, it's

23  something that regulates voltage and does it in a particular

24  way.  But I think we can work with the other side maybe to

25  make proposals on a tutorial ahead of the claim construction.

1          There is no dispute that we'll be producing
2   discovery, and we're working on that right now.  We're working
3   on getting our -- collecting our documents and getting them
4   ready for production.  But the suggestion that the plaintiffs
5   need to delay the claim construction process until after they
6   have our documents is just inconsistent with Federal Circuit
7   law.

8          As Your Honor is aware, the *Phillips* case, the
9   Federal Circuit *Phillips* case, dictates or provides rules for
10  claim construction.  And claims are supposed to be construed
11  based on the plain language of the claims, the patent
12  specification, and the file history.  The operation of our
13  products is completely irrelevant to the -- to the proper
14  construction of the claims.

15         Now, Your Honor, the two primary disputes, from our
16  perspective, on the scheduling issues relate to the timing of
17  claim construction and then the timing of the infringement and
18  invalidity contentions.  And what we've proposed is -- is a
19  schedule that brings the claim construction process a little
20  bit earlier in the schedule, and it's a schedule that
21  proposes infringement and invalidity contentions that actually
22  have some teeth, that mean something.  And we have proposed
23  that because we think this is a case that is susceptible to
24  early resolution.  And let me explain why we -- why we think
25  that.

1          The patent is directed, as I said, to a particular

2    type of voltage regulator.  It's a voltage regulator that uses

3    temperature data to make certain adjustments, without getting

4    into the details, but it's using temperature data to adjust

5    what are called feedback loops, both a circuit feedback loop

6    and a voltage droop feedback loop.

7          Intel simply does not do that.  We've spoken to the

8    Intel engineers.  Intel doesn't do that.  And so we think that

9    once the claims are construed, plaintiffs will not have a

10   basis for asserting infringement.  We don't think there is an

11   infringement argument under any plausible construction of the

12   claims.

13         And so our proposals are designed to get the claims

14   construed as early as possible and to get the parties'

15   positions out in front as early as possible so that we can see

16   what the real disputes are and we can set the case up for

17   possible early resolution.

18         Now, so our -- on the claim construction issue, we're

19   proposing that the parties propose terms for construction on

20   July 13, propose construction by August 10, and then the

21   completion of claim construction briefing by November 21st.

22         And we'd submit, Your Honor, that this proposal is

23   more efficient than the plaintiffs' proposed for three

24   reasons.  One, it's going to make discovery more efficient.

25   Of course, the issues of infringement and invalidity often

depend in part on claim construction, on the scope of the

claims.  And if we know what the parties' positions are on

claim construction and then have the Court's ruling on claim

construction sooner rather than later, we can focus the

discovery on the issues that are relevant under that

construction.

Second, as I said, we think this case is susceptible

to early resolution.  And resolving the claim construction

early will clarify the scope of the claims and we believe show

that they can't make out a case of infringement, so it will

set the case up for early summary judgment.

And there's a host of cases out there, some of which

we cited in our section of the 26(f) report, which talk about

the -- the benefit of doing an earlier claim construction in

cases such as this, the *Lexos Media IP* case that we cited, the

*MyMedical Records* case that we cited.

And there's an additional case.  It's a District of

Delaware case from 2016, the *MorphoSys AG v. Janssen Biotech*

case.  And I think it provides a nice sort of explanation of

why this is important.  The Court there granted early claim

construction where the claim terms at issue were relevant to

every claim; and that's, of course, true here because there's

only one independent claim.  It appeared possible that if the

defendant's proposed constructions are adopted, those

constructions will ultimately be case dispositive.  We believe

1    that to be true here.  And there's not much discovery required

2    for the claim construction process.  And, again, we believe

3    that's true here because their claims, under *Phillips,* are

4    supposed to be construed based on the intrinsic evidence, the

5    patent and the file history.

6            And the third piece I'd say about doing claim

7    construction according to our schedule is that there's no

8    reason that we can't do it.  You know, the plaintiff certainly

9    had to have a basis before they filed this case, both an

10   understanding of their own patent and a basic if not more

11   developed understanding of what we do and why they believe we

12   infringe.  And they have all of the information they need now

13   to construe the claims of their own patent.  As I said, what

14   our products do is irrelevant to the construction of the

15   claims.

16           So for all of those reasons, we think it makes more

17   sense and would be much more efficient to adopt our claim

18   construction proposal.

19           THE COURT:  Do you anticipate having any experts

20   testifying regarding claim construction, you know, telling me

21   that a person of ordinary skill in the art is going to look at

22   this particular term in a particular way?

23           MR. SUMMERSGILL:  Your Honor, this is Michael

24   Summersgill again.

25           You know, not necessarily.  It's not always the case.

1     And, as I said, it's the intrinsic evidence that is relevant.

2           Now, if the plaintiffs were to submit a declaration

3     from an expert taking positions that we think are contrary to

4     what one of ordinary skill in the art would say, in that

5     situation we would certainly want to submit a responsive

6     declaration.  But, you know, typically we try to avoid expert

7     declarations for claim construction because, again, it's the

8     intrinsic evidence that's supposed to be relevant.

9           MR. LOVE:  Your Honor, this is Jeff Love.

10          May I just respond to the issue about the need for

11    discovery before the claim construction process?

12          THE COURT:  Sure.

13          MR. LOVE:  Yes.  This is Jeff Love for the

14    plaintiffs.

15          I'd refer the Court to the lead case on the

16    helpfulness of discovery and evidence about the accused

17    product to the claim construction process, which is *Wilson*

18    *Sporting Goods v. Hillerich & Bradsby*, 442 F.3d 1322, 1326 and

19    1327.  It's a 2006 Federal Circuit case.

20          And just what that case states is that knowledge of

21    the "product or process provides meaningful context for the

22    first step of the infringement analysis," which is claim

23    construction.  And it's "convenient for the court to

24    concentrate on those aspects of the claim whose relation to

25    the accused device is in dispute."

1          And I have before me several other cases that have

2    followed that, and we cited that as well, bench Circuit cases.

3          And, you know, the point is that what the defendants

4    have proposed is going into claim construction blind, without

5    the -- without the Court having the benefit or the plaintiffs

6    having the benefit of knowing what's really in factual

7    dispute.  Because the point of claim construction is not an

8    abstract exercise of just looking at the patent and the file

9    history and the intrinsic evidence as what's said.  The point

10   is to do that in order to facilitate resolution of disputes

11   relevant to infringement and invalidity.

12         And that's why to just be forced to choose, for

13   example, claim terms to construe, when the plaintiffs have had

14   not the benefit of looking at the documents that the

15   defendants have in hand -- they just told you they talked to

16   their experts at Intel, or engineers, and their Intel

17   engineers tell them that "We don't infringe for several

18   reasons."  And Monday is their deadline for where they should

19   be producing the pertinent information.

20         You know, and so what we ought to do is make sure

21   that we get that information so that the plaintiffs can

22   understand what's in dispute factually.  And then we can

23   tailor the selection of claim terms accordingly so that when

24   the Court goes through the exercise to construe them, it will

25   have a much, much better chance of actually resolving the

1    disputes.

2            And with respect to the documents that we need, my

3    understanding is that the defendants are prepared to produce

4    RTL-level source code and then also schematics that will

5    include, you know, a full description of what's at issue in

6    the case, which is this voltage regulator.

7            We have asked for them, in our interrogatories, to

8    identify the particular pages, essentially, of those two types

9    of documents -- the source code and the schematics -- that are

10   actually pertinent to the non-infringement defenses that they

11   rely on.  Until they give us an interrogatory response that

12   does that -- I think we're talking about, you know, a

13   relatively few pages that are going to be answering that

14   question.  And, again, they asked for an extension to Monday,

15   but not beyond that.  We understand that they should be

16   prepared to produce those on Monday.

17           We've got to work out the protective order issue.

18   We're agreeable to the Court's standard two-tier protective

19   order, but they want some heightened protection.  If they

20   could just produce those documents now, subject to the Court's

21   two-tier protective order, while we're working out other

22   issues, that's the best way to get ready for an early claim

23   construction.

24           But to set a schedule before we've got the documents

25   or know how long it's going to take us to get those documents

that Intel has in hand and they're already saying, you know, that their engineers have identified what's really at issue, that makes no sense.

MR. SUMMERSGILL:  Your Honor, this is Michael Summersgill.  May I respond to a couple of those points?

THE COURT:  Sure.

MR. SUMMERSGILL:  The first thing is we actually aren't the ones that asked for the extension.  Plaintiffs asked for a two-week extension, and we agreed with it.  So we didn't ask for the extension.

Second, we're familiar with the *Wilson Sporting Goods* case.  And I think it's important to note that *Wilson* doesn't say that you look to the defendant's products to determine the proper construction of the claims.  It doesn't say that at all.  *Phillips* and all of the claim construction cases are -- are construed based on the claims, the specification, and the file history.  And, in fact, the *Wilson* case itself says, "This court, of course, repeats its rule that 'claims may not be construed with reference to the accused device.'"

