Jeffrey S. Love, OSB No. 873987
John D. Vandenberg, OSB No. 893755
Mark W. Wilson, OSB No. 091596
KLARQUIST SPARKMAN LLP
One World Trade Center
121 SW Salmon Street, Suite 1600
Portland, Oregon 97204
T:  503.595.5300
jeffrey.love@klarquist.com
john.vandenberg@klarquist.com
mark.wilson@klarquist.com

Howard L. Close, Texas Bar No. 04406500
Kathleen S. Rose, Texas Bar No. 00798473
Patrick B. McAndrew, Texas Bar No. 24042596
Ronald L. Flack, Jr., Texas Bar No. 24095655
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
P:  713.572.4321
close@wrightclosebarger.com
rose@wrightclosebarger.com
mcandrew@wrightclosebarger.com
flack@wrightclosebarger.com

[Additional counsel listed on following page]

Attorneys for
FEREYDUN TABAIAN and AHMAD ASHRAFZADEH

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| FEREYDUN TABAIAN and AHMAD ASHRAFZADEH, <br><br> Plaintiffs, <br><br> v. <br><br> INTEL CORPORATION, <br><br> Defendant. | Civil Action No.: 3:18-cv-0326-HZ <br><br> **PLAINTIFFS' MOTION FOR ENTRY OF REASONABLE PROTECTIVE ORDER** <br><br> **ORAL ARGUMENT REQUESTED** <br> **EXPEDITED HEARING REQUESTED** |

Richard N. Laminack, Texas Bar No. 11850350
LAMINACK, PIRTLE & MARTINES
5020 Montrose Blvd., 9th Floor
Houston, Texas 77006
T:  713-292-2750
rickl@lpm-triallaw.com

Luke Motley IV, Texas Bar No. 14595960
LAW OFFICES OF LUKE MOTLEY, IV PC
111 S. Travis Street
Sherman, TX 75090
T:  903-892-9133
lmotley4@motleypc.com

Attorneys for
FEREYDUN TABAIAN and AHMAD ASHRAFZADEH

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7-1(a), counsel for Plaintiffs certify that the parties attempted to reach a good-faith resolution to their dispute over a final protective order, but were unable to do so.  The parties had numerous meet and confer conferences with counsel for Defendants via telephone in the preceding thirty (30) days. Plaintiffs additionally asked for a position regarding its request for expedited hearing (L.R. 7-1(g)) and Intel did not agree to this request.

*/s/Patrick B. McAndrew*

## MOTION FOR ENTRY OF REASONABLE PROTECTIVE ORDER

For the reasons shown below, Plaintiffs Fereydun Tabaian and Ahmad Ashrafzadeh ("Plaintiffs") respectfully request this Court enter the form protective order attached as Exhibit A, which is based on the model form from the United States District Court for the Northern District of California, a copy of which is attached as Exhibit B.  For the Court's convenience Plaintiffs also attach: Exhibit C, a red-line showing the differences between Plaintiffs' proposed order and the Northern District's model form; Exhibit D, a red-line showing the differences between Intel's proposed order and the Northern District model; and Exhibit E, a red-line showing the differences between Plaintiffs' proposed order and Intel's proposed order.

## STANDARD

Fed. R. Civ. P. 26(c) permits the court in which an action is pending to "make any order which justice requires to protect the party or person from annoyance, embarrassment, oppression or undue burden or expense" upon motion by a party or a person from whom discovery is sought. The court may require "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."  Fed. R. Civ. P. 26(c)(g).

PLAINTIFFS' MOTION FOR ENTRY OF REASONABLE PROTECTIVE ORDER                 1

The burden of persuasion under Fed. R. Civ. P. 26(c) is on the party seeking the protective order. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). To meet that burden of persuasion, the party seeking the protective order must show good cause by demonstrating a particular need for the protection sought. *Beckman Indus., Inc., v. Int'l. Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that prejudice or harm will result if no protective order is granted." *Foltz v. State Farm*, 331 F.3d 1122, 1130 (9th Cir. 2003), citing *San Jose Mercury News, Inc., v. District Court*, 187 F.3d 1096, 1102 (9th Cir. 1999). *See also*

*Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (citing *Beckman Indus. Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) and *San Jose Mercury News*, 187 F.3d at 1102). Moreover, "'broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.'" *Beckman Indus. Inc.*, 966 F.2d at 476 (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir.1986)).

