Renée E. Rothauge, OSB #903712
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, Oregon 97204-3730
Telephone: (503) 295-3085
Fax: (503) 323-9105
reneerothauge@markowitzherbold.com

Michael J. Summersgill (*pro hac vice*)
Jordan L. Hirsch (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000
michael.summersgill@wilmerhale.com
jordan.hirsch@wilmerhale.com

Todd C. Zubler (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363
todd.zubler@wilmerhale.com

Arthur W. Coviello (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6069
Fax: (650) 858-6100
arthur.coviello@wilmerhale.com

*Attorneys for Defendant and Counterclaim Plaintiff Intel Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| FEREYDUN TABAIAN and AHMAD ASHRAFZADEH, <br><br> Plaintiffs, <br><br> v. <br><br> INTEL CORPORATION, <br><br> Defendant. | Case No.: 3:18-cv-326-HZ <br><br> **INTEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS TO IDENTIFY THE INFRINGEMENT THEORIES THEY INTEND TO PURSUE** |

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT.......................................................................................................4

    A.    Plaintiffs' Excuses And Irrelevant Accusations Do Not Justify Their Failure To Narrow Their Infringement Theories .................................................4

    B.    Plaintiffs' Argument That Intel "Clearly Understands" Plaintiffs' Infringement Contentions Misses The Point .................................................8

    C.    Intel's Motion Is Supported By Law In This District And The Northern District Of California .................................................................................9

    D.    Intel's Motion Is Not A "Summary Judgment Motion In Disguise".....................13

    E.    Intel Is Prejudiced By Plaintiffs' Assertion Of Thirteen Different Infringement Theories.................................................................................14

III.  CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bender v. Advanced Micro Devices, Inc.*,
No. C-09-1149 MMC (EMC), 2010 WL 363341 (N.D. Cal. Feb. 1, 2010) .............................12

*Bender v. Freescale Semiconductor, Inc.*,
No. C 09-1156 PHJ MEJ, 2010 WL 1689465 (N.D. Cal. Apr. 26, 2010) ................................9

*Bender v. Maxim Integrated Prods., Inc.*,
No. C09-01152 SI, 2010 WL 1135762 (N.D. Cal. Mar. 22, 2010) ..........................................13

*Broadcom Corp. v. Emulex Corp.*,
No. 8:09-cv-01058, Dkt. 167 (C.D. Cal. June 30, 2010) .........................................................12

*Cummins-Allison Corp. v. SBM Co.*,
No. 07-cv-196, 2009 WL 806753 (E.D. Tex. Mar. 19, 2009) ..................................................15

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.*,
No. 09-cv-116, 2010 WL 346218 (E.D. Tex. Jan. 21, 2010) ...................................................13

*FusionArc, Inc. v. Solidus Networks, Inc.*,
No. C 06-06760 RMW (RS), 2007 WL 1052900 (N.D. Cal. Apr. 5, 2007)..............................11

*Grecia v. Apple Inc.*,
No. C-14-0775 EMC, 2014 WL 4685195 (N.D. Cal. Sept. 19, 2014) ......................................10

*Medtronic Minimed Inc. v. Animas Corp.*,
No. CV 12-04471.......................................................................................................................12

*Memory Integrity, LLC v. Intel Corp.*,
No. 3:15-cv-262-SI, 2015 WL 6659674 (D. Or. Oct. 30, 2015) ...............................2, 9, 11, 13

*Shared Memory Graphics LLC v. Apple, Inc.*,
812 F. Supp. 2d 1022 (N.D. Cal. 2010) ........................................................................9, 10, 13

*Stamps.com Inc. v. Endicia, Inc.*,
437 F. App'x 897 (Fed. Cir. 2011) ...........................................................................................11

*Straight Path IP Grp., Inc. v. Apple Inc.*,
No. C 16-03582 WHA, 2017 WL 1365124 (N.D. Cal. Apr. 13, 2017)........................... *passim*

## I.    INTRODUCTION

Plaintiffs make a host of excuses and irrelevant accusations to try to justify their refusal to narrow their infringement contentions.  Each is wrong.