So that's -- so the *Wilson* case doesn't say that discovery regarding a defendant's products are necessary.  It says claims are not to be construed with respect to the accused device.

Sometimes understanding what is at dispute can help focus the claim construction dispute and what terms to choose.

1   But, you know, we've done a little bit of that already with

2   them, both in meet and confers and on this conference.  We've

3   said, among other things, we don't use temperature data in the

4   particular way that's required by these claims.

5          And, you know, so -- and typically plaintiffs don't

6   often propose many terms for construction.  So I think this is

7   a little bit of a red herring.  We would propose somewhere

8   between five and seven terms for construction.  We're prepared

9   to do that immediately.  We're prepared to exchange proposed

10  claim constructions according to the schedule and proceed with

11  the claim construction process.  And that will, I think, very

12  clearly focus and narrow the issues.

13         And, you know, if the plaintiffs can now tell you

14  and tell us how they believe we use temperature data as

15  required by the claims, then -- you know, then maybe we don't

16  have as much of a position here.  But we know, based on our

17  discussions with our engineers, that we don't do that.

18         And, finally, Mr. Love's suggestion that we can

19  simply, you know, very quickly go out and collect and produce

20  all of the documents is just not realistic.  We're working on

21  that, but there are a lot of different places to look.

22  There's a lot of source code.  We've got to get through the

23  source code, find the relevant parts, find the relevant

24  documents.  We're working diligently, but it's a massive and

25  expensive process.

1          And, frankly, that's one of the reasons why we want

2     to have an early claim construction process, to reduce

3     that -- reduce that burden.  But the suggestion that we can

4     simply just go over to Intel, get the documents, and produce

5     them right away is just simply not realistic.

6          THE COURT:  Is it the --

7          MR. LOVE:  Your Honor, Jeff Love.  May I respond?

8          THE COURT:  No.  Hang on a second.  It's my turn.

9          Turning to the defendants, is it the defendant's

10    contention that the only issue right now is that the

11    technology that the plaintiffs are suggesting that the defense

12    used is not technology that the defendants are using?  Is that

13    your defense, or are there other things floating around out

14    there that you haven't gotten to yet?

15         MR. SUMMERSGILL:  We -- our position, Your Honor, is

16    we don't use the system that's described in the claims of the

17    '944 patent.  We also believe the claims are invalid and that

18    the claim construction, I think, would clarify both of those

19    issues.

20         THE COURT:  And have you described for the plaintiffs

21    specifically how you think their claims are invalid?

22         MR. SUMMERSGILL:  We haven't yet.  And the reason we

23    haven't yet is because, again, it's their burden to come

24    forward first with infringement contentions.  In fact, we both

25    agreed to that in the schedule; that is, their infringement

1    contentions should come before our invalidity contentions.

2    But we're certainly prepared to present our invalidity

3    contentions once they've presented their infringement

4    contentions.

5         And one of the reasons for that, Your Honor, is

6    because sometimes the invalidity argument depends in part on

7    the infringement contention.  If they take a very broad view

8    of their patent and say, "It covers A, B, C, D, and E," we may

9    disagree with that, but we then may say, "Okay.  Well, A, we

10   just disagree with that.  B, our products don't do that.  And,

11   C, even if you're right that your patent covers that, then you

12   cover the prior art and the patent is invalid."

13        So that's why, you know, in these local patent rules

14   and in typical patent cases, when you have contentions, the

15   invalidity contentions follow the infringement contentions.

16        THE COURT:  And what the plaintiff is telling me is

17   that they're not quite ready to tell you specifically what

18   their infringement contentions are because they're not certain

19   what your technology does.

20        MR. SUMMERSGILL:  And, Your Honor -- again, this is

21   Michael Summersgill.

22        Just to clarify, looking at our whole schedule, the

23   sequence -- the relevant sequence here is the parties propose

24   terms for construction.  The parties propose proposed

25   constructions.  In late August we produce our technical

1   production.  The claim construction -- I'm sorry.  We produce

2   our documents in late August.  The parties then engage in

3   claim construction briefing.  And then in the fall we

4   have -- we have infringement contentions and invalidity

5   contentions.

6           So they would have our technical production before

7   claim construction briefing is submitted.  So they'd have that

8   if they need it.  As I said, I don't think they should need

9   it, but they would have it.  And they would have our technical

10  production before they're required to submit their

11  infringement contentions.

12          THE COURT:  And I'm sorry.  I'm looking at your

13  schedule, and you're saying that all of that information is

14  going to be disclosed when?

15          MR. SUMMERSGILL:  All -- so, Your Honor, just in

16  terms of the relevant claim construction and contention dates,

17  we would -- according to our schedule, disclosure of asserted

18  claims would come -- we had June 22.  That would obviously

19  have to be pushed back.  We propose July 13.  Parties would

20  propose terms for construction on July 13.  Parties would

21  propose actual constructions August 10.  We would then

22  complete our technical production, sufficient to show how our

23  products operate, by August 31st.

24          Plaintiffs would submit their infringement

25  contentions on October 26th.  We would submit our invalidity

contentions on December 21.  And, actually, claim construction
briefing would be completed by November 21.

So the parties -- so at a high level, the parties
propose the terms and -- the terms proposed for construction
first.  We then complete our technical document production.
They -- they give us their infringement contentions.  We
engage in the claim construction process, and we give them our
invalidity contentions.

THE COURT:  All right.  Thank you.

I know the plaintiffs wanted to respond.  Go ahead.

MR. LOVE:  Thank you, Your Honor.  This is Jeff Love.

With respect to *Wilson Sporting Goods*, again, the
point the Court emphasized -- so, for example, the holding by
that Court is that "despite entry of a final judgment, neither
the trial court nor the parties supplied this court with any
information about the accused products.  Thus, this record
affords this court no opportunity to compare the accused
products to the asserted claims."  And "this sparse record
lacks the complete context for accurate claim construction."

So, I mean, two things are being conflated by the
defendant.  One of them is whether information about the
accused products is going to determine the substance of the
construction the Court makes.  And the point that *Wilson*
*Sporting Goods* and other cases point out is, no, that's going
to be based on the patent.  But the substance of the accused

1    product is going to inform the Court and the parties what's at

2    issue.

3            So, for example, if they say, "Well, we don't use

4    temperature the way claimed in the patent," and then it turns

5    out they measure in Centigrade and they want to argue that the

6    patent is limited to Fahrenheit, you know, we need to know in

7    advance what the issue is going to be, whether Centigrade and

8    Fahrenheit matter.  And that's true with every aspect of claim

9    construction, so that we're -- so that we have an opportunity

10   to ask the Court for constructions that matter.

11           You know, the other thing is they're proposing, you

12   know, essentially hiding the ball on their non-infringement

13   theory for months.  They say they know what the

14   non-infringement theory is.  They say they've talked to their

15   engineers and they're fully informed on that.

16           We've got an interrogatory response due Monday.  At a

17   minimum, even if they can't find all the documents supporting

18   that theory, they can produce an interrogatory response that

19   lets us know, you know, for example, "Well, we have a

20   temperature sensor, but it doesn't do exactly what we think

21   the claim requires because it does A, B, and C."  They can

22   just spell that out to us and they can produce what documents

23   they do have in hand.

24           THE COURT:  Thank you.

25           I'm not ready right now to set forth what the

1    appropriate schedule is going to be in this case.  I want to

2    get back together with you all in about 10 days.  I'm going to

3    look at my calendar really quickly.  I'm going to tell you

4    what day and time that's going to be.

5          In the meantime, I will read -- I'll take a look at

6    *Wilson*.  I haven't read that, at least not recently.  So I'll

7    take a look at that case.  And then I'll be ready to set forth

8    a schedule the next time we visit with each other.  I think I

9    understand the parameters of each side's argument.

10         So hang on just a moment.

11         (There is a brief pause in the proceedings.)

12         THE CLERK:  2:00 on July 9th.

13         THE COURT:  July 9th at 2:00.  Does that work for

14   plaintiff?

15         Well, it must.  You have a lot of lawyers there.

16   Certainly somebody can be there by that date.

17         MR. CLOSE:  Yes, Your Honor.  We'll make sure that

18   works for us.  This is Howard Close.

19         What time, Your Honor?

20         THE COURT:  2:00.

21         MR. CLOSE:  Okay.

22         THE COURT:  How about for defense?

23         MR. SUMMERSGILL:  Your Honor, this is Michael

24   Summersgill.  We're just pulling up -- you said July 9 at

25   2:00 p.m. Pacific?

1          THE COURT:  Yeah, sorry about that.  Yeah, Pacific.

2          MR. SUMMERSGILL:  Yes, we can do that.  Yes, that

3    works for us.

4          I'd just note for Mr. Rassam, who is on the line,

5    that we may have to adjust something, but I think -- I think

6    we can make that work.