## **BACKGROUND AND HISTORY**

This patent infringement case is not *AMD v. Intel* or *Qualcomm v. Intel*—or any other case of two competing business entities where sensitive information can tip the scales of development or profitability in favor of one of the companies. This is an infringement matter brought by patent owners who are individuals and could best be considered as tangentially involved in the market for Intel's products. Plaintiffs and Intel are in no sense direct competitors.

There can be little dispute that almost everything Plaintiffs must prove will come from either publicly available information or information produced by Intel in discovery. The burdens caused by limitations on the use of, and access to, discovery material will disproportionately fall on Plaintiffs and their counsel and experts, while the benefits of the confidential protections will

accrue almost exclusively to Intel.  Intel has leveraged this fact by proposing stricter limitations on the access to or use of discovery materials by Plaintiffs.

Intel has refused to provide redline edits or critique specific portions of the draft protective orders offered by Plaintiff.  Intel has denied virtually every request for compromise proposed by the Plaintiffs.  Intel's proposals shift unreasonable procedural burdens onto Plaintiffs.  Intel's latest draft of protective order, which also offers numerous amendments to the Northern District of California's model protective order, is tailored so that virtually all the revisions enhance or add benefits flowing to Intel and increase burdens on Plaintiffs.  (Exhibit D.)

The Federal Rules of Civil Procedure are not designed to unreasonably prohibit a party from developing its case or make it onerous for that same party to retain an expert to review materials in a technical matter.  *See Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (holding that pre-trial discovery should be given "a broad and liberal treatment" and that "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth"); *see also Societe Nationale Industrielle Aeropatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 540 n.25 (1987) (affirming the "fundamental maxim of discovery that 'mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947))); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (holding that modern discovery instruments "together with pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent"); *Brown Badgett, Inc. v. Jennings*, 842 F.2d 899, 902 (6th Cir. 1988) ("The purposes underlying the federal rules are to avoid surprise and the possible miscarriage of justice and to eliminate the 'sporting theory of justice.'" (citations omitted)); *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007,

1024 (N.D. Ill. 2017) ("The purpose of discovery is integral to the quest for truth and the fair adjudication of guilt or innocence."); *Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 190 F. Supp. 3d 419, 427 (M.D. Pa. 2016) ("Discovery is *not* a competition to see which party can manipulate legal doctrines to gain advantage." (emphasis in original) (internal quotations omitted)); *Brannies v. Internet ROI, Inc.*, 67 F. Supp. 3d 1360, 1362 (S.D. Ga. 2014) ("The discovery rules require the disclosure of all relevant information so that ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts." (internal quotations and citations omitted)).

As is apparent from these extended conferences, Intel's document production to date, and Intel's challenge to Plaintiffs' expert (ECF 60), Intel has forestalled Plaintiffs' ability to have experts review Intel's produced documents prior to Plaintiffs' infringement contentions deadline. Despite attempts to find reasonable solutions to Intel's stated confidentiality needs, the parties have been unable to agree on a protective order.

Time is of the essence.  The Court should lay to rest the parties' disputes regarding the protective order.  Plaintiffs seek a protective order that reasonably protects the parties' respective confidentiality concerns without unnecessary impediments to efficiently and fairly litigating this action.

## THE ISSUES IN DISPUTE

Plaintiffs agree that the Northern District of California model order is a reasonable starting point for a protective order in this case.  Plaintiffs propose close adherence to the model form, with modifications only to meet the particular circumstances of this case, as is evident from Plaintiffs' red-line against the model Northern District form (Exhibit C).  Some of these modifications were proposed by Intel and are agreeable to Plaintiffs.  Intel, in contrast, as reflected in Exhibit D,

PLAINTIFFS' MOTION FOR ENTRY OF REASONABLE PROTECTIVE ORDER          4

propose additional material deviations from the Northern District model, in each case shifting burdens further onto Plaintiffs and accruing benefits for Intel.  Plaintiffs oppose these material modifications for the reasons discussed below.