- Plaintiffs accuse Intel of copying the '944 patent.  Opp. at 1, 3.  As an initial matter, this has nothing to do with whether Plaintiffs should have to narrow their infringement contentions.  In any event, there is not a shred of evidentiary support for this allegation— Plaintiffs do not cite a single document, statement, or line of testimony to support their claim.

- Plaintiffs argue that they did not have enough time to review the technical documents Intel produced relating to FIVR.  *Id.* at 4-6.  But Plaintiffs concede that they ***and their expert*** have had ***six months*** to review the FIVR technical information.  *Id.* at 4-5. Plaintiffs also ignore the fact that they have deposed the lead designer of FIVR and taken two 30(b)(6) depositions on the structure, function, and operation of FIVR.

- Plaintiffs claim that they did not have sufficient access to the FIVR source code.  *Id.* at 1, 5-6.  But, as shown in the attached source code review log (Ex. 1), Plaintiffs have reviewed the code ***on thirty-seven separate occasions*** for a total of ***more than 225 hour***s.[1]  *Id.*

- Plaintiffs argue that, even though they have retained a technical expert who has access to all of the FIVR materials, one of the named Plaintiffs, Ahmad Ashrafzadeh, should also have been permitted to review Intel's highly sensitive technical information.  Opp. at 5. ***But the Court already addressed and rejected this argument months ago***.  Consistent

---

[1]    Exhibit 1 is attached to the Declaration of Carol M. McLemore.  Exhibits A and B are attached to the Declaration of Jordan L. Hirsch.

**INTEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS TO IDENTIFY THE INFRINGEMENT THEORIES THEY INTEND TO PURSUE**

with the Court's ruling denying Plaintiffs' proposed protective order, it is standard in

patent infringement cases for the named plaintiffs not to have access to the defendant's

sensitive technical information.  ECF 82.

Indeed, if any of Plaintiffs' complaints were legitimate, they could have filed a motion to

compel.  Yet they never did.  Instead, Plaintiffs make these allegations and excuses because their

arguments fail on the merits.

*First*, Plaintiffs argue that they should not be required to narrow their infringement

theories because Intel understands their theories.  Opp. at 8-9.  This misses the point.  Intel never

suggested that it did not understand Plaintiffs' theories.  The point is that by asserting ***thirteen***

separate and sometimes contradictory theories, Plaintiffs have not provided Intel with effective

notice of the arguments they will actually pursue.  By forcing Intel to defend against their many

different theories, Plaintiffs are impairing Intel's ability to take discovery on and develop

arguments specific to the theories that Plaintiffs will ultimately pursue.

*Second*, Plaintiffs argue that the law does not support Intel's requested narrowing.  *Id.* at

12-13.  This is also wrong.  Intel's request is entirely consistent with the Northern District of

California's Patent Local Rules, which require plaintiffs to provide infringement contentions

***before*** claim construction so that the parties can then focus discovery, claim construction

briefing, and argument on the terms and disputes that are relevant to alleged infringement.  *See*

N.D. Cal. Patent L.R. 3-1, 3-3, 4-1.  Consistent with that, courts—including in this district and

the Northern District of California—routinely require plaintiffs to narrow their infringement case

and to do so before claim construction (or earlier).  *See Memory Integrity, LLC v. Intel Corp.*,

No. 3:15-cv-262-SI, 2015 WL 6659674, at *2-4 (D. Or. Oct. 30, 2015) (Simon, J.) (ordering

reduction of asserted patent claims from 118 to 15 before claim construction); *Straight Path IP*

*Grp., Inc. v. Apple Inc.*, No. C 16-03582 WHA, 2017 WL 1365124, at *2 (N.D. Cal. Apr. 13, 2017) (ordering a limit of ten claims before claim construction where plaintiff initially asserted 37 claims).