7          THE COURT:  We're not really talking about merits.

8    We're talking about scheduling right now.

9          MR. SUMMERSGILL:  Okay.  Thank you, Your Honor.

10          THE COURT:  All right.

11          MR. SUMMERSGILL:  Your Honor, I didn't know if you

12    were planning on -- if we're ending it now, if there are other

13    issues.  I think it might be productive to talk about the

14    infringement and validity contentions issue as well, just to

15    lay the groundwork for our next discussion, but if you'd

16    prefer to wait, obviously we can wait.

17          THE COURT:  Well, if you have something on your mind,

18    now is a good time to let me now.

19          MR. SUMMERSGILL:  All right.  Thank you, Your Honor.

20    Again, this is Michael Summersgill.

21          So the parties have set forth different proposals on

22    the timing and schedule of infringement and invalidity

23    contentions.  But the primary dispute there is it really gets

24    at how meaningful contentions will be.  And it's our view that

25    the parties should be required to state the real positions in

1    their contentions and not simply an initial theory that
2    continues to evolve throughout the case.

3            And so, for instance, I have said, you know, we don't
4    use temperature data in the manner required by the claims.
5    We'd like to see the plaintiffs' position as to why they think
6    we do.  And Mr. Love, in a number of instances, has referred
7    to our need to come forward with our non-infringement
8    defenses.  I think he's got it backwards.  They have the
9    burden on infringement and the burden of showing how we meet
10   these claims.

11           And the dispute really is over whether when a party
12   makes contentions, whether those contentions are final or
13   whether you really can have an opportunity to amend repeatedly
14   as the case goes forward.

15           We have proposed a schedule where they have
16   infringement contentions on October 26th, final invalidity
17   contentions on December 26th.  And then there can be
18   amendments to those contentions, but only based on information
19   that was not available at the time the contentions were
20   submitted.

21           And I think that that approach is -- would be more
22   productive and more efficient for a couple of reasons.  One,
23   it has the parties preparing -- it is tied into the claim
24   construction discussion we just had.  It has the parties
25   preparing contentions after knowing what the other side's

proposed constructions are.  Because infringement and validity
turn in part on claim construction, it makes sense to know
what the parties' proposed constructions are before you do
contentions.  Otherwise, once you know a party's construction,
you have to narrowly redo the contentions.  And it gives both
parties -- and we're not looking for this -- but it gives both
parties the opportunity to just completely change their theory
under the guise of "Oh, well, we now know what the other
side's constructions or proposed constructions are."

Second, requiring that these be real positions, where
you can only amend them based on new information, prevents
what we refer to as the "shifting sands" approach to
litigation.  You know, by allowing one set of contentions now
and then amendments after claim construction, even where
parties had proposed those claim constructions that were
adopted, and then not put putting any limitations on further
amendments just invites the parties to continually evolve
their theories.

And Courts have repeatedly said that it's important
to avoid that.  And there are a number that we cited in the
26(f) report, the *Richtek* case and the *Berger* case.  But I'd
add the Federal Circuit's *O2 Micro* case, 467 F.3d 1355, 1356.
Basically what the Court said -- what the Federal Circuit said
in *O2 Micro* is that contentions are meaningless unless parties
are required to state their positions and stick to those

1    positions until and if they discover new information.

2              Plaintiffs here are trying to preserve the ability to

3    amend their contentions even based on information that was

4    already available to it and -- that was already available to

5    them.  And that will just allow them to do exactly what the

6    Courts have said, which is engage in the "shifting sands"

7    approach to litigation.  And so that -- that's what we'd like

8    to prevent.

9              And the third piece is, again, that our schedule

10   would have them receiving our technical production two months

11   before they would have to submit their infringement

12   contentions.  And, of course, they have to have some basis for

13   bringing the suit in the first place, so there's plenty of

14   time and plenty of opportunity for them to prepare their

15   infringement contentions under our schedule.

16             THE COURT:  Do the plaintiffs want to respond?

17             Don't feel compelled, by the way, to respond.  But if

18   you want to, you're certainly welcome to.

19             MR. CLOSE:  Your Honor, this is Howard Close.  I

20   don't have too much to respond.  I just would note from a

21   Texas standpoint, I wouldn't want to play Texas hold 'em with

22   these fellows.  They like to keep their cards in -- but on the

23   point about good cause, I think the issue that they propose,

24   one of the disagreements we have on that, in terms of amending

25   our contentions, would obviously be that, you know, the Court

1    is familiar with and has regularly had to deal with whether

2    someone can amend things based on good cause.  They propose a

3    definition of good cause, which I would prefer to just let the

4    Court make a determination of good cause if we amend

5    contentions.

6         I think we've set out the reasons why we think our

7    schedule works better than theirs, but if you want us to give

8    you any briefing, like we described, we'll be happy to do that

9    before we discuss this with you next, Your Honor.

10        THE COURT:  Thank you.

11        I have used a good cause analysis previously in other

12   cases to determine whether or not someone should be allowed to

13   change their infringement contentions or not, and I doubt that

14   I'm going to approach it any differently now.

15        With that, I look forward to speaking with all of you

16   in about 10 days.

17        Is there anything else from the plaintiffs'

18   perspective we need to talk about now?

19        MR. CLOSE:  Nothing from the plaintiffs, Your Honor.

20   This is Howard Close.

21        THE COURT:  Thank you.

22        Anything else from the defense perspective that we

23   need to talk about now?

24        MR. SUMMERSGILL:  Not at this time, Your Honor.

25   Thank you.

1               THE COURT:  All right.  Thank you, all.  See you in

2     about 10 days.

3               MR. SUMMERSGILL:  Thank you.

4               MR. CLOSE:  Thank you.

5

6

7               (Proceedings concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              --oOo--

2

3          I certify, by signing below, that the

4     foregoing is a correct transcript of the record

5     of proceedings in the above-titled cause.  A

6     transcript without an original signature,

7     conformed signature or digitally signed signature

8     is not certified.

9

10

11

      /s/ Nancy M. Walker                7-2-18
12    _____    _____
      NANCY M. WALKER, CSR, RMR, CRR          DATE
13    Official Court Reporter
      Oregon CSR No. 90-0091
14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'944** [1] - 20:17
**'claims** [1] - 18:18
**'em** [1] - 29:21

**/**

**/s** [1] - 32:11

**0**

**02109** [1] - 2:17

**1**

**10** [5] - 12:20, 22:21, 25:2, 30:16, 31:2
**1000** [1] - 2:20
**111** [1] - 2:10
**121** [1] - 2:3
**1211** [1] - 2:13
**13** [3] - 12:20, 22:19, 22:20
**1322** [1] - 15:18
**1326** [1] - 15:18
**1327** [1] - 15:19
**1355** [1] - 28:22
**1356** [1] - 28:22
**16** [2] - 3:5, 10:7
**1600** [1] - 2:4
**18** [1] - 5:18
**18-cv-326** [1] - 3:3

**2**

**2006** [1] - 15:19
**2016** [1] - 13:18
**2018** [1] - 1:5
**21** [2] - 23:1, 23:2
**21st** [1] - 12:21
**22** [1] - 22:18
**2200** [1] - 2:8
**26** [1] - 6:11
**26(f** [2] - 13:13, 28:21
**26th** [3] - 22:25, 27:16, 27:17
**27** [1] - 1:5
**2:00** [4] - 25:12, 25:13, 25:20, 25:25

**3**

**3000** [1] - 2:13
**301** [1] - 2:20
**31st** [1] - 22:23
**326-8186** [1] - 2:21
**3:18-cv-00326-HZ** [1] - 1:4

**4**

**442** [1] - 15:18
**467** [1] - 28:22

**5**

**503** [1] - 2:21

**6**

**60** [1] - 2:16

**7**

**7-2-18** [1] - 32:11
**75090** [1] - 2:11
**77057** [1] - 2:8

**9**

**9** [1] - 25:24
**90-0091** [1] - 32:13
**97204** [2] - 2:4, 2:20
**97204-3730** [1] - 2:14
**9th** [2] - 12:12, 25:13

**A**

**ability** [1] - 29:2
**able** [3] - 6:16, 7:2, 8:21
**above-titled** [1] - 32:5
**abstract** [1] - 16:8
**accomplish** [1] - 5:7
**accomplished** [3] - 6:6, 6:7, 6:13
**according** [3] - 14:7, 19:10, 22:17
**accordingly** [1] - 16:23
**accurate** [1] - 23:19
**accurately** [1] - 8:14
**accused** [9] - 8:24, 15:16, 15:25, 18:19, 18:23, 23:16, 23:17, 23:22, 23:25
**actual** [1] - 22:21
**add** [1] - 28:22
**additional** [1] - 13:17
**additionally** [2] - 3:16, 9:21
**adjust** [2] - 12:4, 26:5
**adjustments** [1] - 12:3
**adopt** [1] - 14:17
**adopted** [3] - 4:23, 13:24, 28:16
**advance** [1] - 24:7
**advisory** [1] - 9:3
**affords** [1] - 23:17