Plaintiffs and Intel disagree as to the proper adaptation of the Northern District form in six substantive areas:

- The scope of the Prosecution Bar, including the definition of Relevant Technology delineating the Bar's technological scope;

- The expiration date of the Prosecution Bar;

- The production and inspection of properly designated Source Code materials;

- The procedures for designating sensitive material and resolving disputes about the same;

- Expert Qualification Process; and

- The inadvertent production of material.

## A.    Prosecution Bar – Definition of "Relevant Technology"

In determining whether to grant a patent prosecution bar, a court "must be satisfied that the kind of information that will trigger the bar is relevant to the preparation and prosecution of patent applications before the [Patent and Trademark Office]." *In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1381 (Fed. Cir. 2010).  The Court must also consider the scope of activities prohibited by the bar, the duration of the bar, and the definition of the subject matter covered by the bar. *Id*. at 1381 (citing *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp.2d 762, 775 n.14 (D. Md. 2003)). In short, the party seeking imposition of the bar must show the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information. *Id*.  The party seeking entry of a prosecution bar must show good cause for its

imposition. *Id*. at 1378.  This requires the party to present a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements. *Gulf Oil v. Bernard*, 452 U.S. 89, 102 n. 16 (1981).

Intel proposes a patent prosecution bar applicable to Relevant Technology.  Plaintiffs are amenable to a prosecution bar tailored to the technology at issue in this case:  "the use of calibration to improve the performance characteristics of voltage regulator circuits for powering integrated circuit chips and microprocessor chips."  (Exhibit A, ¶ 2.18.)  Consistent with customary practice, Plaintiffs propose that Relevant Technology be defined as coextensive with the technology at issue.

Intel, on the other hand, seeks to extend the scope of the prosecution bar to cover the entire field of voltage regulation as well as the entire fields of integrated circuit and microprocessor design.[1]  Such a broad prosecution bar would effectively prevent Plaintiffs' experts and counsel from involvement in patent prosecution involving a huge swath of technology far beyond what is at issue here.  For example, it would effectively preclude Plaintiffs' technical counsel at the Klarquist firm from substantive involvement in this case because the prosecution bar would prevent them from performing patent prosecution services that do not involve voltage regulation, including the entire fields of  microprocessor and integrated circuit design, as well as those involving integrated circuits used in unrelated fields, such as power regulation in electrical utility power systems or renewable energy sources for clients that are in no sense competitors of Intel. *See MedImmune, Inc.*, 271 F. Supp.2d at 775 (refusing a patent prosecution bar when there had been no showing that patent counsel was currently prosecuting patents in the same subject matter

---

[1]   Intel's proposed Relevant Technology definition is as follows:  "The design of microprocessors and integrated circuits, including voltage regulators and circuits for regulating power in microprocessors or other integrated circuits."

of the litigation).  As noted above, the burden of Intel's proposed limitation on experts and counsel

would fall almost exclusively on Plaintiffs' experts and counsel and have little or no effect on

Intel's experts and counsel, because the items of discovery that would be subject to the prosecution

bar would come exclusively or almost exclusively from Intel's discovery items and not from

Plaintiffs' discovery items.

Not only is Intel's proposed Relevant Technology definition objectively unreasonable, it

also deviates from Intel's own customary practice as reflected in at least three other protective

orders involving Intel in other patent litigations.  In each such case, the scope of the protective

order prosecution bar was limited to the specific technology involved in the patents asserted as

infringed.  *See Memory Integrity, LLC v. Intel Corp.*, No. 3:15-cv-00262, Protective Order Dkt-92

at ¶ 5(b) (D. Or. Jun. 3, 2015) (Exhibit F); *VLSI Technology LLC v. Intel Corp.*, No. 5:17-cv-

05671, Protective Order Dkt-107 at Section H (N.D. Cal. Jun. 18, 2018) (Exhibit G); *Godo Kaisha*

*IP Bridge 1 v. Intel Corp.*, No. 2:17-cv-00676, Protective Order Dkt-56 at ¶ 28 (E.D. Tex. Mar. 5,

2018) (Exhibit H).[2]  Notably, two of these cases involve the same counsel as the instant case.

---

[2]    The relevant technology definitions in each of these other pending Intel patent suits are as
follows, and in each case track closely the scope of the patents at issue, rather than an entire
general field of engineering as Intel seeks here.