      ***Third***, Plaintiffs argue that Intel's motion should be denied because it is "a summary judgment motion in disguise." Opp. at 10. This is again incorrect. Courts regularly require plaintiffs to limit their allegations well before summary judgment in order to narrow the case and focus claim construction, fact discovery, expert discovery, and summary judgment on the arguments that the plaintiff actually intends to pursue. *Straight Path IP Grp.*, 2017 WL 1365124, at *2 (limiting plaintiff to ten asserted claims before claim construction, citing "authority to trim these cases down to manageable size and to reduce the drain on resources"). In fact, Plaintiffs' argument highlights why it is necessary to narrow their infringement theories now—it would be nearly impossible for either Intel or the Court to address all thirteen of Plaintiffs' infringement arguments in a single summary judgment motion.

      ***Finally***, Plaintiffs assert that Intel is not prejudiced by their assertion of thirteen different infringement theories. Opp. at 9. But Intel is prejudiced because it has no real notice of the theories Plaintiffs will ultimately pursue and cannot realistically address each of Plaintiffs' theories in full given the discovery limits. For example, Intel could not possibly address all thirteen infringement theories in one deposition of Plaintiffs' technical expert. By asserting thirteen infringement theories, Plaintiffs therefore conceal the theories they will ultimately pursue among the many they will not. Courts have repeatedly and specifically forbidden such attempts to "hide the ball." *See, e.g.*, *Straight Path IP Grp.*, 2017 WL 1365124, at *1 ("So two claims is good. But you got to get there, and you can't start off with 37 claims and then figure

        **INTEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS TO IDENTIFY THE INFRINGEMENT THEORIES THEY INTEND TO PURSUE**

out which ones you're going to lose on and finally give it all up at the end.  Look, that's not fair

to the system.  You ought to be able to know which ones you've got a good faith basis for.").

## II.     ARGUMENT

### A.     Plaintiffs' Excuses And Irrelevant Accusations Do Not Justify Their Failure To Narrow Their Infringement Theories

Plaintiffs litter their opposition with excuses and unsupported allegations to try to justify

their failure to narrow their infringement theories.  Each is wrong.

***First***, Plaintiffs allege that Intel copied the '944 patent.  Opp. at 1, 3.  They assert that

Intel "plumb[ed]" the '944 patent's inventors on their ideas (*id.* at 1) and "tracked" Plaintiffs'

technology (*id.* at 3).  This accusation has nothing at all to do with the sufficiency of Plaintiffs'

infringement allegations or whether Plaintiffs should be required to identify the three

infringement theories they intend to pursue.  Plaintiffs' argument is at best a misguided attempt

to distract from the merits of Intel's motion.  But even putting that aside, Plaintiffs do not have a

shred of evidentiary support for their copying allegation.  Plaintiffs do not cite a single

document, statement, or line of testimony to support their assertion that Intel "plumb[ed]" the

named inventors for their ideas.  And for good reason.  The only evidence is that when the

inventors approached Intel in 2003—which was years before the '944 patent even issued—they

did not discuss patents or any alleged patent infringement.  Instead, they asked if Intel was

interested in funding or acquiring NuPower and Intel declined.  ECF 84 at 4; ECF 85-1 ¶ 7.

Plaintiffs' suggestion that Intel "tracked" the '944 patent is equally baseless.  Plaintiffs

cite a single page of Intel's privilege log and speculate—without any support—that references on

the log to "intellectual property issues" refer to the '944 patent.  Opp. at 3; *see* ECF 103-1 at 12.

But nothing in those log entries or elsewhere supports Plaintiffs' assertion that those "intellectual

property issues" have anything at all to do with the '944 patent rather than other (privileged) legal issues.