**AG** [1] - 13:18
**agree** [1] - 7:2
**agreeable** [1] - 17:18
**agreed** [2] - 18:9, 20:25
**agreeing** [1] - 7:16
**agreement** [3] - 4:15, 4:18, 7:9
**ahead** [2] - 10:25, 23:10
**AHMAD** [1] - 1:3
**al** [1] - 3:3
**allegations** [2] - 9:19, 9:20
**allow** [2] - 10:6, 29:5
**allowed** [1] - 30:12
**allowing** [1] - 28:13
**ALSO** [1] - 2:18
**amend** [5] - 27:13, 28:11, 29:3, 30:2, 30:4
**amending** [1] - 29:24
**amendments** [3] - 27:18, 28:14, 28:17
**analysis** [2] - 15:22, 30:11
**Answer** [1] - 9:19
**answering** [1] - 17:13
**anticipate** [1] - 14:19
**anyway** [1] - 5:4
**apologize** [1] - 4:11
**APPEARANCES** [1] - 2:1
**appeared** [1] - 13:23
**apply** [1] - 4:21
**approach** [4] - 27:21, 28:12, 29:7, 30:14
**appropriate** [4] - 4:21, 4:24, 5:1, 25:1
**argue** [1] - 24:5
**argument** [3] - 12:11, 21:6, 25:9
**art** [3] - 14:21, 15:4, 21:12
**ASHRAFZADEH** [1] - 1:3
**aspect** [1] - 24:8
**aspects** [1] - 15:24
**asserted** [2] - 22:17, 23:18
**asserting** [1] - 12:10
**August** [5] - 12:20, 21:25, 22:2, 22:21, 22:23
**available** [4] - 8:12, 27:19, 29:4
**Avenue** [2] - 2:13, 2:20
**avoid** [2] - 15:6, 28:20

**aware** [1] - 11:8

**B**

**backwards** [1] - 27:8
**ball** [1] - 24:12
**Barger** [3] - 2:7, 3:11, 3:17
**based** [11] - 4:19, 7:20, 11:11, 14:4, 18:16, 19:16, 23:25, 27:18, 28:11, 29:3, 30:2
**basic** [2] - 7:17, 14:10
**basis** [3] - 12:10, 14:9, 29:12
**become** [1] - 5:25
**BEFORE** [1] - 1:17
**beginning** [1] - 6:4
**below** [1] - 32:3
**bench** [1] - 16:2
**benefit** [4] - 13:14, 16:5, 16:6, 16:14
**Berger** [1] - 28:21
**best** [1] - 17:22
**better** [3] - 10:8, 16:25, 30:7
**between** [2] - 5:7, 19:8
**beyond** [1] - 17:15
**Biotech** [1] - 13:18
**bit** [4] - 10:8, 11:20, 19:1, 19:7
**blind** [1] - 16:4
**Boston** [1] - 2:17
**Bradsby** [1] - 15:18
**brief** [1] - 25:11
**briefing** [5] - 12:21, 22:3, 22:7, 23:2, 30:8
**bringing** [1] - 29:13
**brings** [1] - 11:19
**broad** [1] - 21:7
**burden** [4] - 20:3, 20:23, 27:9

**C**

**calendar** [1] - 25:3
**cards** [1] - 29:22
**case** [33] - 4:22, 4:24, 9:8, 10:20, 11:8, 11:9, 11:23, 12:16, 13:7, 13:10, 13:11, 13:15, 13:16, 13:17, 13:18, 13:19, 13:25, 14:9, 14:25, 15:15, 15:19, 15:20, 17:6, 18:12, 18:17, 18:20, 25:1, 25:7, 27:2, 27:14, 28:21, 28:22
**case** [1] - 3:3
**cases** [10] - 10:18, 10:20, 13:12, 13:15, 16:1, 16:2, 18:15, 21:14, 23:24, 30:12
**Centigrade** [2] - 24:5, 24:7
**certain** [3] - 8:10, 12:3, 21:18
**certainly** [6] - 6:8, 14:8, 15:5, 21:2, 25:16, 29:18
**certified** [1] - 32:8
**certify** [1] - 32:3
**chance** [1] - 16:25
**change** [2] - 28:7, 30:13
**choose** [2] - 16:12, 18:25
**Circuit** [5] - 11:6, 11:9, 15:19, 16:2, 28:23
**circuit** [1] - 12:5
**Circuit's** [1] - 28:22
**cited** [5] - 13:13, 13:15, 13:16, 16:2, 28:20
**claim** [57] - 5:16, 5:17, 5:19, 6:17, 7:19, 8:5, 8:22, 8:24, 10:25, 11:5, 11:10, 11:17, 11:19, 12:18, 12:21, 13:1, 13:3, 13:8, 13:14, 13:20, 13:21, 13:22, 13:23, 14:2, 14:6, 14:17, 14:20, 15:7, 15:11, 15:17, 15:22, 15:24, 16:4, 16:7, 16:13, 16:23, 17:22, 18:15, 18:25, 19:10, 19:11, 20:2, 20:18, 22:1, 22:3, 22:7, 22:16, 23:1, 23:7, 23:19, 24:8, 24:21, 27:23, 28:2, 28:14, 28:15
**claimed** [1] - 24:4
**claims** [26] - 5:11, 5:13, 5:18, 11:10, 11:11, 11:14, 12:9, 12:12, 12:13, 13:2, 13:9, 14:3, 14:13, 14:15, 18:14, 18:16, 18:22, 19:4, 19:15, 20:16, 20:17, 20:21, 22:18, 23:18, 27:4, 27:10
**clarify** [3] - 13:9, 20:18, 21:22
**clearly** [1] - 19:12
**CLERK** [3] - 3:2, 3:19,

25:12
**Close** [10] - 2:5, 2:7, 3:11, 3:17, 4:12, 6:9, 25:18, 29:19, 30:20
**CLOSE** [14] - 3:10, 4:8, 4:11, 5:17, 6:8, 7:12, 7:14, 8:7, 8:9, 25:17, 25:21, 29:19, 30:19, 31:4
**close** [1] - 9:25
**closer** [1] - 10:2
**code** [4] - 17:4, 17:9, 19:22, 19:23
**collect** [1] - 19:19
**collecting** [1] - 11:3
**compare** [1] - 23:17
**compelled** [1] - 29:17
**complete** [3] - 22:22, 23:5, 23:19
**completed** [1] - 23:2
**completely** [2] - 11:13, 28:7
**completion** [1] - 12:21
**concentrate** [1] - 15:24
**concluded** [1] - 31:7
**conference** [4] - 3:5, 7:4, 10:7, 19:2
**confers** [1] - 19:2
**confirm** [1] - 5:16
**conflated** [1] - 23:20
**conformed** [1] - 32:7
**consideration** [1] - 5:22
**construction** [55] - 8:22, 10:25, 11:5, 11:10, 11:14, 11:17, 11:19, 12:11, 12:18, 12:19, 12:20, 12:21, 13:1, 13:3, 13:4, 13:6, 13:8, 13:14, 13:21, 14:2, 14:7, 14:14, 14:18, 14:20, 15:7, 15:11, 15:17, 15:23, 16:4, 16:7, 17:23, 18:14, 18:15, 18:25, 19:6, 19:8, 19:11, 20:2, 20:18, 21:24, 22:1, 22:3, 22:7, 22:16, 22:20, 23:1, 23:4, 23:7, 23:19, 23:23, 24:9, 27:24, 28:2, 28:4, 28:14
**constructions** [11] - 13:24, 13:25, 19:10, 21:25, 22:21, 24:10, 28:1, 28:3, 28:9, 28:15
**construe** [8] - 5:12,

5:13, 7:19, 9:1, 14:13, 16:13, 16:24
**construed** [7] - 11:10, 12:9, 12:14, 14:4, 18:16, 18:19, 18:22
**contend** [2] - 9:8, 9:18
**contention** [3] - 20:10, 21:7, 22:16
**contentions** [42] - 5:11, 8:6, 8:18, 11:18, 11:21, 20:24, 21:1, 21:3, 21:4, 21:14, 21:15, 21:18, 22:4, 22:5, 22:11, 22:25, 23:1, 23:6, 23:8, 26:14, 26:23, 26:24, 27:1, 27:12, 27:16, 27:17, 27:18, 27:19, 27:25, 28:4, 28:5, 28:13, 28:24, 29:3, 29:12, 29:15, 29:25, 30:5, 30:13
**context** [2] - 15:21, 23:19
**continually** [1] - 28:17
**continues** [1] - 27:2
**contrary** [1] - 15:3
**convenient** [1] - 15:23
**conversation** [1] - 10:1
**core** [1] - 7:17
**CORPORATION** [1] - 1:6
**Corporation** [1] - 3:3
**correct** [1] - 32:4
**counsel** [4] - 2:18, 3:8, 3:22, 10:1
**Counterclaim** [1] - 9:19
**couple** [4] - 6:11, 10:15, 18:5, 27:22
**course** [5] - 4:21, 12:25, 13:22, 18:18, 29:12
**court** [6] - 3:6, 15:23, 18:18, 23:15, 23:17
**COURT** [36] - 1:1, 1:18, 2:19, 3:24, 4:1, 4:9, 4:14, 5:3, 5:6, 5:20, 7:8, 8:4, 8:16, 9:10, 10:11, 14:19, 15:12, 18:6, 20:6, 20:8, 20:20, 21:16, 22:12, 23:9, 24:24, 25:13, 25:20, 25:22, 26:1, 26:7, 26:10, 26:17, 29:16, 30:10, 30:21, 31:1
**Court** [16] - 6:13, 6:16, 9:2, 13:20, 15:15,