*Memory Integrity*:  "any cache coherence feature, function, or method that, generally or as
described in asserted patents, reduces cache-coherency-related traffic, improves throughput of
cache coherency-related traffic, maintains cache coherence, and/or reduces latency or delay of
cache coherency-related traffic."  (Exhibit F, ¶ 5(b).)

*VLSI*:  "(a) the structure and operation of cache memories; (b) structures and methods for the
formation, connection, packaging and assembly of field effect transistors, including, and not
limited to, (1) fabrication of FinFETs or tri-gate transistors and (2) connection or assembly of
one or more chips, such as through a silicon bridge; (c) power management used in
microprocessors for adjusting power of at least a portion of a component in the
microprocessors as reflected in the material produced in this case; (d) voltage level shifting,
including but not limited to memory address decoding circuitry, and word line drivers used in
memory circuitry; (e) scheduling applications on one or more cores in a multi-core processor

Plaintiffs request that the Court adopt Plaintiffs' Relevant Technology definition, which is concise and directed the technical issues actually involved in this matter.[3]

## B.   **Prosecution Bar Time Limit**

Although the Northern District model form provides for a two year prosecution bar, Intel previously proposed to Plaintiffs a one year bar, and a one year bar is what is provided in the Temporary Protective Order entered in this case.  Plaintiffs submit that a one year bar is appropriate in light of the fast-moving nature of technology involved in this case.  Plaintiffs also suggest the end date for the prosecution bar be one year after an individual has accessed sensitive material, rather than one year after the final conclusion of the case.  This is logical in that it protects the party producing information from any alleged competitive harm, but does not tie an end date to an open-ended conclusion of this lawsuit.  Naturally, if an expert or counsel is involved in post-trial briefing or appellate issues, and they review sensitive material in that context, the prosecution bar will continue.  However, memory of technical details that might be useful in drafting or revising patent claims onto Intel products would be expected to have dissipated one year after last access.  Any expert, consultant, or counsel that does not have continuing access to Designated Material in this matter should not be unreasonably restrained from employment or prosecuting patent applications for an indeterminate period of time in the future.

---

as reflected in the material produced in this case; or (f) power islands or voltage islands in an integrated circuit." (Exhibit G, Section H.)

*Godo Kaisha*:   "interlayer dielectric materials, interconnect patterning and etching, semiconductor device patterning, interlayer dielectrics and hermetic sealing, wiring-to-substrate capacitance, semiconductor region doping, and trench isolation techniques." (Exhibit H, ¶ 28.)

[3]   In the alternative, if the Court were inclined to extend the scope of the prosecution bar beyond the subject matter of the patent at issue, Plaintiffs ask that the Court limit "Relevant Technology" to "circuits for regulating power in microprocessors or other integrated logic circuits."

PLAINTIFFS' MOTION FOR ENTRY OF REASONABLE PROTECTIVE ORDER          8

Also, the current protective order is ambiguous because is prohibits prosecution for "an application that was filed, less than one year following the final termination of this action (including any appeals)," but does not state a beginning date.  Thus, it is not clear whether patent applications filed before entry of the order, or prior to this action, are covered by the order.

Furthermore, it is the Plaintiff's understanding that Intel does not require a prosecution bar for former employees or third parties that have access to similar materials.  Such persons are more likely to use designated materials for competitive advantage than experts, consultants, or counsel for Plaintiffs.

This request is reasonable and one to which Intel has previously agreed in another matter. In the *AVM Technologies, LLC v. Intel Corporation* case, Intel agreed to this very provision. *See* ECF 37 filed in Cause No. 1:10-cv-00610, In the United States District Court for the District of Delaware.

## C.    Production and Inspection of Properly Designated "Source Code" Materials

### 1.    Access to Material

Plaintiffs' request sensitive material (such as "Source Code" designated material) be produced at Plaintiffs' counsel's offices[4], Plaintiffs' expert's office, and have the ability to use dedicated laptops to take notes (*see* Exhibit A, ¶9(c)).