*Second*, Plaintiffs assert that they cannot narrow their infringement contentions because they have not had enough time to review the documents and information Intel has produced related to the accused FIVR technology.  Opp. at 5.  This excuse is similarly flawed.  Even Plaintiffs admit that their lawyers and their current technical expert have had access to the FIVR technical documents and source code since at least September 2018—*for six months*.  *Id.* at 4-5.  Moreover, although Plaintiffs allege that their "patent counsel" did not access the FIVR technical information until September 2018 (presumably referring to the Klarquist firm), *id.* at 5, Plaintiffs' other law firms—the Wright Close & Barger, LLP firm, the Law Offices of Luke Motley, IV PC, and the Laminack, Pirtle & Martines firm—had access to the FIVR technical information, including design documents, schematics, and source code, as early as July 2018— ***eight months ago***.  *See* Ex. 1.  Plaintiffs have had more than enough time to narrow their infringement theories.[2]

*Third*, Plaintiffs suggest that they could not narrow their infringement theories because their initial proposed expert—Mike Walters—was excluded and they did not find another expert until the end of August 2018.  Opp. at 5.  As an initial matter, Plaintiffs have only themselves to blame for any delay that resulted from their need to find a new expert.  Plaintiffs filed this case in February 2018.  *See* ECF 1.  They waited until July 2018 to try to designate an expert.  *See* ECF 60 at 7.  And when they finally identified an expert, they picked Mr. Walters despite the fact that he had a prior ten-year confidential relationship with Intel.  *See id.* at 4-7 (describing Mr.

---

[2]     Plaintiffs strangely assert that Intel should have filed its motion earlier.  Opp. at 9, 9 n.6.  But Intel did not file its motion earlier in order to give Plaintiffs sufficient time to review the produced discovery before narrowing their contentions.

Walters' ten-year relationship with Intel). The Court properly excluded Mr. Walters because of this clear conflict of interest. ECF 88. Plaintiffs' improper attempt to use Mr. Walters as an expert cannot justify their failure to narrow their infringement theories. Moreover, after Mr. Walters was excluded, Plaintiffs requested and received a ***three-month*** extension to review Intel technical information with their new expert so that they could prepare revised infringement contentions. ECF 83. Plaintiffs' argument that the relief that they themselves requested was not enough rings hollow.

***Fourth***, Plaintiffs claim that they did not have sufficient access to the FIVR source code to narrow their infringement theories. Opp. at 1, 5-6. Plaintiffs argue that they have not reviewed the FIVR code more than 30 times (as Intel stated in its opening brief), that Intel has not provided a computer that has the tools needed to review the source code, and that Intel has tried to prevent Plaintiffs from reviewing source code. *Id.* at 5-6. Each of these claims is directly contrary to the factual record:

- Intel's Portland counsel has maintained a contemporaneous log of each instance in which Plaintiffs have reviewed the FIVR code—who participated in the review, the time they arrived, and the time they left. The log, which is attached as Exhibit 1, shows ***thirty-seven separate occasions*** on which Plaintiffs reviewed the FIVR code. Ex. 1.[3]

- Out of the thirty-seven instances in which Plaintiffs reviewed the code, there were just ***two instances***—one in October 2018 and one in February 2019—in which Plaintiffs reported that they were unable to review a subset of files on the source code computer. In

---

[3]    In fact, on two other occasions, Plaintiffs asked Intel to make its source code review computer available—forcing Intel to clear space in its counsel's office for an entire day—and then did not show up to review. Ex. 1.

October 2018, Intel fixed the issue *the same day* Plaintiffs raised it.  Ex. A, Oct. 29, 2018

Letter from Hirsch to Close at 3.  In February 2019, Intel resolved the issue within 24-

hours.  Ex. B, Feb. 15, 2019 Email from Coviello to Close at 1.

    *Finally*, Plaintiffs argue that they cannot narrow their infringement theories because,

even though they have a technical expert who has access to all of the information Intel has

produced in this case, they have not been permitted to show Plaintiff Ahmad Ashrafzadeh Intel's

highly sensitive technical information.  Opp. at 5.  *But the Court already rejected Plaintiffs'*

*request to disclose Intel's highly confidential information to Mr. Ashrafzadeh*.  During the

negotiation of the Protective Order, Plaintiffs insisted on provisions that would have allowed Mr.