16:5, 16:24, 23:13, 23:14, 23:23, 24:1, 24:10, 28:23, 29:25, 30:4, 32:13
**Court's** [3] - 13:3, 17:18, 17:20
**Courthouse** [1] - 2:19
**Courts** [3] - 4:21, 28:19, 29:6
**cover** [2] - 9:22, 21:12
**covers** [2] - 21:8, 21:11
**crazy** [1] - 5:14
**CRR** [2] - 2:19, 32:12
**CSR** [3] - 2:19, 32:12, 32:13
**Cutler** [1] - 2:16

## D

**damages** [1] - 7:24
**data** [7] - 8:12, 8:13, 12:3, 12:4, 19:3, 19:14, 27:4
**DATE** [1] - 32:12
**date** [1] - 25:16
**dates** [1] - 22:16
**days** [3] - 25:2, 30:16, 31:2
**deadline** [1] - 16:18
**deal** [1] - 30:1
**December** [2] - 23:1, 27:17
**declaration** [2] - 15:2, 15:6
**declarations** [1] - 15:7
**defendant** [4] - 3:19, 8:17, 9:16, 23:21
**DEFENDANT** [1] - 2:12
**Defendant** [1] - 1:7
**defendant's** [4] - 13:24, 18:13, 18:21, 20:9
**defendants** [8] - 7:5, 9:7, 10:12, 16:3, 16:15, 17:3, 20:9, 20:12
**defense** [5] - 4:15, 20:11, 20:13, 25:22, 30:22
**defenses** [2] - 17:10, 27:8
**define** [1] - 8:17
**definition** [1] - 30:3
**Delaware** [1] - 13:18
**delay** [1] - 11:5
**dependent** [1] - 5:18
**deposition** [1] - 6:23
**depositions** [2] - 6:25,

7:1
**describe** [1] - 9:20
**described** [4] - 5:23, 20:16, 20:20, 30:8
**describing** [1] - 8:14
**description** [1] - 17:5
**design** [1] - 9:17
**designed** [1] - 12:13
**despite** [1] - 23:14
**details** [1] - 12:4
**determination** [1] - 30:4
**determine** [3] - 18:13, 23:22, 30:12
**developed** [1] - 14:11
**device** [4] - 8:24, 15:25, 18:19, 18:23
**dictates** [1] - 11:9
**different** [2] - 19:21, 26:21
**differently** [1] - 30:14
**digitally** [1] - 32:7
**diligently** [1] - 19:24
**directed** [1] - 12:1
**disagree** [3] - 4:25, 21:9, 21:10
**disagreement** [3] - 6:12, 6:21, 6:23
**disagreements** [1] - 29:24
**disclosed** [1] - 22:14
**disclosing** [1] - 5:11
**disclosure** [2] - 5:11, 22:17
**discover** [2] - 7:22, 29:1
**discovery** [22] - 6:15, 6:20, 6:21, 7:8, 7:9, 7:16, 7:17, 7:24, 8:17, 8:22, 8:24, 9:4, 9:15, 9:23, 10:7, 11:2, 12:24, 13:5, 14:1, 15:11, 15:16, 18:21
**discuss** [1] - 30:9
**discussed** [2] - 7:13, 7:14
**discussion** [2] - 26:15, 27:24
**discussions** [1] - 19:17
**disposed** [1] - 9:8
**dispositive** [1] - 13:25
**dispute** [8] - 11:1, 15:25, 16:7, 16:22, 18:24, 18:25, 26:23, 27:11
**disputes** [4] - 11:15, 12:16, 16:10, 17:1
**DISTRICT** [3] - 1:1,

1:2, 1:18
**District** [2] - 2:19, 13:17
**document** [1] - 23:5
**documents** [15] - 9:18, 11:3, 11:6, 16:14, 17:2, 17:9, 17:20, 17:24, 17:25, 19:20, 19:24, 20:4, 22:2, 24:17, 24:22
**done** [3] - 6:22, 10:18, 19:1
**Dorr** [1] - 2:16
**doubt** [1] - 30:13
**down** [1] - 10:8
**drive** [1] - 5:14
**droop** [1] - 12:6
**due** [2] - 9:24, 24:16

## E

**early** [12] - 9:4, 10:4, 11:24, 12:14, 12:15, 12:17, 13:8, 13:9, 13:11, 13:20, 17:22, 20:2
**educate** [1] - 6:2
**efficient** [4] - 12:23, 12:24, 14:17, 27:22
**emphasized** [1] - 23:13
**ending** [1] - 26:12
**engage** [3] - 22:2, 23:7, 29:6
**engineers** [6] - 12:8, 16:16, 16:17, 18:2, 19:17, 24:15
**entry** [1] - 23:14
**essentially** [3] - 9:2, 17:8, 24:12
**et** [1] - 3:3
**evaluating** [1] - 6:17
**evidence** [5] - 14:4, 15:1, 15:8, 15:16, 16:9
**evolve** [2] - 27:2, 28:17
**exactly** [2] - 24:20, 29:5
**example** [4] - 16:13, 23:13, 24:3, 24:19
**exchange** [1] - 19:9
**exchanged** [2] - 9:13, 9:15
**exercise** [2] - 16:8, 16:24
**expensive** [1] - 19:25
**expert** [2] - 15:3, 15:6
**experts** [2] - 14:19, 16:16

**explain** [1] - 11:24
**explanation** [1] - 13:19
**extension** [4] - 17:14, 18:8, 18:9, 18:10

## F

**F.3d** [2] - 15:18, 28:22
**facilitate** [1] - 16:10
**fact** [3] - 7:23, 18:17, 20:24
**factual** [1] - 16:6
**factually** [1] - 16:22
**Fahrenheit** [2] - 24:6, 24:8
**fall** [1] - 22:3
**familiar** [4] - 5:22, 5:25, 18:11, 30:1
**far** [1] - 10:20
**Federal** [5] - 11:6, 11:9, 15:19, 28:22, 28:23
**feedback** [3] - 12:5, 12:6
**fellows** [1] - 29:22
**FEREYDUN** [1] - 1:3
**few** [1] - 17:13
**Fifth** [1] - 2:13
**figured** [1] - 8:4
**figuring** [1] - 5:10
**file** [4] - 11:12, 14:5, 16:8, 18:17
**filed** [1] - 14:9
**final** [3] - 23:14, 27:12, 27:16
**finally** [1] - 19:18
**fine** [1] - 7:23
**first** [7] - 4:6, 5:9, 15:22, 18:7, 20:24, 23:5, 29:13
**fits** [1] - 6:17
**five** [1] - 19:8
**floating** [1] - 20:13
**focus** [3] - 13:4, 18:25, 19:12
**focusing** [1] - 7:25
**follow** [1] - 21:15
**followed** [1] - 16:2
**FOR** [3] - 1:2, 2:2, 2:12
**forced** [1] - 16:12
**foregoing** [1] - 32:4
**forth** [3] - 24:25, 25:7, 26:21
**forward** [5] - 7:7, 20:24, 27:7, 27:14, 30:15
**frankly** [1] - 20:1
**front** [1] - 12:15

**full** [1] - 17:5
**fully** [1] - 24:15

## G

**generally** [1] - 5:23
**given** [1] - 4:22
**Goods** [4] - 15:18, 18:11, 23:12, 23:24
**granted** [1] - 13:20
**greater** [1] - 9:6
**groundwork** [1] - 26:15
**guidance** [1] - 9:1
**guise** [1] - 28:8

## H

**Hale** [3] - 2:16, 3:22, 3:23
**hand** [3] - 16:15, 18:1, 24:23
**hang** [2] - 20:8, 25:10
**happy** [1] - 30:8
**hard** [1] - 7:16
**hear** [1] - 10:12
**HEARING** [1] - 1:15
**hearing** [3] - 4:3, 5:8, 10:10
**heightened** [1] - 17:19
**help** [1] - 18:24
**helpful** [1] - 10:16
**helpfulness** [1] - 15:16
**Herbold** [2] - 2:12, 3:21
**Hernandez** [2] - 3:4, 4:1
**HERNANDEZ** [1] - 1:17
**herring** [1] - 19:7
**hiding** [1] - 24:12
**high** [1] - 23:3
**hillerich** [1] - 15:18
**Hirsch** [2] - 2:15, 3:22
**history** [4] - 11:12, 14:5, 16:9, 18:17
**hold** [1] - 29:21
**holding** [1] - 23:13
**Honor** [37] - 3:10, 3:16, 3:25, 4:8, 4:13, 4:16, 5:2, 5:18, 6:8, 7:15, 8:19, 9:12, 10:5, 10:13, 10:16, 11:8, 11:15, 12:22, 14:23, 15:9, 18:4, 20:7, 20:15, 21:5, 21:20, 22:15, 23:11, 25:17, 25:19, 25:23, 26:9, 26:11, 26:19,