Intel proposes to limit access to source code material to a single computer at its Portland counsel's office.  Intel then proposes to add additional restrictions on the manner in which source code material can be used, essentially limiting counsel and experts to handwritten notes in a spiral notebook, or copies of limited segments to be requested through Intel's counsel, thereby severely

---

[4]    To avoid cost to Defendant, Plaintiff offers to purchase dedicated computers on which the sensitive information can be loaded.  These dedicated computers will be stored and safeguarded as described in Section C(2) below.

restricting the ability of Plaintiffs' counsel or experts to make practical and efficient use of source code material. Further, the requirement to filter requests for copies of snippets of source code through Intel's counsel would require the sharing of work product with Intel's counsel in order to make meaningful use of the source code information. Intel's proposed order also (and unnecessarily) adds language pre-placing limits on how much source code documents Plaintiffs can request in paper format for filing briefs or other documents. (p. 18, sec. 9(d)).

Further, it is the Plaintiff's understanding that Intel does not require such access restrictions for former employees or third parties that have access to similar materials. Such persons are more likely to use designated materials for competitive advantage than experts, consultants, or counsel for Plaintiffs.

Plaintiffs' lead counsel is located in Houston, Texas; Plaintiffs' identified expert is based in North Carolina. Requiring Plaintiffs' counsel and expert to travel to Portland, Oregon, to review source code, and while there be limited to a single computer with essentially no ability to record their thoughts and analysis of the source code other than in a handwritten spiral notebook is unduly restrictive and presumes that Plaintiffs' counsel and experts cannot be trusted to comply with restrictions that could be placed in the protective order.

Intel has now produced source code designated documents for entire microprocessors, as opposed to only the specific features at issue in this litigation.[5] Everything Intel has produced thus far under on the secure computer (source code, schematics, etc.) requires extensive searching just to try to locate relevant information. This is akin to Plaintiffs asking for information from a car

---

[5] Plaintiffs and Intel agreed to a temporary protective order in order to allow discovery to proceed while a permanent protective order was negotiated. Under the parties' Temporary Protective Order, Intel has produced source code material under strict limitations comparable to what Intel seeks in its proposed permanent protective order.

manufacturer about an anti-lock brake system and the car manufacturer producing every design and schematic for the entire car.  To only have one computer available for such review during Intel's Portland Counsel's business hours and to be limited to handwritten notes in the process dramatically constrains the flow of information to Plaintiffs.

Plaintiffs' request for information produced at Plaintiffs' counsel's offices, Plaintiffs' expert's office, and the ability to use duplicated laptops to take notes (*see* Exhibit A, ¶9(c)) is reasonable and should be approved.

**2.    Sensitive Information is Still Protected in Plaintiffs' Proposal**

Plaintiffs' proposed protective order would allow source code materials to be maintained and stored by the Receiving Party at an office of the Receiving Party's Outside Counsel of Record or an office of an Expert in a manner that prevents unauthorized access, and includes strict safeguards to prevent unauthorized use or disclosure:

- The material must be placed on encrypted, password protected external media such as optical discs, flash drives, or hard drives with generally-accepted, effective encryption means such as BitLocker or VeraCrypt.

- The material may only be viewed on a non-networked computer maintained in a locked room accessible only by Outside Counsel of Record or authorized Experts, and on an access restricted floor.

- The material must be kept in a locked safe or storage cabinet when not connected to or inserted in the non-networked computer for viewing. No material may be left on the non-networked computer when the external media is not connected to or inserted in the non-networked computer.

- Counsel must disclose to the supplying party the location where the material will be maintained, and the security precautions undertaken to maintain confidentiality of the material both while the material is being reviewed and while the material is not being reviewed.

- Every page of the material that has been printed or copied onto paper shall be recorded on a print log. All printing and copying shall be onto paper conspicuously marked "HIGHLY CONFIDENTIAL - SOURCE DESIGNATED CODE" on each page. All print logs shall be made available to the supplier of the material for inspection upon request.

PLAINTIFFS' MOTION FOR ENTRY OF REASONABLE PROTECTIVE ORDER          11

- No portion of the material shall be e-mailed or transmitted via any electronic transmission method except when included in a pleading (served or filed) or attached to a deposition transcript. All transfers of material shall be by way of physical transfer of encrypted external media. Material, other than that attached to a pleading (served or filed) or a deposition exhibit, shall not be placed on an FTP site or stored in an internet accessible location for any reason for any period of time.