Ashrafzadeh to access all of Intel's information regarding FIVR.  ECF 72 at 3.  Intel opposed,

explaining that Mr. Ashrafzadeh currently works for a semiconductor company, is involved in

filing patent applications, and could use Intel's sensitive design information to cause competitive

harm.  *Id.* at 3, 21-27.  On August 31, 2018, the Court agreed with Intel and entered a Protective

Order that *prevents* Mr. Ashrafzadeh from accessing Intel's confidential documents.  *See* ECF

82.  This is standard in patent infringement cases—it is typical to deny named plaintiffs access to

the defendant's highly confidential information.  ECF 72 at 21-25 (collecting cases).  Plaintiffs'

unsuccessful attempt to disclose Intel's highly confidential information to Mr. Ashrafzadeh does

not excuse their failure to narrow their infringement theories.

    If Plaintiffs truly believed Intel had denied them access to information about FIVR, they

could have filed a motion to compel.  That they never did so simply confirms that there are no

grounds for such a motion—Plaintiffs have had access to comprehensive information regarding

FIVR since early in the discovery period.  Instead, Plaintiffs make these allegations and excuses

because—as set forth below—their arguments fail on the merits.

**B.** **Plaintiffs' Argument That Intel "Clearly Understands" Plaintiffs' Infringement Contentions Misses The Point**

Plaintiffs first argue that they should not be required to narrow their infringement theories because Intel "clearly understands" Plaintiffs' infringement arguments.  Opp. at 8-9.  This misses the point.  Intel never suggested that it did not understand Plaintiffs' thirteen infringement theories.  The issue is that, by asserting thirteen separate and contradictory theories, Plaintiffs have not provided Intel with effective notice of the arguments they will actually pursue, thus interfering with Intel's ability to take appropriately targeted discovery and developing responsive defenses.  For example, as Intel explained in its opening brief, across their thirteen theories, Plaintiffs allege that:

- Six different combinations of eleven different components can be the "calibration control circuit" required by the '944 patent's claims (Mot. at 11-14, 17);

- Four different functionalities can be the "droop outputs" required by the '944 patent's claims (*id.* at 14);

- Three different functionalities can be the "sense outputs" required by the '944 patent's claims (*id.*); and

- Three different signals can be the "load voltage input" required by the '944 patent's claims (*id.*).

Intel has no way to know what specific components across their thirteen theories Plaintiffs will ultimately allege meet each element of the '944 patent's claims.  Because Intel could not possibly address each of Plaintiffs' thirteen infringement theories in the limited discovery that is available, Plaintiffs' infringement contentions impair Intel's ability to develop defenses specific to the arguments Plaintiffs will pursue.  Intel could not, for example, cover the details of thirteen different infringement arguments during a single deposition of Plaintiffs'

**INTEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS TO IDENTIFY THE INFRINGEMENT THEORIES THEY INTEND TO PURSUE**

technical expert. Intel would be forced to devote depositions, claim construction arguments, written discovery, expert discovery, and summary judgment arguments to multiple infringement theories that Plaintiffs will only discard—rather than the theories they will pursue. These are precisely the circumstances in which Courts have required plaintiffs to narrow overbroad infringement contentions. *See Straight Path IP Grp.*, 2017 WL 1365124, at *1-2 (compelling plaintiff to narrow claims, citing authority "to trim these cases down to [a] manageable size and to reduce the drain on resources"); *Memory Integrity*, 2015 WL 6659674, at *2-4 (ordering reduction of asserted patent claims before claim construction); *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (compelling plaintiff to amend contentions that "are too vague to provide fair notice"); *Bender v. Freescale Semiconductor, Inc.*, No. C 09-1156 PHJ MEJ, 2010 WL 1689465, at *4-5 (N.D. Cal. Apr. 26, 2010) (compelling revised contentions where "it is unclear to the Court what [plaintiff's] specific theories of infringement are").