29:19, 30:9, 30:19, 30:24
**HONORABLE** [1] - 1:17
**host** [1] - 13:12
**hour** [1] - 6:24
**Houston** [3] - 2:8, 3:11, 3:18
**Howard** [7] - 2:5, 3:10, 4:11, 6:8, 25:18, 29:19, 30:20

## I

**identified** [1] - 18:2
**identify** [3] - 3:7, 9:17, 17:8
**immediately** [1] - 18:24
**important** [4] - 7:20, 13:20, 18:12, 28:19
**improperly** [1] - 9:2
**IN** [1] - 1:1
**include** [3] - 7:10, 7:11, 17:5
**inconsistent** [1] - 11:6
**independent** [3] - 5:17, 5:19, 13:23
**inform** [1] - 24:1
**information** [10] - 14:12, 16:19, 16:21, 22:13, 23:16, 23:21, 27:18, 28:11, 29:1, 29:3
**informed** [1] - 24:15
**infringe** [2] - 14:12, 16:17
**infringement** [34] - 5:10, 8:6, 8:18, 9:18, 11:17, 11:21, 12:10, 12:11, 12:25, 13:10, 15:22, 16:11, 17:10, 20:24, 20:25, 21:3, 21:7, 21:15, 21:18, 22:4, 22:11, 22:24, 23:6, 24:12, 24:14, 26:14, 26:22, 27:7, 27:9, 27:16, 28:1, 29:11, 29:15, 30:13
**infringes** [2] - 8:1, 8:14
**initial** [3] - 9:15, 9:25, 27:1
**instance** [1] - 27:3
**instances** [1] - 27:6
**Intel** [17] - 2:18, 3:3, 3:20, 3:23, 7:1, 8:1, 8:11, 8:14, 9:22, 10:1, 12:7, 12:8, 16:16, 18:1, 20:4
**INTEL** [1] - 1:6

**interrogatories** [1] - 17:7
**interrogatory** [4] - 9:16, 17:11, 24:16, 24:18
**intrinsic** [4] - 14:4, 15:1, 15:8, 16:9
**invalid** [3] - 20:17, 20:21, 21:12
**invalidity** [14] - 5:11, 11:18, 11:21, 12:25, 16:11, 21:1, 21:2, 21:6, 21:15, 22:4, 22:25, 23:8, 26:22, 27:16
**invites** [1] - 28:17
**IP** [1] - 13:15
**irrelevant** [2] - 11:13, 14:14
**issue** [17] - 5:15, 5:16, 5:19, 7:17, 7:21, 9:2, 12:18, 13:21, 15:10, 17:5, 17:17, 18:2, 20:10, 24:2, 24:7, 26:14, 29:23
**issues** [13] - 6:11, 7:6, 8:2, 8:25, 9:6, 9:22, 11:16, 12:25, 13:5, 17:22, 19:12, 20:19, 26:13
**itself** [1] - 18:17
**IV** [3] - 2:9, 2:10, 3:12

## J

**Janssen** [1] - 13:18
**Jeff** [5] - 3:14, 15:9, 15:13, 20:7, 23:11
**Jeffrey** [1] - 2:2
**job** [1] - 5:12
**joined** [1] - 3:21
**Jordan** [2] - 2:15, 3:22
**JUDGE** [1] - 1:18
**Judge** [2] - 3:4, 4:1
**judgment** [3] - 9:8, 13:11, 23:14
**July** [6] - 12:20, 22:19, 22:20, 25:12, 25:13, 25:24
**June** [2] - 1:5, 22:18
**jurisdiction** [1] - 4:19

## K

**Kathleen** [2] - 2:6, 3:17
**keep** [2] - 6:1, 29:22
**kind** [2] - 5:21, 8:23
**kinds** [1] - 9:10
**Klarquist** [3] - 2:3,

3:14, 3:15
**knowing** [2] - 16:6, 27:25
**knowledge** [1] - 15:20

## L

**lacks** [1] - 23:19
**language** [1] - 11:11
**last** [1] - 10:15
**late** [2] - 21:25, 22:2
**Laughter** [1] - 5:5
**Law** [1] - 2:10
**law** [1] - 11:7
**lawyers** [1] - 25:15
**lay** [2] - 10:9, 26:15
**lead** [3] - 3:22, 15:15
**leading** [1] - 4:3
**least** [1] - 25:6
**level** [2] - 17:4, 23:3
**Lexos** [1] - 13:15
**limit** [2] - 5:12, 6:24
**limitations** [2] - 6:23, 28:16
**limited** [1] - 24:6
**limiting** [1] - 7:1
**line** [1] - 26:4
**list** [2] - 5:10, 6:5
**listed** [1] - 9:19
**litigation** [2] - 28:13, 29:7
**LLP** [3] - 2:3, 2:7, 2:16
**local** [3] - 4:4, 4:23, 21:13
**look** [7] - 14:21, 18:13, 19:21, 25:3, 25:5, 25:7, 30:15
**looking** [5] - 16:8, 16:14, 21:22, 22:12, 28:6
**loop** [2] - 12:5, 12:6
**loops** [1] - 12:5
**Love** [6] - 2:2, 3:14, 15:9, 15:13, 20:7, 23:11
**LOVE** [5] - 3:14, 15:9, 15:13, 20:7, 23:11
**love** [1] - 27:21
**love's** [1] - 19:18
**Luke** [4] - 2:9, 2:10, 3:12

## M

**MA** [1] - 2:17
**ma'am** [1] - 4:11
**manner** [1] - 27:4
**map** [1] - 10:10
**MARCO** [1] - 1:17
**Mark** [2] - 2:2, 3:15

**Markman** [3] - 4:3, 5:7, 10:10
**Markowitz** [2] - 2:12, 3:21
**Mashhood** [1] - 3:23
**mashood** [1] - 2:18
**massive** [1] - 19:24
**matches** [1] - 6:18
**matter** [3] - 3:2, 24:8, 24:10
**McAndrew** [7] - 2:6, 3:16, 3:17, 8:19, 8:20, 9:12, 9:14
**mean** [2] - 11:22, 23:20
**meaningful** [2] - 15:21, 26:24
**meaningless** [1] - 28:24
**meantime** [1] - 25:5
**measure** [1] - 24:5
**Media** [1] - 13:15
**meet** [2] - 19:2, 27:9
**merits** [1] - 26:7
**Michael** [9] - 2:15, 3:21, 4:16, 10:14, 14:23, 18:4, 21:21, 25:23, 26:20
**Micro** [2] - 28:22, 28:24
**might** [1] - 26:13
**mind** [1] - 26:17
**minds** [1] - 6:1
**minimum** [1] - 24:17
**moment** [1] - 25:10
**Monday** [5] - 9:24, 16:18, 17:14, 17:16, 24:16
**months** [2] - 24:13, 29:10
**morning** [6] - 3:2, 3:10, 3:20, 3:24, 3:25, 4:1
**MorphoSys** [1] - 13:18
**MOTLEY** [1] - 3:12
**Motley** [4] - 2:9, 2:10, 3:12
**move** [1] - 9:5
**moving** [1] - 7:7
**MR** [40] - 3:10, 3:12, 3:14, 3:16, 3:25, 4:8, 4:11, 4:16, 5:17, 6:8, 7:12, 7:14, 8:7, 8:9, 8:19, 9:12, 10:13, 14:23, 15:9, 15:13, 18:4, 18:7, 20:7, 20:15, 20:22, 21:20, 22:15, 23:11, 25:17, 25:21, 25:23, 26:2, 26:9, 26:11, 26:19,

29:19, 30:19, 30:24, 31:3, 31:4
**MS** [1] - 3:20
**must** [1] - 25:15
**MyMedical** [1] - 13:16

**N**

**name** [1] - 10:22
**Nancy** [1] - 32:11
**nancy** [1] - 2:19
**NANCY** [1] - 32:12
**narrow** [1] - 19:12
**narrowly** [1] - 28:5
**necessarily** [1] - 14:25
**necessary** [2] - 8:13, 18:21
**need** [21] - 5:7, 5:21, 6:5, 6:6, 6:13, 6:22, 7:6, 7:19, 8:10, 8:16, 8:25, 11:5, 14:12, 15:10, 17:2, 22:8, 24:6, 27:7, 30:18, 30:23
**new** [2] - 28:11, 29:1
**next** [4] - 10:4, 25:8, 26:15, 30:9
**nice** [1] - 13:19
**non** [5] - 9:18, 17:10, 24:12, 24:14, 27:7
**non-infringement** [5] - 9:18, 17:10, 24:12, 24:14, 27:7
**note** [4] - 3:6, 18:12, 26:4, 29:20
**nothing** [1] - 30:19
**November** [2] - 12:21, 23:2
**number** [6] - 5:13, 6:25, 7:1, 9:21, 27:6, 28:20