Plaintiffs' request for reasonable access in order to sift through the material that has already been produced and likely will continue to be produced should be granted by this Court.

### 3.    Access for Ahmad Ashrafzadeh

Plaintiffs additionally seek the ability for Ahmad Ashrafzadeh to have the ability to review documents produced in this case.  Ashrafzadeh is a named plaintiff and one of the named inventors of the patent in question.  He is an electrical engineer, but is not in competition with Intel.  His ability to review documents would be invaluable to Plaintiffs in this matter. Plaintiffs' proposed protective order provides significant safeguards and conditions to protect information Intel considers to be sensitive.[6] *See section C(2), supra*.  Further, prohibiting Ashrafzadeh from viewing produced documents impairs Plaintiffs' ability to litigate this case and to thwart its right to understand the advice of its counsel.

Defendant seeks to block Ashrarzadeh from having any access to properly designated materials above the "confidential level." As the party seeking a restriction on disclosure, Defendant must show good cause. This it cannot do.  As the party seeking to prevent disclosure, Defendant bears the burden of showing good cause for the protection it seeks here. *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). This burden requires a

---

[6]  While Defendant may claim its proposal is fair because neither party will have access to the other's confidential information, that argument is without merit. There is little dispute that the information most highly relevant to the merits of the case—infringement and damages—will be Defendant's own information. Accordingly, Defendant faces relatively little impairment if it claims it is willing to forego access to Plaintiff's confidential information, and Defendant will likely face no impairment at all to its ability to assist its outside counsel in litigation.

threshold showing that "disclosure will work a clearly defined, specific and serious injury." *U.S. ex rel. McCoy v. Cal. Med. Review, Inc.*, 133 F.R.D. 143, 146 (N.D. Cal. 1990). Defendant may not rest upon "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning" to establish good cause. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citation omitted). And, even if some harm is established, courts require that the court balance both the interests of the parties and the public before determining whether to grant a protective order. *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*, 860 F.3d 1244, 1260 (9th Cir. 2017).

> The factors typically considered in weighing whether to grant a protective order, include:
>
> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 n.5 (9th Cir. 2011) (*quoting Glenmade Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)). None of the public interest factors are applicable in this instance. Moreover the information is sought for a legitimate and proper purpose—that of determining violation of U.S. patent law.

The threshold question is whether the disclosure of Defendant's confidential information to Ashrafzadeh "will cause a clearly defined and serious injury." *See Codexis, Inc. v. EnzymeWorks, Inc.*, No. 3:16-cv-00826-WHO, 2017 WL 5992130, at *7–8 (N.D. Cal. Dec. 4, 2017) (granting disclosure of confidential information to party's expert where the parties were not in direct competition with each other); *Merit Indus., Inc. v. Feuer*, 201 F.R.D. 382, 385 (E.D. Pa. 2001) (granting defendant's employees access to plaintiff's highly confidential information after

concluding that there was no evidence that defendant was a direct competitor). Defendant cannot identify any concrete harm that will result from the limited disclosure of confidential information sought by Plaintiffs.

The risks associated with disclosure of confidential information are wholly different where the parties are not competitors. *See Codexis, Inc.*, 2017 WL 5992130, at *7–8; *Merit Indus., Inc.*, 201 F.R.D. at 385-386. Indeed, "it is presumed that disclosure to a party who is not in competition …will be less harmful than disclosure to a competitor." *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.,* 107 F.R.D. 288, 293 (D. Del. 1985) (ordering disclosure of trade secret information in commercial dispute where the parties were not competitors); *see also Am. Standard Inc. v. Pfizer Inc.,* 828 F.2d 734, 741 (Fed. Cir. 1987) ("Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor."); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 531 (N.D. Cal. 2000) ("Some courts have found an increased risk of harm when information is being disclosed to a direct competitor."); *Boehringer Ingelheim Pharm., , Inc. v. Hercon Labs. Corp.*, No. 89-484-CMW, 1990 WL 160666, at *2 (D. Del. Oct. 12, 1990) (refusing to allow internal experts to have access to confidential information because the parties were "in direct competition with each other.").