C. **Intel's Motion Is Supported By Law In This District And The Northern District Of California**

Plaintiffs next argue that the law does not support Intel's motion. Plaintiffs assert—without a single citation—that under the N.D. Cal. Patent Local Rules, they are not required to narrow their infringement theories until *after* claim construction. Opp. at 9-10. Plaintiffs have it backwards.

The N.D. Cal. Patent Local Rules specifically require infringement contentions *before* claim construction:

- The rules first require the plaintiff to serve infringement contentions shortly after the case management conference. N.D. Cal. Patent Local Rule 3-1 (service of infringement contentions 14 days after the Initial Case Management Conference).

**INTEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS TO IDENTIFY THE INFRINGEMENT THEORIES THEY INTEND TO PURSUE**

- Next, the defendant responds with invalidity contentions. N.D. Cal. Patent Local Rule 3-3 (service of invalidity contentions 45 days after service of infringement contentions).

- ***Only then are the parties required to exchange claim terms for construction, submit proposed constructions, and file claim construction briefs***. N.D. Cal. Patent Local Rule 4-1 (exchange of proposed claim terms for construction ***after*** service of invalidity contentions), 4-2 (exchange of preliminary claim constructions after exchange of proposed claim terms), 4-3 (filing of joint claim construction and prehearing statement 60 days after service of invalidity contentions), 4-5 (setting claim construction briefing schedule, beginning within 45 days after filing of Rule 4-3 statement).

This sequencing is intentional. As Intel explained in its opening brief, infringement contentions are designed to require plaintiffs to "***crystalize***" their infringement arguments early in the case so that the defendant and the Court have notice of the plaintiffs' arguments and can focus the case—including claim construction—on issues that relate to the theories the plaintiffs will actually pursue. Mot. at 15-16; *see Shared Memory Graphics*, 812 F. Supp. 2d at 1024-25 (infringement contentions are "intended to require the party claiming infringement to crystallize its theories of the case early in the litigation" and to "provide fair notice as to what components and circuitry of the accused products infringe" (citation and punctuation omitted)); *Grecia v. Apple Inc*., No. C-14-0775 EMC, 2014 WL 4685195, at *1 (N.D. Cal. Sept. 19, 2014) (N.D. Cal. Patent Local Rules "require a plaintiff to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed" (citation and punctuation omitted)).

By requiring plaintiffs to provide infringement contentions ***before*** claim construction, the parties can then focus claim construction briefing and argument on the terms and disputes that are relevant to alleged infringement. *See Shared Memory Graphics*, 812 F. Supp. 2d at 1024

**INTEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS TO IDENTIFY THE INFRINGEMENT THEORIES THEY INTEND TO PURSUE**

(infringement contentions provide "structure to discovery and enable the parties ***to move***

***efficiently toward claim construction*** and the eventual resolution of their dispute" (citation

omitted)); *FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06760 RMW (RS), 2007 WL

1052900, at *2 (N.D. Cal. Apr. 5, 2007) (same).[4]  This avoids unnecessary claim construction

disputes and allows the Court to understand how the parties' competing claim constructions will

impact the infringement issues.

Accordingly—and directly contrary to Plaintiffs' unsupported assertion that Intel's

motion is contrary to law—courts routinely require plaintiffs to narrow their infringement

theories ***before claim construction*** and often earlier.  For example, where plaintiffs have asserted

an unreasonable number of patent claims—akin to the Plaintiffs in this case asserting an

unreasonable number of infringement theories—Courts have required plaintiffs to limit the

number of asserted claims well before claim construction (and often far earlier):

- *Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 900, 902 (Fed. Cir. 2011) (affirming

  Central District of California district court's reduction of 629 asserted claims to fifteen

  claims prior to claim construction briefing);

- *Straight Path IP Grp.*, 2017 WL 1365124, at *1-2 (ordering a limit of ten claims before

  claim construction where plaintiff initially asserted 37 claims);

- *Memory Integrity*, 2015 WL 6659674, at *2-4 (ordering reduction of asserted claims from

  118 to 15 before claim construction).