**O**

**O2** [2] - 28:22, 28:24
**obviously** [3] - 22:18, 26:16, 29:25
**occurs** [1] - 8:23
**October** [2] - 22:25, 27:16
**OF** [2] - 1:2, 1:16
**Offices** [1] - 2:10
**Official** [1] - 32:13
**often** [2] - 12:25, 19:6
**once** [4] - 10:8, 12:9, 21:3, 28:4
**one** [19] - 4:22, 5:15, 5:16, 5:17, 5:19, 5:25, 6:15, 9:16, 10:5, 12:24, 13:23,

15:4, 20:1, 21:5, 23:21, 27:22, 28:13, 29:24
**One** [1] - 2:7
**ones** [1] - 18:8
**oOo** [1] - 3:7
**operate** [1] - 22:23
**operation** [1] - 11:12
**opinion** [1] - 9:3
**opportunity** [5] - 23:17, 24:9, 27:13, 28:7, 29:14
**opposed** [1] - 7:25
**OR** [3] - 2:4, 2:14, 2:20
**order** [12] - 6:7, 6:11, 7:3, 7:4, 7:6, 8:17, 10:2, 10:6, 16:10, 17:17, 17:19, 17:21
**ordinary** [2] - 14:21, 15:4
**OREGON** [1] - 1:2
**Oregon** [2] - 1:6, 32:13
**original** [1] - 32:6
**otherwise** [1] - 28:4
**ought** [1] - 16:20
**outside** [1] - 7:22
**own** [2] - 14:10, 14:13

**P**

**p.m** [1] - 25:25
**Pacific** [2] - 25:25, 26:1
**pages** [2] - 17:8, 17:13
**parameters** [1] - 25:9
**part** [4] - 7:8, 13:1, 21:6, 28:2
**particular** [9] - 4:21, 8:15, 10:21, 10:23, 12:1, 14:22, 17:8, 19:4
**particularly** [1] - 4:24
**parties** [22] - 10:3, 10:6, 10:17, 12:19, 21:23, 21:24, 22:2, 22:19, 22:20, 23:3, 23:15, 24:1, 26:21, 26:25, 27:23, 27:24, 28:6, 28:7, 28:15, 28:17, 28:24
**parties'** [3] - 12:14, 13:2, 28:3
**parts** [1] - 19:23
**party** [1] - 27:11
**party's** [1] - 28:4
**patent** [22] - 4:5, 4:22, 5:15, 6:18, 8:1, 8:11, 8:15, 11:11, 12:1, 14:5, 14:10, 14:13,

16:8, 20:17, 21:8, 21:11, 21:12, 21:13, 21:14, 23:25, 24:4, 24:6
**Patrick** [4] - 2:6, 3:16, 8:19, 9:13
**pause** [1] - 25:11
**PC** [3] - 2:10, 2:12, 3:13
**person** [1] - 14:21
**perspective** [3] - 11:16, 30:18, 30:22
**pertinent** [2] - 16:19, 17:10
**Phillips** [4] - 11:8, 11:9, 14:3, 18:15
**Pickering** [1] - 2:16
**piece** [2] - 14:6, 29:9
**place** [3] - 8:22, 9:4, 29:13
**places** [1] - 19:21
**plain** [1] - 11:11
**plaintiff** [6] - 3:9, 4:7, 5:9, 14:8, 21:16, 25:14
**PLAINTIFF** [1] - 2:2
**plaintiffs** [21] - 6:5, 6:9, 8:20, 9:16, 11:4, 12:9, 15:2, 15:14, 16:5, 16:13, 16:21, 18:8, 19:5, 19:13, 20:11, 20:20, 22:24, 23:10, 29:2, 29:16, 30:19
**Plaintiffs** [1] - 1:4
**plaintiffs'** [3] - 12:23, 27:5, 30:17
**planning** [1] - 26:12
**plausible** [1] - 12:11
**play** [1] - 29:21
**plenty** [2] - 29:13, 29:14
**point** [11] - 5:24, 7:2, 10:15, 10:16, 16:3, 16:7, 16:9, 23:13, 23:23, 23:24, 29:23
**points** [1] - 18:5
**Portland** [4] - 1:6, 2:4, 2:14, 2:20
**position** [3] - 19:16, 20:15, 27:5
**positions** [7] - 12:15, 13:2, 15:3, 26:25, 28:10, 28:25, 29:1
**possibility** [1] - 10:5
**possible** [4] - 12:14, 12:15, 12:17, 13:23
**prefer** [2] - 26:16, 30:3
**prepare** [1] - 29:14
**prepared** [5] - 17:3,

17:16, 19:8, 19:9, 21:2
**preparing** [2] - 27:23, 27:25
**PRESENT** [1] - 2:18
**present** [2] - 3:6, 21:22
**presented** [1] - 21:3
**preserve** [1] - 29:2
**presiding** [1] - 3:4
**prevent** [1] - 29:8
**prevents** [1] - 28:11
**previously** [1] - 30:11
**primary** [2] - 11:15, 26:23
**proceed** [1] - 19:10
**PROCEEDINGS** [1] - 1:16
**proceedings** [3] - 25:11, 31:7, 32:5
**process** [10] - 11:5, 11:19, 14:2, 15:11, 15:17, 15:21, 19:11, 19:25, 20:2, 23:7
**produce** [9] - 17:3, 17:16, 17:20, 19:19, 20:4, 21:25, 22:1, 24:18, 24:22
**producing** [2] - 11:1, 16:19
**product** [9] - 6:19, 7:17, 7:20, 8:1, 8:12, 8:14, 15:17, 15:21, 24:1
**production** [8] - 9:22, 11:4, 22:1, 22:6, 22:10, 22:22, 23:5, 29:10
**productive** [2] - 26:13, 27:22
**products** [9] - 11:13, 14:14, 18:13, 18:21, 21:10, 22:23, 23:16, 23:18, 23:22
**proper** [2] - 11:13, 18:14
**proposal** [2] - 12:22, 14:18
**proposals** [3] - 10:25, 12:13, 26:21
**propose** [12] - 12:19, 12:20, 19:6, 19:7, 21:23, 21:24, 22:19, 22:20, 22:21, 23:4, 29:23, 30:2
**proposed** [16] - 6:20, 7:5, 10:3, 11:18, 11:22, 12:23, 13:24, 16:4, 19:9, 21:24, 23:4, 27:15, 28:1, 28:3, 28:9, 28:15

proposes [1] - 11:21
proposing [2] - 12:19, 24:11
propounded [1] - 9:23
protection [1] - 17:19
protective [8] - 7:3, 7:4, 7:6, 10:2, 10:6, 17:17, 17:18, 17:21
provides [3] - 11:9, 13:19, 15:21
publicly [1] - 8:12
pulling [1] - 25:24
pushed [1] - 7:23
pushing [1] - 7:23
put [3] - 4:2, 10:18, 28:16
putting [1] - 28:16

**Q**

quickly [3] - 9:9, 19:19, 25:3
quite [1] - 21:17

**R**

Rassam [3] - 2:18, 3:23, 26:4
rather [1] - 13:4
read [2] - 25:5, 25:6
ready [5] - 11:4, 17:22, 21:17, 24:25, 25:7
real [3] - 12:16, 26:25, 28:10
realistic [2] - 19:20, 20:5
really [12] - 7:14, 8:3, 8:21, 8:25, 10:9, 16:6, 18:2, 25:3, 26:7, 26:23, 27:11, 27:13
reason [2] - 14:8, 20:22
reasons [8] - 4:22, 12:24, 14:16, 16:18, 20:1, 21:5, 27:22, 30:6
receiving [1] - 29:10
recently [1] - 25:6
record [4] - 3:8, 23:16, 23:18, 32:4
Records [1] - 13:16
red [1] - 19:7
redo [1] - 28:5
reduce [2] - 20:2, 20:3
refer [2] - 15:15, 28:12
reference [1] - 18:19
referred [1] - 27:6
regarding [4] - 4:5, 10:1, 14:20, 18:21

regularly [1] - 30:1
regulates [1] - 10:23
regulator [4] - 10:22, 12:2, 17:6
relate [1] - 11:16
relation [1] - 15:24
relatively [2] - 10:21, 17:13
relevant [9] - 13:5, 13:21, 15:1, 15:8, 16:11, 19:23, 21:23, 22:16
rely [1] - 17:11
remind [1] - 4:10
Renee [2] - 2:12, 3:20
repeatedly [2] - 27:13, 28:19
repeats [1] - 18:18
report [2] - 13:13, 28:21
Reporter [1] - 32:13
REPORTER [2] - 2:19, 4:9
reporter [2] - 3:6, 4:9
requests [2] - 9:17, 9:21
required [7] - 14:1, 19:4, 19:15, 22:10, 26:25, 27:4, 28:25
requires [2] - 8:23, 24:21
requiring [1] - 28:10
resolution [5] - 8:25, 11:24, 12:17, 13:8, 16:10
resolving [1] - 13:8, 16:25
respect [3] - 17:2, 18:22, 23:12
respond [7] - 15:10, 18:5, 20:7, 23:10, 29:16, 29:17, 29:20
response [3] - 17:11, 24:16, 24:18
responses [1] - 9:23
responsive [1] - 15:5
Richtek [1] - 28:21
Riverway [1] - 2:7
RMR [2] - 2:19, 32:12
road [2] - 10:8, 10:9
Room [1] - 2:20
Rose [1] - 3:17
rose [1] - 2:6
rothauge [1] - 2:12
ROTHAUGE [1] - 3:20
Rothauge [2] - 3:21, 4:20
RTL [1] - 17:4
RTL-level [1] - 17:4
Rule [3] - 3:5, 6:11,