The only potential harm articulated by Defendant to date is that Ashrafzadeh is involved in patent development and could hypothetically use Defendant's confidential information to pursue new inventions and patents. But Defendant's approach—denying Ashrafzadeh all access—is not necessary to prevent this speculative harm. As noted above, the proposed protective order already precludes anyone from using confidential information obtained during discovery for any purpose other than the litigation. Furthermore, the proposed protective order explicitly prevents patent prosecution activity by anyone who reviews certain highly confidential information. (Exhibit A, ¶

PLAINTIFFS' MOTION FOR ENTRY OF REASONABLE PROTECTIVE ORDER      14

8, p. 15.)  Moreover, this Court would, of course, retain jurisdiction over the parties and individuals to enforce any violations of the protective order. As a consequence, Defendant's fears of misuse of its information are speculative and unfounded.  The fact that Ashrafzadeh is an engineer and an inventor does not in and of itself mean that he is a "competitor" of the Defendant, nor does it mean that Defendant's confidential information is at any greater risk for misuse. *See Codexis, Inc.*, 2017 WL 5992130, at *8 (holding that there was "no reason to deny [plaintiff's expert] access to [the defendant's] disclosures in this case, especially given his signed agreement to be bound to the protective order"); *E.I DuPont de Nemours & Co. v. Phillips Petroleum Co.,* No. 81-508, 1982 WL 63780, at *39 (D. Del. May 17, 1982) ("The Court is unable to perceive that there would be any greater possibility of abuse of confidential information if disclosed to inside experts and consultants than might exist with outside experts and consultants, provided that those in both groups are required to execute a sworn statement to abide by the terms of the protective order and submit for enforcement purposes to the jurisdiction of the Court."). This case will likely involve many outside experts with credentials comparable to Ashrafzadeh.  As such, there is no basis to believe that Ashrafzadeh' s  technical and professional background presents any greater risk that Defendant's information will be misused then there is a risk that the outside experts in this case would do so.

Accordingly, this Court should grant Ahmad Ashrafzadeh access to the documents produced in this matter.

**D.**     **Procedures for Designating Sensitive Material and Resolving Disputes Over the Same**

The Northern District model form contains provisions prohibiting indiscriminate designation and over-designation of materials as confidential.  (See Exhibit B, ¶¶ 5.1, 5.2(a) and 5.2(c).)  The model form also imposes the burden of seeking court intervention regarding the appropriateness of confidentiality designations on the designating party.  (See Exhibit B, ¶ 6.3.)

Intel proposes to eliminate the provisions against over-designation and to shift the burden in disputes over proper designation to the party contesting the designation.  (See Exhibit D, ¶¶ 5.1, 5.2(a), 5.2(b) and 6.3.).   Other courts have commented on the necessity for this provision, explaining it insures parties do not adopt a "carte blanche" approach to designating information not otherwise entitled to that level of protection. *See Quality Inv. Properties Santa Clara, LLC v. Serrano Elec., Inc.*, 2010 WL 2889178 at *2 (N.D. Cal. July 22, 2010).

Intel has provided no good reason for its suggested deviations from the Northern District model form; Plaintiffs request that the provisions regarding confidentiality designation and judicial intervention regarding the same be entered unchanged from the model form, as reflected in Exhibit A (and Exhibit C), ¶¶ 5.1, 5.2(a), 5.2(b) and 6.3.)[7].

**E.    Expert Qualification Process**

Plaintiffs propose that expert access to Protected Material and disputes over the same follow the provisions of the Northern District model form, including incorporating the alternative language stated in footnote 7 of the model form.  (See Exhibits A and C, ¶¶ 7.3-7.4.)  The model form provides that if opposing counsel objects to an expert, the party seeking to disclose information to the expert may file a motion seeking permission for providing confidential information to the expert.  Plaintiffs believe this model form language is appropriate.

Intel, however, proposes to shift the motion obligation to the party objecting to the disclosure.  (See Exhibit D, ¶ 7.4(c).)  While Intel's proposed change may seem to benefit

---

[7]    Plaintiffs' concerns regarding over-designation is hardly theoretical.  For example, virtually every single page produced by Intel to date in this matter (almost 60,000 pages) have been produced as ATTORNEY EYES ONLY (not counting the material that has been made available subject to a "Source Code" Designation).