---

[4]     Emphases added, unless otherwise noted.

- *Medtronic Minimed Inc. v. Animas Corp.*, No. CV 12-04471 RSWL (RZX), 2013 WL 3322248, at *1, *3 (C.D. Cal. Apr. 5, 2013) (ordering reduction of asserted claims from 255 to 36 before invalidity and non-infringement contentions).

Plaintiffs argument would turn the N.D. Cal. Patent Local Rules and each of these decisions on their head. Under their approach, Plaintiffs could identify every possible infringement theory now, wait to see how the Court construes the terms of the '944 patent, and only then decide which infringement arguments to pursue. This would allow Plaintiffs to conceal their real arguments and impose significant burdens on the Court and Intel.

- During claim construction, the Court would have to address claim construction issues without knowing which of Plaintiffs' many infringement theories Plaintiffs ultimately intend to pursue.

- During fact discovery, the parties would be required to waste time and resources in depositions, written discovery, and document production on issues relating to infringement theories that Plaintiffs will discard.

- The Court may have to address discovery disputes that relate to infringement theories that Plaintiffs will not pursue.

- During expert discovery, the parties would have to waste time on expert reports and depositions addressing infringement theories that will never be presented.

This is precisely the type of wasteful discovery and shifting-sands approach that infringement contentions were designed to avoid. *Cf. Broadcom Corp. v. Emulex Corp.*, No. 8:09-cv-01058, Dkt. 167 at 9 (C.D. Cal. June 30, 2010) (proceeding with a large number of claims "through claim construction, summary judgment motions, and trial is an untenable proposition that would substantially drain the parties' and the Court's resources"); *Bender v. Advanced Micro Devices,*

**INTEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS TO IDENTIFY THE INFRINGEMENT THEORIES THEY INTEND TO PURSUE**

*Inc.*, No. C-09-1149 MMC (EMC), 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010) (plaintiff

must "***crystallize*** its theories" in its infringement contentions and then "***adhere to those theories***

***once disclosed***").

> ### D. Intel's Motion Is Not A "Summary Judgment Motion In Disguise"

Plaintiffs argue that Intel's motion should be denied because it is "a summary judgment

motion in disguise." Opp. at 10. This is again wrong.

Intel seeks only what the N.D. Cal. Patent Local Rules require: infringement contentions

that are sufficiently specific to allow the parties to narrow the case and focus discovery on the

infringement theories Plaintiffs will actually pursue. *See Shared Memory Graphics*, 812 F.

Supp. 2d at 1024 (infringement contentions are "designed to hasten resolution on the merits by

providing structure to discovery and enable the parties to move efficiently toward claim

construction and the eventual resolution of their dispute" (citation and punctuation omitted)).

Indeed, courts regularly require plaintiffs to narrow their infringement case before claim

construction—just as Intel requests. *Memory Integrity*, 2015 WL 6659674, at *2-4 (ordering

reduction of asserted claims before claim construction); *Straight Path IP Grp.*, 2017 WL

1365124, at *2 (same); *Bender v. Maxim Integrated Prods., Inc.*, No. C09-01152 SI, 2010 WL

1135762, at *2 (N.D. Cal. Mar. 22, 2010) ("[P]laintiff bears the burden of providing

infringement contentions that specify the location of every claim element within the accused

products, so that the Court can make a principled decision on whether discovery will proceed . . .