10:7
rule [1] - 18:18
rules [4] - 4:5, 4:23, 21:11
ruling [1] - 13:3

**S**

Salmon [1] - 2:3
sands [2] - 28:12, 29:6
schedule [20] - 4:2, 6:6, 10:7, 11:19, 11:20, 14:7, 17:24, 19:10, 20:25, 21:22, 22:13, 22:17, 25:1, 25:8, 26:22, 27:15, 29:9, 29:15, 30:7
scheduling [2] - 11:16, 26:8
schematics [3] - 9:17, 17:4, 17:9
scope [5] - 7:9, 7:14, 8:2, 13:1, 13:9
second [4] - 13:7, 18:11, 20:8, 28:10
section [1] - 13:13
see [3] - 12:15, 27:5, 31:1
selection [1] - 16:23
sense [3] - 14:17, 18:3, 28:2
sensor [1] - 24:20
sent [2] - 9:15, 9:21
sequence [2] - 21:23
set [9] - 3:5, 12:16, 13:11, 17:24, 24:25, 25:7, 26:21, 28:13, 30:6
seven [1] - 19:8
several [2] - 16:1, 16:17
Sherman [1] - 2:11
shifting [2] - 28:12, 29:6
show [2] - 13:9, 22:22
showing [1] - 27:9
side [3] - 6:10, 6:24, 10:24
side's [3] - 25:9, 27:25, 28:9
sides [3] - 4:6, 9:6, 9:13
signature [1] - 32:6, 32:7
signed [1] - 32:7
signing [1] - 32:3
simply [5] - 12:7, 19:19, 20:4, 20:5, 27:1
situation [1] - 15:5

skill [2] - 14:21, 15:4
someone [4] - 30:2, 30:12
sometimes [2] - 18:24, 21:6
somewhere [1] - 19:7
sooner [1] - 13:4
sorry [4] - 9:13, 22:1, 22:12, 26:1
sort [2] - 9:2, 13:19
source [4] - 17:4, 17:9, 19:22, 19:23
Sparkman [3] - 2:3, 3:14, 3:15
sparse [1] - 23:18
SPEAKER [2] - 7:13, 8:8
speaking [3] - 4:10, 4:20, 30:15
specific [5] - 6:25, 7:1, 8:6, 8:13, 8:18
specifically [3] - 6:25, 20:21, 21:17
specification [2] - 11:12, 18:16
spell [1] - 24:22
spoken [1] - 12:7
Sporting [4] - 15:18, 18:11, 23:12, 23:24
standard [1] - 17:18
standpoint [1] - 29:21
start [2] - 6:4, 10:15
starting [1] - 3:9
state [2] - 26:25, 28:25
State [1] - 2:16
STATES [2] - 1:1, 1:18
states [1] - 15:20
States [1] - 2:19
step [1] - 15:22
stick [1] - 28:25
straightforward [1] - 10:21
Street [3] - 2:3, 2:10, 2:16
subject [1] - 17:20
submit [7] - 12:22, 15:2, 15:5, 22:10, 22:24, 22:25, 29:11
submitted [2] - 22:7, 27:20
substance [2] - 23:22, 23:25
sufficient [1] - 22:22
sufficiently [1] - 8:5
suggesting [1] - 20:11
suggestion [5] - 11:4, 19:18, 20:3
suggests [1] - 10:22
suit [1] - 29:13

Suite [3] - 2:4, 2:8, 2:13
summary [2] - 9:8, 13:11
summersgill [1] - 2:15
Summersgill [8] - 3:22, 4:17, 10:14, 14:24, 18:5, 21:21, 25:24, 26:20
SUMMERSGILL [17] - 3:25, 4:16, 10:13, 14:23, 18:4, 18:7, 20:15, 20:22, 21:20, 22:15, 25:23, 26:2, 26:9, 26:11, 26:19, 30:24, 31:3
supplied [1] - 23:15
support [2] - 9:18, 9:20
supporting [1] - 24:17
supposed [3] - 11:10, 14:4, 15:8
susceptible [2] - 11:23, 13:7
system [1] - 20:16

**T**

TABAIAN [1] - 1:3
Tabaian [1] - 3:3
tailor [1] - 16:23
technical [7] - 5:25, 21:25, 22:6, 22:9, 22:22, 23:5, 29:10
technology [8] - 5:22, 6:2, 10:17, 10:19, 10:20, 20:11, 20:12, 21:19
teeth [1] - 11:22
TELEPHONIC [1] - 1:15
temperature [7] - 12:3, 12:4, 19:3, 19:14, 24:4, 24:20, 27:4
term [2] - 9:1, 14:22
terms [18] - 5:12, 5:13, 6:17, 7:19, 8:24, 12:19, 13:21, 16:13, 16:23, 18:25, 19:6, 19:8, 21:24, 22:16, 22:20, 23:4, 29:24
testifying [1] - 14:20
Texas [3] - 3:11, 29:21
THE [41] - 1:1, 1:2, 1:17, 2:2, 2:12, 3:2, 3:19, 3:24, 4:1, 4:9, 4:14, 5:3, 5:6, 5:20, 7:8, 8:4, 8:16, 9:10, 10:11, 14:19, 15:12,

18:6, 20:6, 20:8, 20:20, 21:16, 22:12, 23:9, 24:24, 25:12, 25:13, 25:20, 25:22, 26:1, 26:7, 26:10, 26:17, 29:16, 30:10, 30:21, 31:1

**theirs** [1] - 30:7

**theories** [1] - 28:18

**theory** [5] - 24:13, 24:14, 24:18, 27:1, 28:7

**they've** [2] - 21:3, 24:14

**Third** [1] - 2:20

**third** [3] - 7:3, 14:6, 29:9

**three** [1] - 12:23

**throughout** [1] - 27:2

**tied** [1] - 27:23

**tier** [2] - 17:18, 17:21

**timing** [5] - 6:21, 7:15, 11:16, 11:17, 26:22

**titled** [1] - 32:5

**today** [3] - 6:14, 7:5, 10:1

**together** [6] - 4:2, 5:7, 6:18, 10:18, 25:2

**towards** [1] - 9:6

**TRANSCRIPT** [1] - 1:16

**transcript** [2] - 32:4, 32:6

**Travis** [1] - 2:10

**trial** [2] - 3:22, 23:15

**true** [4] - 13:22, 14:1, 14:3, 24:8

**try** [4] - 4:2, 7:5, 10:6, 15:6

**trying** [4] - 7:18, 7:22, 10:2, 29:2

**turn** [3] - 5:9, 20:8, 28:2

**turning** [3] - 4:6, 6:4, 20:9

**turns** [1] - 24:4

**tutorial** [2] - 10:19, 10:25

**two** [7] - 11:15, 17:8, 17:18, 17:21, 18:9, 23:20, 29:10

**two-tier** [2] - 17:18, 17:21

**two-week** [1] - 18:9

**TX** [2] - 2:8, 2:11

**type** [2] - 10:21, 12:2

**types** [2] - 7:22, 17:8

**typical** [1] - 21:14

**typically** [3] - 4:20, 15:6, 19:5

## U

**ultimately** [1] - 13:25

**under** [5] - 12:11, 13:5, 14:3, 28:8, 29:15

**understandable** [1] - 6:3

**UNIDENTIFIED** [2] - 7:13, 8:8

**United** [1] - 2:19

**UNITED** [2] - 1:1, 1:18

**unless** [1] - 28:24

**up** [4] - 4:3, 12:16, 13:11, 25:24

**uses** [1] - 12:2

## V

**valid** [2] - 8:25, 9:7

**validity** [2] - 26:14, 28:1

**various** [1] - 6:10

**versus** [1] - 3:3

**view** [2] - 21:7, 26:24

**visit** [1] - 25:8

**voltage** [6] - 10:22, 10:23, 12:2, 12:6, 17:6

**vs** [1] - 1:5

## W

**wait** [2] - 26:16

**walk** [1] - 10:19

**Walker** [2] - 2:19, 32:11

**WALKER** [1] - 32:12

**Washington's** [1] - 4:4

**week** [2] - 10:4, 18:9

**welcome** [1] - 29:18

**Western** [1] - 4:4

**whole** [1] - 21:22

**Wilmer** [3] - 2:16, 3:22, 3:23

**Wilson** [10] - 2:2, 3:15, 15:17, 18:11, 18:12, 18:17, 18:20, 23:12, 23:23, 25:6

**works** [3] - 25:18, 26:3, 30:7

**worried** [1] - 7:25

**worry** [1] - 5:4

**Wright** [3] - 2:7, 3:11, 3:17

## Y

**yourself** [1] - 3:7