Plaintiffs,[8] Plaintiffs are concerned that Intel's proposed changes are ambiguous regarding what happens if the objecting party fails to make the motion. If Intel's proposal were adopted, it would shift control of the timing of resolving disputes over expert access to the party objecting to access, rather than placing properly within the control of the party seeking access. Plaintiffs propose that the structure regarding objections to experts reflected in the model form be retained. (See Exhibit C, ¶ 7.4(c).)

Footnote 7 of the Northern District model form provides the following additional alternative language regarding disclosure of confidential information to experts: "'CONFIDENTIAL' or 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' information or items may be disclosed to an Expert without disclosure of the identity of the Expert as long as the Expert is not a current officer, director, or employee of a competitor of a Party or anticipated to become one." (Exhibit B, footnote 7.) The identity, number, and subject-area of expertise can reveal litigation strategy, resources and attorney thought processes. The purpose of requiring identification of experts to opposing counsel in the context of a protective order is to reduce the risk that a competitor may have access to confidential information, and allow the producing party to object. The Northern District model form's alternative language that Plaintiffs propose to include in the protective order here protects against that risk by removing the notice requirement only for experts who do not and are not anticipated to work for competitors. Plaintiffs request that the model language of footnote 7 be incorporated into the protective order in this case. (See Exhibits A and C, ¶ 7.3(c).)

---

[8] Since, as discussed above, it is more likely that Plaintiffs' experts will need access to Intel confidential information than Intel's experts would need access to Plaintiffs' confidential information.

PLAINTIFFS' MOTION FOR ENTRY OF REASONABLE PROTECTIVE ORDER        17

**F.**    **Inadvertent Production of Material**

Plaintiffs propose that the protective order follow the Northern District model form regarding the treatment of inadvertent production of privileged or otherwise protected material. (See Exhibit A and C, ¶ 13.)  The model form cross-references Federal Rule of Civil Procedure 26(b)(5)(B) for the nature and scope of the obligations of the receiving party in such circumstances. Intel's proposed form would substitute a different (and more onerous) set of obligations on the receiving party than those specified in Rule 26(b)(5)(B).  Plaintiffs submit that the model form's approach is the correct one.

**ALTERNATIVE REQUEST FOR
ENTRY OF MODEL ORDER FROM THIS DISTRICT**

If this Court is inclined to consider another option, Plaintiffs have no opposition to the entry of the model two-tier protective order offered by the District Court of Oregon.

**PLAINTIFFS REQUEST A STAY OF CURRENT DEADLINES PENDING
RESOLUTION OF THIS DISPUTE**

The dispute over these provisions has lasted long enough to prevent Plaintiffs' proposed expert and its local counsel (who are experienced patent prosecution attorneys) the opportunity or ability to review Intel's recently produced materials.  Through an agreement between the two sides, Plaintiffs' infringement contentions are due August 13.  However, resolution of this matter may not provide sufficient time to allow for sufficient review of the documents by qualified individuals.

As such, Plaintiffs request this Court stay the current deadlines until a time when the protective order and expert issue has been resolved.

**CONCLUSION**

The Plaintiff's proposed Protective Order balances protection for Intel's designated materials without placing undue burden on the Plaintiffs.  Accordingly, Plaintiffs request this Court enter an order as requested above.

PLAINTIFFS' MOTION FOR ENTRY OF REASONABLE PROTECTIVE ORDER          18

DATED this 2nd day of August, 2018.

Respectfully Submitted,

By: */s/ Patrick B. McAndrew*
Jeffrey S. Love, OSB No. 873987
John D. Vandenberg, OSB No. 893755
Mark W. Wilson, OSB No. 091596
KLARQUIST SPARKMAN, LLP

Howard L. Close
Kathleen S. Rose
Patrick B. McAndrew
Ronald L. Flack, Jr.
WRIGHT CLOSE & BARGER, LLP

Richard N. Laminack
LAMINACK, PIRTLE & MARTINES

Luke Motley IV
LAW OFFICES OF LUKE MOTLEY, IV PC

**Attorneys for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document is being served on all counsel of record through the Court's ECF system on August 2, 2018.

*/s/ Patrick B. McAndrew*
Patrick B. McAndrew