. Until plaintiff meets the burden of providing infringement contentions compliant with Patent

L.R. 3-1, the Court will not order defendant to proceed with discovery."); *EON Corp. IP*

*Holdings, LLC v. Sensus USA Inc.*, No. 09-cv-116, 2010 WL 346218, at *2 (E.D. Tex. Jan. 21,

2010) ("Proper infringement contentions provide a defendant with notice of a plaintiff's

**INTEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL**
**PLAINTIFFS TO IDENTIFY THE INFRINGEMENT THEORIES THEY INTEND TO**
**PURSUE**

infringement theories . . . .  This notice focuses discovery and narrows issues for claim

construction, summary judgment, and trial.").

If anything, Plaintiffs' argument only demonstrates that they should be required to

narrow their infringement theories now.  It is not realistic for either Intel or the Court to address

all thirteen of Plaintiffs' infringement arguments in a single summary judgment motion.

Plaintiffs should be required to identify the infringement theories they intend to pursue now so

that the Court can address Plaintiffs' infringement arguments on summary judgment at the

appropriate time.

**E.     Intel Is Prejudiced By Plaintiffs' Assertion Of Thirteen Different Infringement Theories**

Finally, Plaintiffs argue that Intel is not prejudiced by their thirteen different infringement

theories.  Opp. at 9.  But Plaintiffs make this assertion without any attempt to address the

prejudice that Intel identified in its opening brief.  *See* Mot. at 19-22.  Intel is prejudiced because

Plaintiffs realistically will not pursue thirteen different infringement theories.  *Id.* at 20.  But by

asserting thirteen different infringement theories in their contentions, Plaintiffs effectively

conceal from Intel the theories Plaintiffs will ultimately pursue among the many they will not.

*Id.* at 15-17.  In doing so, they prevent Intel from focusing discovery on—and developing

defenses to—the specific theories that Plaintiffs will pursue, and force Intel to waste resources

addressing multiple theories that Plaintiffs will inevitably discard.  *Id.* at 20-21.  This is exactly

the type of "hide the ball" approach to infringement that Courts have found ***does*** prejudice the

defendant and should be forbidden.  In *Straight Path IP Group, Inc. v. Apple Inc.*, for example,

during the parties' case management conference, Judge Alsup specifically condemned this type

of approach to patent litigation:

**INTEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS TO IDENTIFY THE INFRINGEMENT THEORIES THEY INTEND TO PURSUE**

So two claims is good.  But you got to get there, and *you can't start off with 37 claims and then figure out which ones you're going to lose on and finally give it all up at the end.  Look, that's not fair to the system*.  You ought to be able to know which ones you've got a good faith basis for.

2017 WL 1365124, at *1; *see also Cummins-Allison Corp. v. SBM Co.*, No. 07-cv-196, 2009 WL 806753, at *2 (E.D. Tex. Mar. 19, 2009) (by asserting unreasonable number of claims, plaintiff "engaged in a game of 'hide the ball' in an attempt to divert Defendant from the actual claims Plaintiff will assert at trial").

## III.    CONCLUSION

Plaintiffs indisputably will not assert thirteen different infringement theories if this matter proceeds to trial.  Plaintiffs should not be allowed to continue to bury their real infringement theories and force Intel and the Court to waste significant resources addressing the many theories that they will discard.  Plaintiffs have had more than sufficient time to narrow their infringement case.  Accordingly, Intel respectfully requests an order compelling Plaintiffs to identify the three infringement theories from their existing infringement contentions that they intend to pursue.

DATED: March 5, 2019

MARKOWITZ HERBOLD PC


By:    */s/ Renée E. Rothauge*
Renée E. Rothauge, OSB #903712
ReneeRothauge@MarkowitzHerbold.com
(503) 295-3085

WILMER CUTLER PICKERING HALE AND DORR LLP
Michael J. Summersgill (*pro hac vice*)
Todd C. Zubler (*pro hac vice*)
Jordan L. Hirsch (*pro hac vice*)
Arthur W. Coviello (*pro hac vice*)

*Attorneys for Defendant and Counterclaim
Plaintiff Intel Corporation*

842652