1           IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF OREGON

3   FEREYDUN TABAIAN and AHMAD        )
    ASHRAFZADEH,                      )
4                                     )
                Plaintiffs,           ) No. 3:18-cv-00326-HZ
5                                     )
         vs.                         ) March 20, 2019
6                                     )
    INTEL CORPORATION,               ) Portland, Oregon
7                                     )
                Defendant.            )
8   ---------------------------------

9

10

11

12

13

14

15              **TELEPHONIC MOTION HEARING**

16              TRANSCRIPT OF PROCEEDINGS

17      BEFORE THE HONORABLE MARCO A. HERNANDEZ

18        UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23

24

25

```
 1                            APPEARANCES

 2   FOR THE PLAINTIFF:     Jeffrey S. Love
                            James E. Geringer
 3                          James G. DeRouin
                            Klarquist Sparkman LLP
 4                          121 S. W. Salmon Street
                            Suite 1600
 5                          Portland, OR  97204

 6                          Howard L. Close
                            Patrick B. McAndrew
 7                          J. Andrew Love
                            Ronald L. Flack, Jr.
 8                          Wright Close & Barger, LLP
                            One Riverway
 9                          Suite 2200
                            Houston, TX 77057
10
     FOR THE DEFENDANT:     Anna Marie Joyce
11                          Markowitz Herbold PC
                            1211 S. W. Fifth Avenue
12                          Suite 3000
                            Portland, OR  97204-3730
13
                            Michael J. Summersgill
14                          Wilmer Cutler Pickering Hale and Dorr LLP
                            60 State Street
15                          Boston, MA 02109

16                          Grant K. Rowan
                            Todd C. Zubler
17                          Wilmer Cutler Pickering Hale and Dorr LLP
                            1875 Pennsylvania Ave NW
18                          Washington, DC 20006

19   ALSO PRESENT:          Mashood Rassam, Intel counsel

20   COURT REPORTER:        Nancy M. Walker, CSR, RMR, CRR
                            United States District Courthouse
21                          1000 S. W. Third Avenue, Room 301
                            Portland, OR  97204
22                          (503) 326-8186

23

24

25
```

1                    P R O C E E D I N G S

2          THE CLERK:  Good afternoon.  This is the matter of

3   Tabaian, et al. versus Intel Corporation, Case No. 18-cv-326,

4   Judge Hernandez presiding.

5          This is the time set for a motions hearing.  Please

6   note we have a court reporter present, so please identify

7   yourself each time you speak.

8          Counsel, please tell me who all is on the record,

9   starting with the plaintiff.

10         MR. CLOSE:  Good afternoon.  My name is Howard Close.

11  I'm representing the plaintiffs in this case.

12         MR. LOVE:  Also, this is Jeff Love, representing the

13  plaintiffs, from Klarquist.  And with me at Klarquist is James

14  Geringer and James DeRouin.

15         MR. McANDREW:  And, Your Honor, also representing

16  plaintiffs here in Houston, for Wright Close & Barger, Patrick

17  McAndrew, Andrew Love, and Ronnie Flack.

18         MR. SUMMERSGILL:  Good afternoon, Your Honor.  This

19  is Michael Summersgill, Wilmer Hale, on behalf of Intel.

20         I have with me Todd Zubler and Grant Rowan, also of

21  Wilmer Hale.  And Mashood Rassam from Intel is also on the

22  line.  And I believe Anna Joyce, our local counsel, is on the

23  line as well.

24         MS. JOYCE:  That's correct.  I am.

25         THE COURT:  Good afternoon.  This is Judge Hernandez.

1          We're here to resolve a couple of issues, one of them

2     a little bit thorny, having to do with the matter of

3     plaintiffs' contentions, and then the other one having to do

4     with are we using the Northern District of California rules or

5     aren't we?

6          So let's start with the easy one:  Are we using the

7     Northern District of California rules or aren't we?  The

8     answer is yes, we are using the Northern District of

9     California rules.

10          Let's move back, then, to the next issue that's a

11     little bit thornier; and that has to do with the matter of the

12     motion to compel.  The defense is asking the Court to limit

13     the plaintiffs to three theories of the case or three

14     infringement contentions.  And they sent in kind of a

15     description of how they were breaking out the 13 theories and

16     asking me to direct the plaintiffs to choose three of those

17     13.

18          I will say that recently, it seems in the last

19     couple, few days, I received a submission on the part of the

20     plaintiff which suggested to the Court that they were, in

21     fact, picking out three theories of the case.

22          And then within the last -- I don't know -- five

23     minutes or so I looked at a response to that, indicating that

24     Intel felt that really that's not three theories; it's more

25     like 11 theories, and none of those 11 match up with the 13

original theories that were submitted.  And they are not three
theories that the defense was actually hoping would limit the
plaintiffs' infringement contentions in a way that they had
originally alleged.

That's my summary of what's going on.

So let me hear first from Intel.  It's your motion to
compel.

MR. SUMMERSGILL:  Thank you, Your Honor.  This is
Michael Summersgill.

And we agree the issue is a little bit thorny and
complex because of the nature of the contentions.

So plaintiffs' November 16 infringement contentions
assert 13 different theories, as Your Honor indicated.  And as
is set forth in the papers and just by way of example, they
say that the claim's calibration control circuit of the patent
can be six different combinations of 11 different components.

Now, the point of infringement contentions is to give
defendants notice of what they're being accused of and to
focus the case.  And we suggest that what the plaintiffs have
done in their infringement contentions is exactly the
opposite.

And, as Your Honor indicated, they did file an
amended set of infringement contentions on Monday night.  And
they appear to recognize, in doing this, that they should have
to narrow those contentions.  And in those contentions, they

1    purport to be narrowing to three theories, but as I'll get

2    into, their -- their amended contentions actually compound the

3    problem because they are, in fact, 11 theories.  And they are

4    11 new theories that are different from the prior 13 theories.

5             So I'll start with the points on why they should be

6    limited.  And then I can address their latest submission, if

7    that works for Your Honor.

8             THE COURT:  Go ahead.

9             MR. SUMMERSGILL:  So we would submit they should

10   be -- that the limits we've asked for are warranted for three

11   reasons.  First, their 13 infringement theories in their

12   November 16th contentions effectively conceal from us the

13   theories that they intend to pursue and interfere with our

14   ability to prepare -- prepare our defenses.

15            And, as I said, the point of infringement contentions

16   is to put the defense on notice and to focus the issues in the

17   case, narrow the issues in the case.  And that's in multiple

18   cases, including the *O2 Micro* Federal Circuit case that we

19   cited in our brief.

20            The language in *O2 Micro* is that the point is "to

21   require parties to crystalize their theories of the case early

22   in the litigation."  Then it goes on later, page 1365, to say

23   they're "designed to allow the defendant to pin down the

24   plaintiff's theories of liability."

25            The same point is made in the Northern District of

California *Shared Memory Graphics* case that we cited in our briefs and in other cases that we cited. But the plaintiffs' contentions, the November contentions, have done the opposite.

And, Your Honor, we submitted a number of -- five slides for the argument. I'm hoping they made their way to you. We submitted those earlier today. Did you receive those?

THE COURT: I did.

MR. SUMMERSGILL: Okay. So if you could turn -- and we served them on the plaintiffs as well. Hopefully the plaintiffs have them as well.

But if you could turn to slide 2, that shows their 13 different infringement theories; and that's the way in which they presented them to us. And what shows on the top of the chart are the high-level claim limitations that are required by their patent. And then each of their separate theories along the left column, A1 down to G, lists the different theories. And what they've listed there are all of the different components in the Intel circuitry that they allege meet each of those limitations.

And in those 13 infringement, theories they've argued that six different combinations of 11 different components could be the calibration control circuit. Four different components could be the droop outputs. Three different functionalities could be the (inaudible) --

1          THE COURT REPORTER:  Counsel, this is the court

2     reporter.  I couldn't hear you clearly.

3          Three different functionalities could be --

4          MR. SUMMERSGILL:  -- the sense outputs.

5          Sorry.  I'll try to keep my voice up.

6          And it goes on, where they're accusing many different

7     components of meeting the various claim limitations.

8          Now, there's no way they could present all of those

9     alternative theories if the case were to go to trial.  So by

10    presenting all of those theories, they effectively conceal

11    from defendants the ones they intend to pursue.  They're

12    effectively burying the theories they will pursue among the

13    many they will not.

14         And given the discovery limits, the normal discovery

15    limits, Intel can't effectively address each of those

16    theories, as we could if they submitted a normal number of

17    theories.  We couldn't, for instance, address 13 different

18    infringement theories in a single deposition.

19         And, by way of example, we've already taken the

20    depositions of two of the non-plaintiff inventors; and we had

21    to do it without knowing which of the 13 infringement theories

22    they were going to pursue.  And we're not -- we don't expect

23    to get another crack at those depositions.  That's already had

24    an impact.

25         And when plaintiffs do this, Courts have recognized

1  that what -- the effect is that it unfairly conceals from

2  defendants the actual issues.

3       And I think Judge Alsup in the *Straight Path* case,

4  the Northern District of California *Straight Path* case,

5  captured it well.  We cited this in our brief.  But at a

6  status conference in that case, the plaintiff announced that

7  he was going to pursue 37 claims.  Judge Alsup said, No,

8  that's not going to work.  And he said, Well, ultimately I'll

9  reduce it to two.

10      And what Judge Alsup said is "Look" -- and I'm

11 quoting:  "So two claims is good, but you got to get there.

12 And you can't start off with 37 claims and then figure out

13 which ones you're going to lose on and finally give it up,

14 give it all up at the end.  Look, that's not fair to the

15 system."

16      And that's what's going on here.  By presenting so

17 many theories, they impede or interfere with our ability to

18 develop defenses specific to those theories.  And that's why

19 Courts in the Northern District of California, in this

20 district, and across the country have required infringement

21 contentions and compel a plaintiff to submit specific

22 infringement contentions when they are very big.

23      And that's what happened in the *Shared Memory*

24 *Graphics* case.  The plaintiff in that case did not clearly

25 identify what components in the accused circuitry they were

1    saying met the limitations.  And that's basically what's going

2    on here, because they provided so many different alternatives

3    that we don't know which way they're going to go ultimately.

4          The second point and the second rationale for the

5    limitations, Your Honor, is that by proceeding with these 13

6    infringement theories, it would impose both a significant

7    burden on the Court and on Intel; and most of that effort will

8    be wasted because, again, they're not going to pursue all 13

9    of these when they get to trial.

10         It would be a burden on the Court because it would

11   create additional discovery issues, it potentially creates

12   additional claim construction issues, and it would create a

13   significant burden on dispositive motions.

14         In addition to that, it would also force both the

15   Court and the -- and Intel to go through the claim

16   construction process, for instance, without the benefit of

17   knowing what theories the plaintiffs are ultimately going to

18   pursue.

19         It would create a burden on Intel in fact discovery

20   and in expert discovery and in summary judgment, in pursuing

21   all these many alternative theories.  Again, we've already

22   seen that burden, both in terms of the depositions we've taken

23   and in preparing our invalidity contentions in response to

24   their infringement contentions.

25         And then the third piece, Your Honor, the third

1   reason for the limitations is that it won't cause the

2   plaintiffs any prejudice.  As they've recognized, they can't

3   present all these alternative theories.

4        And they've had more than enough time and sufficient

5   discovery and information to be able to select the theories

6   they're going to pursue.  More than eight months ago, in July

7   2018, we produced our core technical documents, including

8   128,000 pages of technical documents.  We produced our source

9   code, which they and their experts have now reviewed 37 times.

10  We produced all of the detailed specifications relating to

11  FIVR.

12       They've taken three depositions, including two

13  30(b)(6) depositions of the two senior Intel engineers who

14  designed FIVR.  And on top of that, they received a 90-day

15  extension from the original deadline for their contentions so

16  that they could further consider their contentions with their

17  technical expert, and that's why they ultimately filed in

18  November of 2018.

19       So having had access to all of that discovery and

20  having had, you know, roughly eight months to consider all

21  this, we'd submit that it's now time for them to come clean

22  with their real infringement arguments, the arguments they're

23  going to pursue.

24       And that's precisely what the Court said in the

25  *Diagnostic Systems* case that we cited in our brief.  A similar

1    situation:  Discovery had been going on for close to a year.

2    The source code had been produced.  And the plaintiff was

3    still not narrowing their case.  And the Court said, "The

4    bottom line is that after a plaintiff-patentee has had a

5    reasonable opportunity to review the source code for the

6    defendant's accused software product, the patentee's time for

7    trolling the proverbial waters for a theory of infringement

8    comes to an end and the patentee must fish or cut bait with

9    respect to its specific theory of infringement."

10          And that's what we're asking here.  We want to know

11   what specifically we're accused with so we can -- as we go

12   through the remainder of discovery, as we go through claim

13   construction, we can develop our defenses to those specific

14   accusations.

15          Now, Your Honor, recognizing they have a problem,

16   and recognizing, we believe, that they should be required to

17   narrow their contentions, they made this filing on Monday

18   night, and they filed amended infringement contentions in

19   which they purport to reduce to three theories.  But, as I

20   said at the beginning, there are two problems with their

21   amended -- their proposed amended contentions.

22          The first is they have not meaningfully narrowed

23   their infringement contentions.  And if you could turn to

24   slide 3, Your Honor, I can explain why.

25          This is -- on slide 3, other than the "or" notations,

1   this is what they have presented as their purported three

2   theories of infringement.  The highlighted "ors" are what

3   we've added to explain what they're doing here.

4         And what they've done is they've purported to have

5   limited their case to three infringement contentions labeled

6   as "A," "D," and "G."  But, in fact, what they've really done

7   is they've merely restructured -- restructured the way in

8   which they present their infringement theories to combine what

9   they would have previously described as multiple theories into

10  three purported theories.

11        So what I mean by that is in their November 16

12  contentions, each of the 13 theories identify a single set of

13  multiple components that plaintiffs contend meet the claim

14  limitations.  But now, in their purportedly narrowed

15  contentions, the theories include multiple alternative sets of

16  components that allegedly meet the claim limitations.  And

17  that's what we've shown by highlighting the "ors."

18        So if you look at, for instance, their theory D on

19  slide 3, you see there's an "or" in the components that are

20  listed under "Regulator Circuit," an "or" listed under

21  "Calibration Control Circuit," and an "or" listed under "Load

22  Voltage Input."

23        Again, the labels at the top are their purported

24  claim limitations; and their theories are A, D, and G.

25        And the reason D isn't one theory is because they can

1   take the components listed at the top of the "Regulator

2   Circuit" box in D and combine it with the top of what's shown

3   in the "Calibration Control Circuit" box.  They can take

4   what's at the top of the "Regulator Circuit" and combine it

5   with the bottom of what's in the "Calibration Control Circuit"

6   box.  They can take the bottom of what's in the "Regulator

7   Circuit" box and combine that with the top of what's in the

8   "Calibration Control Circuit" box, and they can take the

9   bottom of what's in the "Regulator Circuit" box and combine it

10   with the bottom of the "Calibration Control Circuit."  That's

11   four theories.

12        And then they can combine those four theories with

13   the two alternatives they've listed under "Load Voltage

14   Input."  And that amounts to eight theories in that theory --

15   in that theory D alone.

16        And when you break out the alternatives, you end up

17   with 11 different infringement theories.  And you can see this

18   on slide 4.  And that is, when you look at slide 4, when you

19   apply the same methodology that they use in their November

20   contentions to present their theories, the amended contentions

21   actually include 11 infringement theories.

22        So this isn't a methodology that we came up with.

23   We're applying to their proposed amended contentions the

24   methodology that they used in their November contentions.

25        And so they've attempted to create the appearance of

1  narrowing their contentions when, in fact, they haven't

2  meaningfully done so at all.

3         The second problem with their contentions, their

4  proposed new contentions -- and this is potentially at least

5  equally a problem if not more of a problem -- is that it's an

6  improper attempt to significantly amend their contentions.

7  Each of these 11 theories listed on slide 4 is new.  They're

8  different from the 13 theories the plaintiffs presented

9  before.

10         And if you can turn to slide 5, please, Your Honor,

11  that shows what is new.

12         So everything we've colored in red is something that

13  is different from what was in their prior November

14  contentions, and so you can see that each of the 11 theories

15  is a different combination of components than was presented in

16  their November contentions.

17         And if you turn to slide 6, just to give a further

18  specific example, that shows the calibration control circuit.

19  So at the top of that slide we've shown what they originally

20  were purporting met the calibration control circuit limitation

21  in three theories.  We've shown that in blue.  Those were

22  their November contentions.  And on the bottom half of the

23  slide we're showing in red what they have added.  So in each

24  instance they've changed the set of components that they're

25  saying meets the calibration control circuit limitation.

1            And, Your Honor, just to put in context what's going

2   on here, I think it's important to look back at the events

3   leading up to this.  They were originally required to submit

4   their infringement contentions on August 14th.  After their

5   expert was excluded because of an Intel conflict, the Court

6   granted plaintiffs a three-month extension to review their

7   infringement contentions with their technical expert and

8   submit amended contentions.

9            But when they then submitted those amended

10  contentions, they submitted entirely new contentions, which

11  are the 13 infringement theories that are the subject of our

12  motion.  And they're now seeking to rewrite their contentions

13  a second time.

14           And this comes four months after the deadline for

15  infringement contentions, two months after we submitted our

16  invalidity contentions, more than eight months into discovery,

17  and after the claim construction process has already begun.

18  We've exchanged not only proposed terms for construction but,

19  in fact, draft constructions as well.

20           Now, the default presumption is that infringement

21  contentions are deemed to be final contentions.  That's set

22  forth in multiple cases, but one example is the *Townshend*

23  *Intellectual Property* case that we cited in our brief.  And at

24  page 3 it states, "The default presumption is that a party's

25  initial infringement contentions shall be deemed to be that

1    party's final contentions.  Because of that, plaintiffs may

2    only revise their infringement contentions if they can show

3    good cause to do so."

4            And, in fact, back at the June 27th status conference

5    in this case, we specifically expressed the concern that they

6    were going to try and do this and -- and evolve their

7    contentions over the course of the case.  And Your Honor

8    indicated to the parties that a "good cause" standard would

9    apply for amending contentions.  And that's in the June 27th

10   transcript at page 30.

11           But in the plaintiffs' motion to supplement the

12   record with these proposed new amended contentions, they

13   haven't even tried to show good cause, and that's because they

14   can't.  Because to allow them to rewrite their contentions at

15   this point would be fundamentally unfair to Intel when we've

16   already submitted our invalidity contentions, we've already

17   exchanged claim terms and proposed constructions, and we've

18   already been in discovery, including taking multiple

19   depositions for eight months.

20           And their attempts to do so is precisely the type of

21   shifting sands approach to litigation that Courts

22   have prohibited; and we've cited a number of cases in our

23   brief for that.

24           So, Your Honor, what we would request is that the

25   Court deny the plaintiffs' motion to supplement the record

1    with its 11 new infringement theories and instead require them

2    to select three infringement theories from their November 16

3    contentions, as requested in our motion to compel.

4              THE COURT:  Thank you.

5              Let me hear from the defense -- excuse me, from the

6    plaintiff.  Sorry.

7              For the plaintiff?

8              MR. LOVE:  Howard, are you still on?

9              Sorry.  This is Jeff Love.

10             MR. CLOSE:  Your Honor, this is Howard Close.  I'm

11   sorry.  I had my phone on mute so I didn't make noise rustling

12   paper.  I apologize.

13             THE COURT:  That's okay.  Go ahead.

14             MR. CLOSE:  Your Honor, first of all, I appreciate

15   the Court clarifying that we're using the PLRs, because what

16   we've tried to do is we tried to map out the infringement

17   contentions in the original set of infringement contentions

18   using PLR 3-1 and then produced the documents for 3-2.

19             And just to give the Court a sense of what we're

20   dealing with here, the accused devices in this case have

21   multiple voltage regulators that are part of the Intel system.

22   They have multiple -- they have FIVR, which can be as much as

23   16 different FIVR zones have a voltage regulator in it.  And

24   then there is an external voltage regulator that goes with

25   each one of these chips.  So there's a reason why there are

1    multiple variations of a theme, as we're trying to understand

2    how and to allege how these infringe on the patent.

3           Number two, some of the infringement theories accuse

4    components in addition to the chip.  There's external voltage

5    regulators and some testing and calibration equipment that are

6    just raised in some of these theories that we have.

7           The third thing is that, you know, you can have

8    alternative theories.  I mean, we have alternatives theories a

9    lot of times in litigation, but it's -- but we are trying to

10   pare this process, pare it down, because we recognize we have

11   to be able to present a cogent prosecution to the jury and to

12   the Court.  So we're trying to pare that down, but it's a

13   thing where the discovery is ongoing.

14          Now, my friend, Mr. Summersgill, mentioned a couple

15   things that I wanted to raise.  You know, he said that -- you

16   know, that it's time to stop trolling around, looking for

17   fish.

18          Well, Your Honor, things are being added and produced

19   to us even this month.  We had additional data put into the

20   source code computer after all these claims contentions were

21   done.  There was additional data added to the source code

22   computer in January, after our claims contentions were done.

23          When Intel raised this issue with us, that "We want

24   you to pare these things down," we have spent additional time

25   trying to go through and trying to pare those issues down as

1   we looked through the source -- as we looked through the

2   source code computer.  But, you know, the discovery is still

3   ongoing, and so we're still trying to work through the

4   material that Intel is giving us.

5           I don't want the Court to have the impression that we

6   had all these documents for eight months.  I mean, some of

7   them we just got.  You know, Mr. Zubler, who is on the call,

8   and I had a call to talk about some documents on the source

9   code computer; and we reached an agreement for them to go

10  ahead and produce them to us in the normal course of business,

11  with certain things excluded, and we got an additional

12  multiple thousand-page production today.

13          So there were -- you know, the discovery is ongoing,

14  and we're working with Intel on this, but it's not a situation

15  where we know all the things that are in their production yet

16  because they keep -- as they're required to do, they keep

17  producing stuff to us.

18          The other thing is the claim construction is ongoing.

19  You know, we think that after claim construction is the time

20  for us to narrow our contentions.  The contentions are

21  apparently clear.  Intel hasn't contended otherwise.  And they

22  can -- the summary fits on one page.

23          And the differences on the contentions are primarily

24  due to alternatives, the specific elements, such as load

25  voltage input.  But even if you look at their chart on load

1    voltage input, there are a couple of alternatives there.  And

2    once we go through claim construction and those -- and terms

3    are defined, that's going to clarify the issues so that we

4    know what we're going forward with.

5            And the interesting thing is that this is not

6    affecting claim construction.  We've been able to -- we've

7    identified (inaudible) --

8            THE COURT REPORTER:  Mr. Close, this is the court

9    reporter.  You are sounding a little muffled, so I need you to

10   start again.

11           "We've been able to -- we've identified" --

12           MR. CLOSE:  We've been able to identify the terms for

13   claim construction.  The Court said it only wanted 10 terms.

14   We've actually conferred with Intel.  We've got it down to

15   where we only have eight terms that need construction by the

16   Court.  We've been able to agree on two terms with Intel.

17           And the parties have -- you know, Intel hasn't asked

18   us, "Well, gosh, we need a lot more terms based on all these

19   other things that you have here."

20           And I hear what Mr. Summersgill is saying in terms

21   of he's worried about prejudice, but let's use the example

22   that he used.  I've been to the -- Jeff Love and I have been

23   to the depositions in London of the two non-plaintiff

24   inventors that live over in England right now.  We finished

25   both of those depositions before the end of the day.  We

1    didn't take the full time that's allotted for the depositions.

2            There was no statement at the end of the deposition

3    that "Gosh, I needed to ask you a lot more questions, but I

4    don't know which ones to ask because of all these theories you

5    have."  We finished both depositions well before the time that

6    is required for the depositions.

7            So, again, if that was an issue, I would have

8    expected Mr. Summersgill and Mr. Hirsch, one of the gentlemen

9    who were there, to have raised it then.  But nobody raised it

10   then.

11           And, you know, if -- you know, they say they need

12   more deposition time and there's going to be other things, but

13   if something comes up where we need that, they can ask for it,

14   and we can confer with Intel on that.

15           I guess, in sum, the system is kind of working and

16   it's going forward.  And, you know, we did send in a proposed

17   list of things to try to show that we could narrow some of

18   these terms down using the terms that were in the original

19   claim chart.  But, again, I don't think it's something that

20   has to be forced by the Court at this point in time.  That's,

21   I guess, my main response.

22           THE COURT:  Do you have -- Mr. Close, do you have a

23   response to the defendant's statement that the new

24   infringement theories that you have forwarded to the Court

25   this week include components or features that were not

1   included in the 13 theories that were given back in -- I think

2   he said in November of last year?

3          MR. CLOSE:  Your Honor, there are some things where,

4   for example, if you look in the A column, in terms of the main

5   things that they're saying that have been added -- let's see.

6   I'm trying to -- there's no change in the "Regulator Circuit"

7   section.  In the "Calibration Control Circuit," there is

8   something from the PWM trim block.

9          I may need to get one of my more technical people to

10  explain this, Your Honor.  Could I get Jeff or Ronnie to help

11  you with this?

12         THE COURT:  Well, the bottom line is whether or not

13  the infringement contentions from March 12th match the

14  infringement contentions from November of 2018; and it sounds

15  like what you're telling me is they do not, that they are

16  different.

17         MR. CLOSE:  They're not -- they're not different from

18  the standpoint of adding additional -- well, they're not word

19  for word the same.  A1 is not same as A1.

20         THE COURT:  Okay.  Thank you.

21         MR. LOVE:  Your Honor, this is Jeff Love for

22  plaintiffs.  If the Court will grant Mr. Close a lifeline, he

23  was trying to call out to me on the technical points.  I'm one

24  of the patent attorneys, and I can maybe address that in a

25  little more detail if you'd like.

1           THE COURT:  Sure.  Go ahead.

2           MR. LOVE:  So what I'd like to do is direct your

3    attention to -- you could just use page 3 of Intel's most

4    recent submission, their little -- their PowerPoint or

5    whatever it is.  So that has the three contentions that we

6    would like to go forward with.

7           And, you know, my understanding is that the only

8    thing that is entirely new, you could say, is if you look at

9    the "Load Voltage Input" column, and then you look at the row

10   D, you know, where it says "VIN" --

11          THE COURT:  Yes.

12          MR. LOVE:  So that's voltage in.  And there's -- and

13   there's both a calculated and a sensed voltage in, which is

14   just two versions of the voltage in.

15          And the sensed voltage in, my understanding is that

16   was not in the -- that particular input was not identified in

17   the original contentions.  But with respect to all the other

18   entries, the circuitry was all identified.  But in some cases

19   we essentially rearranged the furniture.  And we did this, in

20   part, because of what we were learning in the discovery and,

21   in part, because of their pressure for us to narrow things

22   now.

23          And the big narrowing point that they're raising is

24   this row D that you're looking at, that middle row, where they

25   say -- you know, they identify it as one, but it's really

1    eight.

2           Well, first off, I want to clarify, in those first

3    two columns where we say that, you know, the regulator circuit

4    or the calibration circuit is either this or it's this and the

5    external voltage regulator, if the external voltage regulator

6    is in for one, it's in for both, you know.  And this is

7    just -- so even if you use their little algorithm, there's

8    only four combinations here.  The external voltage regulator

9    is either in or out.  And if it's in or out, the load voltage

10   input is either the PCU VOUT or it's the VIN.

11          So when you're talking about just the sheer number,

12   you know, it is fewer, significantly fewer.  We've almost cut

13   the number in half, even by their counting.  And when you're

14   talking about them being seven different theories, you're

15   talking about primarily load voltage input being one thing or

16   another thing, a pretty small element.  You know, it's not a

17   big challenge to address those -- that number.

18          And then when it comes to the circuitry, it's all

19   circuitry that is identified -- you know, my understanding is

20   all except for that one thing I just mentioned, it was

21   identified in the original contentions, which is the moving

22   around the furniture.  They understand it.  It shouldn't be an

23   issue, really.  It does simplify the case.

24          They blamed us for not, you know, supporting a motion

25   to amend.  We weren't trying, at this time, to submit a motion

1   for leave to serve these amended contentions because we just

2   didn't have time to prepare it.  What we had time to do at

3   this moment was to get them to them before the claim

4   constructions were submitted to the Court, which we did, and

5   then to get it to the Court, you know, in time for it to be

6   discussed on this call, because we think that this addresses

7   what the plaintiffs are asking for.

8           If we can narrow it down to, by their count, seven,

9   by our count three, with some variations on the load voltage

10  input and the external voltage regulator, you know,

11  that's -- that's a small number.  And particularly in a case

12  where -- just so you know how we understand this, you know,

13  you've got -- you do have different infringement scenarios.

14  It's not like choosing one or the other.  They infringe in

15  three different ways.  That's the contention.

16          So, you know -- and so if you look at G, you'll see

17  at the bottom line on the second and the third columns, it

18  refers to "HVM tester."  That's an infringement theory, and it

19  depends on claim constructions, on some of the claims that are

20  proposed.  But that's an infringement theory that would take

21  place at the time of testing of the chips, because they

22  combine the chips with some testing equipment.  So that's a

23  completely, you know, distinct theory.  And it doesn't have

24  any "ors" in there.  That's simple enough.  I don't think

25  that's an issue.

1          And then A, that's just the chip.  There's only one

2     "or" in there and it's on a simple issue, the load voltage

3     input.  That's one input.  That's not a problem.

4          They've got a problem with D.  What D is trying to

5     address, among other things, is the idea that they combine

6     their chips with an external voltage regulator.  And, you

7     know, D wants to take -- wants to look at that system as a

8     whole.

9          Now, ideally, we don't really want the external

10    voltage regulator as part of the accused system, because then

11    we've got an inducement claim, because Intel doesn't make the

12    external voltage regulator, but they induce people to make it

13    according to their specs.

14         And so -- anyway, so D is trying to address the

15    external voltage regulator situation, where it's either part

16    of the background of the infringement or it's actually a part

17    of the infringing circuitry.  That's not too many.

18         So, you know, if the Court wanted to grant us leave

19    to serve these amended contentions, based on this hearing,

20    that would be terrific.  But our plan was to file a motion

21    soon for that leave, where we would support it and justify it

22    in the way I've just described.

23         MR. SUMMERSGILL:  Your Honor, this is Michael

24    Summersgill.

25         Might I make a number of -- may I respond, a number

1    of points in response to the points that Mr. Love and

2    Mr. Close said?

3              THE COURT:  Yes.  Go ahead.

4              MR. SUMMERSGILL:  So to start with the points that

5    Mr. Love made and to address your question, if you turn to

6    slide 5, each of these theories is a new combination of

7    elements.  It's directed to a new -- new combinations of

8    accused features and components, combinations that the

9    plaintiffs did not make in their November 2018 contention.

10             So what Mr. Love and Mr. Close have described as

11   rearranging the furniture is taking -- in some instances it's

12   adding new components and in some instances it's taking

13   components that they said met one element and now moving them

14   to a different element and, you know, making entirely

15   different combinations.  And so that affects our whole

16   approach to the case, because we've been -- we've been

17   preparing defenses based on one set of combinations and now

18   they have switched it entirely.

19             Second, if you look at -- back to the slide 3 that

20   Mr. Love was focused on, and he said D, that their theory D is

21   only four different combinations, respectfully, that's just

22   wrong as a matter of math.  And in fairness to Mr. Love -- I

23   mean, I had to have our core IP partner, Grant Rowan, explain

24   it to me, just to make sure I understood.

25             But where you have the "or" in the "Regulator

1    Circuit," the "Calibration Control Circuit," and the "Load

2    Voltage Input," by definition, when you can take that, the

3    components on each side of the "or," and combine it with all

4    of the other components in the other boxes on the other side

5    of the "ors," what you come up with is eight different

6    infringement theories.

7         And so, again, we didn't make up this -- the

8    methodology that we used to show their different -- their 11

9    theories on slide 4.  That's using the same methodology that

10   they used in their November contentions.

11        And very recently, on the point that Mr. Close made,

12   he said they have many different alternative theories because

13   there are many FIVRs.  Well, each of the FIVRs is actually the

14   same set of circuitry, and they're accusing different

15   structures within one of those FIVRs.  So that's just wrong.

16        Second, in terms of the suggestion that we haven't

17   been forthcoming with discovery, that they haven't had this

18   information for eight months, is again just incorrect.  The

19   material we produced in January related to damages.  It didn't

20   have to do with the operation of the FIVR system.  It had to

21   do with what products included FIVR and what products didn't.

22   It related to the calculation of damages.

23        And, you know, I think one of the things that shows

24   it conclusively is the declaration of Ms. McLemore, which we

25   attached to our reply brief, and it shows they've come and

1    reviewed our source code 37 separate times.

2          They made the point about the depositions.  But,

3    Your Honor, in an expert deposition, both -- and in an expert

4    report, the experts would have to address every single theory.

5          And so they have had all this information for a long

6    time, and it does have a big impact on us in discovery.

7          Finally, Mr. Close argued that they shouldn't have to

8    narrow their contentions until after claim construction.  And

9    that's just wrong as a matter of law.  The Northern District

10   of California rules, all the case law, require infringement

11   contentions before claim construction.  And Courts

12   specifically require contentions before claim construction and

13   before discovery goes too far down the line so that defendants

14   know what they're accused of.  And Courts routinely require

15   plaintiffs to limit the number of claims they're asserting not

16   only before claim construction, but before contentions.

17         So bottom line, Your Honor, is that what they are

18   purporting to submit, what they purport to submit on Monday is

19   entirely new.  It's not narrowed.  It's 11 infringement

20   theories that would cause us significant prejudice, to allow

21   them to do that this late in the case.

22         MR. LOVE:  Your Honor, Jeff Love.  Could I just --

23   particularly on that math point, I want to, if I could, just

24   reply briefly.

25         THE COURT:  Not yet.  Not yet.

1          MR. LOVE:  Okay.

2          THE COURT:  Thank you.

3          I have some questions on the math point.

4          In looking at the defendant's slide No. 3, it looks

5     like, as regards D, which is the one that the defense is

6     claiming actually is eight different contentions, that under

7     the "Regulator Circuit," the language, "this and regulator

8     circuitry in external voltage regulator," and then under the

9     "Calibration Control Circuit," it says "this and regulator

10    circuitry in external voltage regulator," what I hear the

11    defense saying is that -- I mean, the language after the "or"

12    is the same in both of those.

13         And I don't know that much about voltage regulation

14    in chips, but I'm going to guess that the bottom language for

15    "Regulator Circuit," "this and the regulator circuitry," and

16    the "Calibration Control Circuit," "this and the regulator

17    circuitry," is not something that the plaintiffs are

18    contending.

19         Also, if you -- you know, what happened is the

20    defense was saying that if you mix and match these, you end up

21    with four.  But the way that I understand the plaintiffs are

22    approaching this, that's not the case.  What you end up with

23    is two different possibilities.

24         So let me -- am I correct about that, turning to the

25    plaintiffs' contentions?

1           MR. LOVE:  This is Jeff Love, if I can address that.

2           THE COURT:  Go ahead.

3           MR. LOVE:  With respect to that row D and with

4    respect to those first two columns, yes, it's just two

5    contentions are covered by those first two columns with those

6    two "ors."  It's not intended to say that in a regulator

7    circuit, it doesn't include the external voltage regulator,

8    but in the calibration control circuit it does.

9           In both of them, either it's the circuitry on the

10   chip, which is the language above the "or" -- that's just

11   it -- or it's that plus the circuitry in the external voltage

12   regulator.  So there's two -- there's two variations there.

13          And then the only other variation -- you know, they

14   talk about them -- want to call them four different scenarios.

15   I mean, those are two different scenarios.  Because the only

16   way you get to four is you go all the way to the right under

17   "Load Voltage Input," and, you know, there's multiple inputs

18   that have data representative of load voltage.  And so you do

19   have alternatives there, you know, but it's not like a whole

20   new theory.  That's just a different -- different candidates

21   for the load voltage input.

22          It's not something -- for example, if you're deposing

23   somebody and you go through the entire theory, the two

24   theories, one -- well, first, you go through the one theory,

25   and then you address the theories with the external voltage

1   regulator.  That's one other possibility, but it's just that

2   element, the external voltage regulator.

3          Then you address the theories of two different load

4   voltage inputs.  For Intel, that's a piece of cake.  That's

5   two inputs.  It's not a whole new theory.

6          MR. SUMMERSGILL:  Your Honor, this is Michael

7   Summersgill.

8          That -- that is not correct.  And, you know, what we

9   have done on slide 3 and then what we've done on slide 4,

10  we're using their language.  They used four.

11         And so when you look at the "Regulator Circuit" and

12  the "Calibration Control Circuit" limitations for what they've

13  identified as theory D, the first combination of elements,

14  using their language, would be what's on top of the "or" in

15  "Regulator Circuit" with what's on top of the "or" in the

16  "Calibration Control Circuit."

17         The second combination of elements would be what's

18  on top of the "Regulator Circuit" and on the bottom of the

19  "Calibration Control Circuit."

20         The third would be what's on the bottom of the

21  "Regulator Circuit" and the top of the "Calibration Control

22  Circuit."

23         And then the fourth would be what's on the bottom of

24  the "Regulator Circuit" and the "Calibration Control" -- and

25  the bottom of the "Calibration Control Circuit."

1          Those are four different sets of combinations.  And
2    then when you can combine those separately with the
3    alternatives under "Load Voltage Input," you come up with
4    eight different combinations.
5          And this is significant because we're not talking
6    about apples, oranges, and watermelons.  We're talking about,
7    you know, circuitry in a voltage regulator, where the
8    different -- different combinations of components interact in
9    different ways.  So each one of these different combinations
10   presents different -- different issues.
11         And so, you know, it is not significantly narrower.
12   It is -- again, using their methodology, it's 11 different
13   theories, number one.  And, number two, it's all new.  They
14   can't dispute what we've shown in slide 5, which is that every
15   single one of the 11 combinations is a different combination
16   than what they presented in November.  And it's too late in
17   the case to do that.
18         And so we'd ask that they be required to pick three
19   of their original 13 theories.  They appear to agree that they
20   should narrow to three, and we think they should be required
21   to pick three of their original 13 theories.
22         They already got a 90-day extension.  They've had all
23   this information.  And to allow them to, you know,
24   significantly rewrite their contentions at this point would, I
25   think, cause Intel significant prejudice.

1          THE COURT:  All right.  Thank you.

2          Anything else?

3          MR. LOVE:  Yes.

4          For the plaintiffs, to the extent Mr. Summersgill is

5     reading those first two columns in D as creating four

6     possibilities, as plaintiffs' counsel, I'm just saying two of

7     those possibilities were never intended and we are dropping

8     them or not asserting them, and it's only two possibilities.

9          It's not a matter just of the math.  It's a matter

10    of what we're willing to narrow it down to.  We are willing to

11    narrow it down, on those two columns, to the external voltage

12    regulator being either in for both of them or not in for both

13    of them.  That's two possibilities.

14         THE COURT:  But it does get multiplied by two based

15    on what's located in the "Load Voltage Input."  There are

16    actually two possibilities there.  So it becomes -- even by

17    what the plaintiff is suggesting to us here on the record, it

18    still becomes four possibilities.

19         MR. LOVE:  Yes.

20         THE COURT:  Okay.

21         MR. LOVE:  The load voltage input is highly discrete.

22    It's claim construction dependent, as are these other

23    possibilities.

24         The rules contemplate that after claim construction,

25    things are going to be excluded, things are going to be in,

 1   and there's going to be a final narrowing and amending of the

 2   contentions accordingly.  We're just trying to put those

 3   possibilities on the table in advance, to the extent we can

 4   anticipate them.

 5            THE COURT:  All right.  Thank you.

 6            MR. CLOSE:  Your Honor, this is Howard Close.  I just

 7   wanted to raise one point.

 8            THE COURT:  Go ahead, Mr. Close.

 9            MR. CLOSE:  I didn't quite understand what

10   Mr. Summersgill's point was about using our theory.

11            But if you look back at their first -- first slide,

12   which has -- and this is under the D category.  I mean, we

13   either have the -- the regulator circuitry on the external

14   voltage regulator in or it's out.

15            The only way that it's broken out into four there is

16   the difference between the load voltage input.  But, I mean,

17   both on the column for "Regulator Circuit" and "Calibration

18   Control Circuit," we either have it in or it's out.  And

19   that's what Jeff, I think, was trying to articulate.  That's

20   how we put it when we (inaudible), so -- that's all I had to

21   add, Your Honor.

22            THE COURT:  Thank you, all.

23            All right.  I'm going to look a little bit more

24   carefully at these charts that I just received today and

25   compare them with the other things that have been submitted.

1    I will get you an opinion out, probably pretty shortly.

2            And with that, we are in recess.  Thank you very

3    much.

4            MR. SUMMERSGILL:  Thank you, Your Honor.

5            MR. CLOSE:  Thank you, Your Honor.

6

7

8            (Proceedings concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              --oOo--

2

3           I certify, by signing below, that the

4      foregoing is a correct transcript of the record

5      of proceedings in the above-titled cause.  A

6      transcript without an original signature,

7      conformed signature or digitally signed signature

8      is not certified.

9

10

11

       /s/ Nancy M. Walker                    3-21-19
12
       _____    _____
13     NANCY M. WALKER, CSR, RMR, CRR          DATE
       Official Court Reporter
14     Oregon CSR No. 90-0091

15

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 38:11

## 0

**02109** [1] - 2:15

## 1

**10** [1] - 21:13
**1000** [1] - 2:21
**11** [15] - 4:25, 5:16, 6:3, 6:4, 7:22, 14:17, 14:21, 15:7, 15:14, 18:1, 29:8, 30:19, 34:12, 34:15
**121** [1] - 2:4
**1211** [1] - 2:11
**128,000** [1] - 11:8
**12th** [1] - 23:13
**13** [18] - 4:15, 4:17, 4:25, 5:13, 6:4, 6:11, 7:13, 7:21, 8:17, 8:21, 10:5, 10:8, 13:12, 15:8, 16:11, 23:1, 34:19, 34:21
**1365** [1] - 6:22
**14th** [1] - 16:4
**16** [4] - 5:12, 13:11, 18:2, 18:23
**1600** [1] - 2:4
**16th** [1] - 6:12
**18-cv-326** [1] - 3:3
**1875** [1] - 2:17

## 2

**2** [1] - 7:12
**20** [1] - 1:5
**20006** [1] - 2:18
**2018** [4] - 11:7, 11:18, 23:14, 28:9
**2019** [1] - 1:5
**2200** [1] - 2:9
**27th** [2] - 17:4, 17:9

## 3

**3** [8] - 12:24, 12:25, 13:19, 16:24, 24:3, 28:19, 31:4, 33:9
**3-1** [1] - 18:18
**3-2** [1] - 18:18
**3-21-19** [1] - 38:11
**30** [1] - 17:10
**30(b)(6** [1] - 11:13
**3000** [1] - 2:12
**301** [1] - 2:21
**326-8186** [1] - 2:22
**37** [4] - 9:7, 9:12, 11:9, 30:1
**3:18-cv-00326-HZ** [1] - 1:4

## 4

**4** [5] - 14:18, 15:7, 29:9, 33:9

## 5

**5** [3] - 15:10, 28:6, 34:14
**503** [1] - 2:22

## 6

**6** [1] - 15:17
**60** [1] - 2:14

## 7

**77057** [1] - 2:9

## 9

**90-0091** [1] - 38:13
**90-day** [2] - 11:14, 34:22
**97204** [2] - 2:5, 2:21
**97204-3730** [1] - 2:12

## A

**A1** [3] - 7:17, 23:19
**ability** [2] - 6:14, 9:17
**able** [6] - 11:5, 19:11, 21:6, 21:11, 21:12, 21:16
**above-titled** [1] - 38:5
**access** [1] - 11:19
**according** [1] - 27:13
**accordingly** [1] - 36:2
**accusations** [1] - 12:14
**accuse** [1] - 19:3
**accused** [8] - 5:18, 9:25, 12:6, 12:11, 18:20, 27:10, 28:8, 30:14
**accusing** [2] - 8:6, 29:14
**actual** [1] - 9:2
**add** [1] - 36:21
**added** [5] - 13:3, 15:23, 19:18, 19:21, 23:5
**adding** [2] - 23:18, 28:12
**addition** [2] - 10:14, 19:4
**additional** [7] - 10:11, 10:12, 19:19, 19:21, 19:24, 20:11, 23:18
**address** [12] - 6:6, 8:15, 8:17, 23:24, 25:17, 27:5, 27:14, 28:5, 30:4, 32:1, 32:25, 33:3
**addresses** [1] - 26:6
**advance** [1] - 36:3
**affecting** [1] - 21:6
**affects** [1] - 28:15
**afternoon** [4] - 3:2, 3:10, 3:18, 3:25

**ago** [1] - 11:6
**agree** [3] - 5:10, 21:16, 34:19
**agreement** [1] - 20:9
**ahead** [7] - 6:8, 18:13, 20:10, 24:1, 28:3, 32:2, 36:8
**AHMAD** [1] - 1:3
**al** [1] - 3:3
**algorithm** [1] - 25:7
**allege** [2] - 7:20, 19:2
**alleged** [1] - 5:4
**allegedly** [1] - 13:16
**allotted** [1] - 22:1
**allow** [4] - 6:23, 17:14, 30:20, 34:23
**almost** [1] - 25:12
**alone** [1] - 14:15
**ALSO** [1] - 2:19
**Alsup** [3] - 9:3, 9:7, 9:10
**alternative** [6] - 8:9, 10:21, 11:3, 13:15, 19:8, 29:12
**alternatives** [8] - 10:2, 14:13, 14:16, 19:8, 20:24, 21:1, 32:19, 34:3
**amend** [2] - 15:6, 25:25
**amended** [12] - 5:23, 6:2, 12:18, 12:21, 14:20, 14:23, 16:8, 16:9, 17:12, 26:1, 27:19
**amending** [2] - 17:9, 36:1
**amounts** [1] - 14:14
**Andrew** [2] - 2:7, 3:17
**Anna** [2] - 2:10, 3:22
**announced** [1] - 9:6
**answer** [1] - 4:8
**anticipate** [1] - 36:4
**anyway** [1] - 27:14
**apologize** [1] - 18:12
**appear** [2] - 5:24, 34:19
**appearance** [1] - 14:25
**APPEARANCES** [1] - 2:1
**apples** [1] - 34:6
**apply** [2] - 14:19, 17:9
**applying** [1] - 14:23
**appreciate** [1] - 18:14
**approach** [2] - 17:21, 28:16
**approaching** [1] - 31:22
**argued** [2] - 7:21, 30:7
**argument** [1] - 7:5
**arguments** [1] - 11:22
**articulate** [1] - 36:19
**ASHRAFZADEH** [1] - 1:3
**assert** [1] - 5:13
**asserting** [2] - 30:15, 35:8
**attached** [1] - 29:25
**attempt** [1] - 15:6
**attempted** [1] - 14:25
**attempts** [1] - 17:20
**attention** [1] - 24:3
**attorneys** [1] - 23:24

**August** [1] - 16:4
**Ave** [1] - 2:17
**Avenue** [2] - 2:11, 2:21

## B

**background** [1] - 27:16
**bait** [1] - 12:8
**Barger** [2] - 2:8, 3:16
**based** [4] - 21:18, 27:19, 28:17, 35:14
**becomes** [2] - 35:16, 35:18
**BEFORE** [1] - 1:17
**beginning** [1] - 12:20
**begun** [1] - 16:17
**behalf** [1] - 3:19
**below** [1] - 38:3
**benefit** [1] - 10:16
**between** [1] - 36:16
**big** [4] - 9:22, 24:23, 25:17, 30:6
**bit** [4] - 4:2, 4:11, 5:10, 36:23
**blamed** [1] - 25:24
**block** [1] - 23:8
**blue** [1] - 15:21
**Boston** [1] - 2:15
**bottom** [14] - 12:4, 14:5, 14:6, 14:9, 14:10, 15:22, 23:12, 26:17, 30:17, 31:14, 33:18, 33:20, 33:23, 33:25
**box** [6] - 14:2, 14:3, 14:6, 14:7, 14:8, 14:9
**boxes** [1] - 29:4
**break** [1] - 14:16
**breaking** [1] - 4:15
**brief** [6] - 6:19, 9:5, 11:25, 16:23, 17:23, 29:25
**briefly** [1] - 30:24
**briefs** [1] - 7:2
**broken** [1] - 36:15
**burden** [5] - 10:7, 10:10, 10:13, 10:19, 10:22
**burying** [1] - 8:12
**business** [1] - 20:10

## C

**cake** [1] - 33:4
**calculated** [1] - 24:13
**calculation** [1] - 29:22
**Calibration** [16] - 13:21, 14:3, 14:5, 14:8, 14:10, 23:7, 29:1, 31:9, 31:16, 33:12, 33:16, 33:19, 33:21, 33:24, 33:25, 36:17
**calibration** [8] - 5:15, 7:23, 15:18, 15:20, 15:25, 19:5, 25:4, 32:8
**California** [7] - 4:4, 4:7, 4:9, 7:1, 9:4, 9:19, 30:10

**candidates** [1] - 32:20
**captured** [1] - 9:5
**carefully** [1] - 36:24
**Case** [1] - 3:3
**case** [29] - 3:11, 4:13, 4:21, 5:19, 6:17, 6:18, 6:21, 7:1, 8:9, 9:3, 9:4, 9:6, 9:24, 11:25, 12:3, 13:5, 16:23, 17:5, 17:7, 18:20, 25:23, 26:11, 28:16, 30:10, 30:21, 31:22, 34:17
**cases** [5] - 6:18, 7:2, 16:22, 17:22, 24:18
**category** [1] - 36:12
**certain** [1] - 20:11
**certified** [1] - 38:8
**certify** [1] - 38:3
**challenge** [1] - 25:17
**change** [1] - 23:6
**changed** [1] - 15:24
**chart** [3] - 7:15, 20:25, 22:19
**charts** [1] - 36:24
**chip** [3] - 19:4, 27:1, 32:10
**chips** [5] - 18:25, 26:21, 26:22, 27:6, 31:14
**choose** [1] - 4:16
**choosing** [1] - 26:14
**Circuit** [31] - 6:18, 13:20, 13:21, 14:2, 14:3, 14:4, 14:5, 14:7, 14:8, 14:9, 14:10, 23:6, 23:7, 29:1, 31:7, 31:9, 31:15, 31:16, 33:11, 33:12, 33:15, 33:16, 33:18, 33:19, 33:21, 33:22, 33:24, 33:25, 36:17, 36:18
**circuit** [9] - 5:15, 7:23, 15:18, 15:20, 15:25, 25:3, 25:4, 32:7, 32:8
**circuitry** [15] - 7:19, 9:25, 24:18, 25:18, 25:19, 27:17, 29:14, 31:8, 31:10, 31:15, 31:17, 32:9, 32:11, 34:7, 36:13
**cited** [7] - 6:19, 7:1, 7:2, 9:5, 11:25, 16:23, 17:22
**claim** [25] - 7:15, 8:7, 10:12, 10:15, 12:12, 13:13, 13:16, 13:24, 16:17, 17:17, 20:18, 20:19, 21:2, 21:6, 21:13, 22:19, 26:3, 26:19, 27:11, 30:8, 30:11, 30:12, 30:16, 35:22, 35:24
**claim's** [1] - 5:15
**claiming** [1] - 31:6
**claims** [7] - 9:7, 9:11, 9:12, 19:20, 19:22, 26:19, 30:15
**clarify** [2] - 21:3, 25:2
**clarifying** [1] - 18:15
**clean** [1] - 11:21
**clear** [1] - 20:21

**clearly** [2] - 8:2, 9:24
**CLERK** [1] - 3:2
**Close** [7] - 2:6, 2:8, 3:10, 3:16, 18:10, 21:8, 36:6
**CLOSE** [9] - 3:10, 18:10, 18:14, 21:12, 23:3, 23:17, 36:6, 36:9, 37:5
**close** [8] - 12:1, 22:22, 23:22, 28:2, 28:10, 29:11, 30:7, 36:8
**code** [8] - 11:9, 12:2, 12:5, 19:20, 19:21, 20:2, 20:9, 30:1
**cogent** [1] - 19:11
**colored** [1] - 15:12
**column** [4] - 7:17, 23:4, 24:9, 36:17
**columns** [6] - 25:3, 26:17, 32:4, 32:5, 35:5, 35:11
**combination** [5] - 15:15, 28:6, 33:13, 33:17, 34:15
**combinations** [13] - 5:16, 7:22, 25:8, 28:7, 28:8, 28:15, 28:17, 28:21, 34:1, 34:4, 34:8, 34:9, 34:15
**combine** [10] - 13:8, 14:2, 14:4, 14:7, 14:9, 14:12, 26:22, 27:5, 29:3, 34:2
**compare** [1] - 36:25
**compel** [4] - 4:12, 5:7, 9:21, 18:3
**completely** [1] - 26:23
**complex** [1] - 5:11
**components** [20] - 5:16, 7:19, 7:22, 7:24, 8:7, 9:25, 13:13, 13:16, 13:19, 14:1, 15:15, 15:24, 19:4, 22:25, 28:8, 28:12, 28:13, 29:3, 29:4, 34:8
**compound** [1] - 6:2
**computer** [4] - 19:20, 19:22, 20:2, 20:9
**conceal** [2] - 6:12, 8:10
**conceals** [1] - 9:1
**concern** [1] - 17:5
**concluded** [1] - 37:8
**conclusively** [1] - 29:24
**confer** [1] - 22:14
**conference** [2] - 9:6, 17:4
**conferred** [1] - 21:14
**conflict** [1] - 16:5
**conformed** [1] - 38:7
**consider** [2] - 11:16, 11:20
**construction** [10] - 10:12, 10:16, 12:13, 16:17, 16:18, 20:18, 20:19, 21:2, 21:6, 21:13, 21:15, 30:8, 30:11, 30:12, 30:16, 35:22, 35:24
**constructions** [4] - 16:19, 17:17, 26:4, 26:19

**contemplate** [1] - 35:24
**contend** [1] - 13:13
**contended** [1] - 20:21
**contending** [1] - 31:18
**contention** [2] - 26:15, 28:9
**contentions** [82] - 4:3, 4:14, 5:3, 5:11, 5:12, 5:17, 5:20, 5:23, 5:25, 6:2, 6:12, 6:15, 7:3, 9:21, 9:22, 10:23, 10:24, 11:15, 11:16, 12:17, 12:18, 12:21, 12:23, 13:5, 13:12, 13:15, 14:20, 14:23, 14:24, 15:1, 15:3, 15:4, 15:6, 15:14, 15:16, 15:22, 16:4, 16:7, 16:8, 16:10, 16:12, 16:15, 16:16, 16:21, 16:25, 17:1, 17:2, 17:7, 17:9, 17:12, 17:14, 17:16, 18:3, 18:17, 19:20, 19:22, 20:20, 20:23, 23:13, 23:14, 24:5, 24:17, 25:21, 26:1, 27:19, 29:10, 30:8, 30:11, 30:12, 30:16, 31:6, 31:25, 32:5, 34:24, 36:2
**context** [1] - 16:1
**Control** [16] - 13:21, 14:3, 14:5, 14:8, 14:10, 23:7, 29:1, 31:9, 31:16, 33:12, 33:16, 33:19, 33:21, 33:24, 33:25, 36:18
**control** [6] - 5:15, 7:23, 15:18, 15:20, 15:25, 32:8
**core** [2] - 11:7, 28:23
**CORPORATION** [1] - 1:6
**Corporation** [1] - 3:3
**correct** [3] - 3:24, 31:24, 33:8, 38:4
**counsel** [4] - 2:19, 3:8, 3:22, 35:6
**Counsel** [1] - 8:1
**count** [2] - 26:8, 26:9
**counting** [1] - 25:13
**country** [1] - 9:20
**couple** [4] - 4:1, 4:19, 19:14, 21:1
**course** [2] - 17:7, 20:10
**COURT** [25] - 1:1, 1:18, 2:20, 3:25, 6:8, 7:8, 8:1, 18:4, 18:13, 21:8, 22:22, 23:12, 23:20, 24:1, 24:11, 28:3, 30:25, 31:2, 32:2, 35:1, 35:14, 35:20, 36:5, 36:8, 36:22
**court** [3] - 3:6, 8:1, 21:8
**Court** [22] - 4:12, 4:20, 10:7, 10:10, 10:15, 11:24, 12:3, 16:5, 17:25, 18:15, 18:19, 19:12, 20:5, 21:13, 21:16, 22:20, 22:24, 23:22, 26:4, 26:5, 27:18, 38:13

**Courthouse** [1] - 2:20
**Courts** [5] - 8:25, 9:19, 17:21, 30:11, 30:14
**covered** [1] - 32:5
**crack** [1] - 8:23
**create** [4] - 10:11, 10:12, 10:19, 14:25
**creates** [1] - 10:11
**creating** [1] - 35:5
**CRR** [2] - 2:20, 38:12
**crystalize** [1] - 6:21
**CSR** [3] - 2:20, 38:12, 38:13
**cut** [2] - 12:8, 25:12
**Cutler** [2] - 2:14, 2:17

## D

**damages** [2] - 29:19, 29:22
**data** [3] - 19:19, 19:21, 32:18
**DATE** [1] - 38:12
**days** [1] - 4:19
**DC** [1] - 2:18
**deadline** [2] - 11:15, 16:14
**dealing** [1] - 18:20
**declaration** [1] - 29:24
**deemed** [2] - 16:21, 16:25
**default** [2] - 16:20, 16:24
**DEFENDANT** [1] - 2:10
**Defendant** [1] - 1:7
**defendant** [1] - 6:23
**defendant's** [3] - 12:6, 22:23, 31:4
**defendants** [4] - 5:18, 8:11, 9:2, 30:13
**defense** [7] - 4:12, 5:2, 6:16, 18:5, 31:5, 31:11, 31:20
**defenses** [4] - 6:14, 9:18, 12:13, 28:17
**defined** [1] - 21:3
**definition** [1] - 29:2
**deny** [1] - 17:25
**dependent** [1] - 35:22
**deposing** [1] - 32:22
**deposition** [4] - 8:18, 22:2, 22:12, 30:3
**depositions** [12] - 8:20, 8:23, 10:22, 11:12, 11:13, 17:19, 21:23, 21:25, 22:1, 22:5, 22:6, 30:2
**DeRouin** [2] - 2:3, 3:14
**described** [3] - 13:9, 27:22, 28:10
**description** [1] - 4:15
**designed** [2] - 6:23, 11:14
**detail** [1] - 23:25
**detailed** [1] - 11:10
**develop** [2] - 9:18, 12:13
**devices** [1] - 18:20
**Diagnostic** [1] - 11:25

**difference** [1] - 36:16
**differences** [1] - 20:23
**different** [49] - 5:13, 5:16, 6:4, 7:13, 7:18, 7:19, 7:22, 7:23, 7:24, 8:3, 8:6, 8:17, 10:2, 14:17, 15:8, 15:13, 15:15, 18:23, 23:16, 23:17, 25:14, 26:13, 26:15, 28:14, 28:15, 28:21, 29:5, 29:8, 29:12, 29:14, 31:6, 31:23, 32:14, 32:15, 32:20, 33:3, 34:1, 34:4, 34:8, 34:9, 34:10, 34:12, 34:15
**digitally** [1] - 38:7
**direct** [2] - 4:16, 24:2
**directed** [1] - 28:7
**discovery** [18] - 8:14, 10:11, 10:19, 10:20, 11:5, 11:19, 12:1, 12:12, 16:16, 17:18, 19:13, 20:2, 20:13, 24:20, 29:17, 30:6, 30:13
**discrete** [1] - 35:21
**discussed** [1] - 26:6
**dispositive** [1] - 10:13
**dispute** [1] - 34:14
**distinct** [1] - 26:23
**District** [8] - 2:20, 4:4, 4:7, 4:8, 6:25, 9:4, 9:19, 30:9
**district** [1] - 9:20
**DISTRICT** [3] - 1:1, 1:2, 1:18
**documents** [5] - 11:7, 11:8, 18:18, 20:6, 20:8
**done** [9] - 5:20, 7:3, 13:4, 13:6, 15:2, 19:21, 19:22, 33:9
**Dorr** [2] - 2:14, 2:17
**down** [12] - 6:23, 7:17, 19:10, 19:12, 19:24, 19:25, 21:14, 22:18, 26:8, 30:13, 35:10, 35:11
**draft** [1] - 16:19
**droop** [1] - 7:24
**dropping** [1] - 35:7
**due** [1] - 20:24

### E

**early** [1] - 6:21
**easy** [1] - 4:6
**effect** [1] - 9:1
**effectively** [4] - 6:12, 8:10, 8:12, 8:15
**effort** [1] - 10:7
**eight** [12] - 11:6, 11:20, 14:14, 16:16, 17:19, 20:6, 21:15, 25:1, 29:5, 29:18, 31:6, 34:4
**either** [8] - 25:4, 25:9, 25:10, 27:15, 32:9, 35:12, 36:13, 36:18

**element** [4] - 25:16, 28:13, 28:14, 33:2
**elements** [4] - 20:24, 28:7, 33:13, 33:17
**end** [7] - 9:14, 12:8, 14:16, 21:25, 22:2, 31:20, 31:22
**engineers** [1] - 11:13
**England** [1] - 21:24
**entire** [1] - 32:23
**entirely** [5] - 16:10, 24:8, 28:14, 28:18, 30:19
**entries** [1] - 24:18
**equally** [1] - 15:5
**equipment** [2] - 19:5, 26:22
**essentially** [1] - 24:19
**et** [1] - 3:3
**events** [1] - 16:2
**evolve** [1] - 17:6
**exactly** [1] - 5:20
**example** [7] - 5:14, 8:19, 15:18, 16:22, 21:21, 23:4, 32:22
**except** [1] - 25:20
**exchanged** [2] - 16:18, 17:17
**excluded** [3] - 16:5, 20:11, 35:25
**excuse** [1] - 18:5
**expect** [1] - 8:22
**expected** [1] - 22:8
**expert** [6] - 10:20, 11:17, 16:5, 16:7, 30:3
**experts** [2] - 11:9, 30:4
**explain** [4] - 12:24, 13:3, 23:10, 28:23
**expressed** [1] - 17:5
**extension** [3] - 11:15, 16:6, 34:22
**extent** [2] - 35:4, 36:3
**external** [18] - 18:24, 19:4, 25:5, 25:8, 26:10, 27:6, 27:9, 27:12, 27:15, 31:8, 31:10, 32:7, 32:11, 32:25, 33:2, 35:11, 36:13

### F

**fact** [7] - 4:21, 6:3, 10:19, 13:6, 15:1, 16:19, 17:4
**fair** [1] - 9:14
**fairness** [1] - 28:22
**far** [1] - 30:13
**features** [2] - 22:25, 28:8
**Federal** [1] - 6:18
**felt** [1] - 4:24
**FEREYDUN** [1] - 1:3
**few** [1] - 4:19
**fewer** [1] - 25:12
**Fifth** [1] - 2:11
**figure** [1] - 9:12
**file** [2] - 5:22, 27:20

**filed** [2] - 11:17, 12:18
**filing** [1] - 12:17
**final** [3] - 16:21, 17:1, 36:1
**finally** [2] - 9:13, 30:7
**finished** [2] - 21:24, 22:5
**first** [13] - 5:6, 6:11, 12:22, 18:14, 25:2, 32:4, 32:5, 32:24, 33:13, 35:5, 36:11
**fish** [2] - 12:8, 19:17
**fits** [1] - 20:22
**five** [2] - 4:22, 7:4
**FIVR** [6] - 11:11, 11:14, 18:22, 18:23, 29:20, 29:21
**FIVRs** [3] - 29:13, 29:15
**Flack** [2] - 2:7, 3:17
**focus** [2] - 5:19, 6:16
**focused** [1] - 28:20
**FOR** [3] - 1:2, 2:2, 2:10
**force** [1] - 10:14
**forced** [1] - 22:20
**foregoing** [1] - 38:4
**forth** [2] - 5:14, 16:22
**forthcoming** [1] - 29:17
**forward** [3] - 21:4, 22:16, 24:6
**forwarded** [1] - 22:24
**four** [14] - 7:23, 14:11, 14:12, 16:14, 25:8, 28:21, 31:21, 32:14, 32:16, 33:10, 34:1, 35:5, 35:18, 36:15
**fourth** [1] - 33:23
**friend** [1] - 19:14
**full** [1] - 22:1
**functionalities** [2] - 7:25, 8:3
**fundamentally** [1] - 17:15
**furniture** [3] - 24:19, 25:22, 28:11

### G

**gentlemen** [1] - 22:8
**Geringer** [2] - 2:2, 3:14
**given** [2] - 8:14, 23:1
**gosh** [1] - 21:18
**Gosh** [1] - 22:3
**Grant** [3] - 2:16, 3:20, 28:23
**grant** [2] - 23:22, 27:18
**granted** [1] - 16:6
**Graphics** [2] - 7:1, 9:24
**guess** [3] - 22:15, 22:21, 31:14

### H

**Hale** [4] - 2:14, 2:17, 3:19, 3:21
**half** [2] - 15:22, 25:13
**hear** [5] - 5:6, 8:2, 18:5, 21:20, 31:10
**hearing** [2] - 3:5, 27:19

**HEARING** [1] - 1:15
**help** [1] - 23:10
**Herbold** [1] - 2:11
**HERNANDEZ** [1] - 1:17
**Hernandez** [2] - 3:4, 3:25
**high** [1] - 7:15
**high-level** [1] - 7:15
**highlighted** [1] - 13:2
**highlighting** [1] - 13:17
**highly** [1] - 35:21
**Hirsch** [1] - 22:8
**Honor** [30] - 3:15, 3:18, 5:8, 5:13, 5:22, 6:7, 7:4, 10:5, 10:25, 12:15, 12:24, 15:10, 16:1, 17:7, 17:24, 18:10, 18:14, 19:18, 23:3, 23:10, 23:21, 27:23, 30:3, 30:17, 30:22, 33:6, 36:6, 36:21, 37:4, 37:5
**HONORABLE** [1] - 1:17
**hopefully** [1] - 7:10
**hoping** [2] - 5:2, 7:5
**Houston** [2] - 2:9, 3:16
**Howard** [5] - 2:6, 3:10, 18:8, 18:10, 36:6
**HVM** [1] - 26:18

### I

**idea** [1] - 27:5
**ideally** [1] - 27:9
**identified** [7] - 21:7, 21:11, 24:16, 24:18, 25:19, 25:21, 33:13
**identify** [5] - 3:6, 9:25, 13:12, 21:12, 24:25
**impact** [2] - 8:24, 30:6
**impede** [1] - 9:17
**important** [1] - 16:2
**impose** [1] - 10:6
**impression** [1] - 20:5
**improper** [1] - 15:6
**IN** [1] - 1:1
**inaudible** [3] - 7:25, 21:7, 36:20
**include** [4] - 13:15, 14:21, 22:25, 32:7
**included** [2] - 23:1, 29:21
**including** [4] - 6:18, 11:7, 11:12, 17:18
**incorrect** [1] - 29:18
**indicated** [3] - 5:13, 5:22, 17:8
**indicating** [1] - 4:23
**induce** [1] - 27:12
**inducement** [1] - 27:11
**information** [4] - 11:5, 29:18, 30:5, 34:23
**infringe** [2] - 19:2, 26:14
**infringement** [48] - 4:14, 5:3,

5:12, 5:17, 5:20, 5:23,
6:11, 6:15, 7:13, 7:21,
8:18, 8:21, 9:20, 9:22,
10:6, 10:24, 11:22, 12:7,
12:9, 12:18, 12:23, 13:2,
13:5, 13:8, 14:17, 14:21,
16:4, 16:7, 16:11, 16:15,
16:20, 16:25, 17:2, 18:1,
18:2, 18:16, 18:17, 19:3,
22:24, 23:13, 23:14, 26:13,
26:18, 26:20, 27:16, 29:6,
30:10, 30:19
**infringing** [1] - 27:17
**initial** [1] - 16:25
**input** [11] - 20:25, 21:1,
24:16, 25:10, 25:15, 26:10,
27:3, 32:21, 35:21, 36:16
**Input** [7] - 13:22, 14:14, 24:9,
29:2, 32:17, 34:3, 35:15
**inputs** [3] - 32:17, 33:4, 33:5
**instance** [4] - 8:17, 10:16,
13:18, 15:24
**instances** [2] - 28:11, 28:12
**instead** [1] - 18:1
**INTEL** [1] - 1:6
**Intel** [26] - 2:19, 3:3, 3:19,
3:21, 4:24, 5:6, 7:19, 8:15,
10:7, 10:15, 10:19, 11:13,
16:5, 17:15, 18:21, 19:23,
20:4, 20:14, 20:21, 21:14,
21:16, 21:17, 22:14, 27:11,
33:4, 34:25
**Intel's** [1] - 24:3
**Intellectual** [1] - 16:23
**intend** [2] - 6:13, 8:11
**intended** [2] - 32:6, 35:7
**interact** [1] - 34:8
**interesting** [1] - 21:5
**interfere** [2] - 6:13, 9:17
**invalidity** [3] - 10:23, 16:16,
17:16
**inventors** [2] - 8:20, 21:24
**IP** [1] - 28:23
**issue** [7] - 4:10, 5:10, 19:23,
22:7, 25:23, 26:25, 27:2
**issues** [9] - 4:1, 6:16, 6:17,
9:2, 10:11, 10:12, 19:25,
21:3, 34:10

### J

**James** [4] - 2:2, 2:3, 3:13,
3:14
**January** [2] - 19:22, 29:19
**Jeff** [8] - 3:12, 18:9, 21:22,
23:10, 23:21, 30:22, 32:1,
36:19
**Jeffrey** [1] - 2:2
**Joyce** [2] - 2:10, 3:22
**JOYCE** [1] - 3:24

**Jr** [1] - 2:7
**Judge** [5] - 3:4, 3:25, 9:3,
9:7, 9:10
**JUDGE** [1] - 1:18
**judgment** [1] - 10:20
**July** [1] - 11:6
**June** [2] - 17:4, 17:9
**jury** [1] - 19:11
**justify** [1] - 27:21

### K

**keep** [3] - 8:5, 20:16
**kind** [2] - 4:14, 22:15
**Klarquist** [3] - 2:3, 3:13
**knowing** [2] - 8:21, 10:17

### L

**labeled** [1] - 13:5
**labels** [1] - 13:23
**language** [6] - 6:20, 31:7,
31:11, 31:14, 32:10, 33:10,
33:14
**last** [3] - 4:18, 4:22, 23:2
**late** [2] - 30:21, 34:16
**latest** [1] - 6:6
**law** [2] - 30:9, 30:10
**leading** [1] - 16:3
**learning** [1] - 24:20
**least** [1] - 15:4
**leave** [3] - 26:1, 27:18, 27:21
**left** [1] - 7:17
**level** [1] - 7:15
**liability** [1] - 6:24
**lifeline** [1] - 23:22
**limit** [3] - 4:12, 5:2, 30:15
**limitation** [1] - 15:20, 15:25
**limitations** [10] - 7:15, 7:20,
8:7, 10:1, 10:5, 11:1,
13:14, 13:16, 13:24, 33:12
**limited** [2] - 6:6, 13:5
**limits** [3] - 6:10, 8:14, 8:15
**line** [7] - 3:22, 3:23, 12:4,
23:12, 26:17, 30:13, 30:17
**list** [1] - 22:17
**listed** [7] - 7:18, 13:20,
13:21, 14:1, 14:13, 15:7
**lists** [1] - 7:17
**litigation** [3] - 6:22, 17:21,
19:9
**live** [1] - 21:24
**LLP** [4] - 2:3, 2:8, 2:14, 2:17
**Load** [3] - 13:21, 14:13, 24:9,
29:1, 32:17, 34:3, 35:15
**load** [10] - 20:24, 20:25, 25:9,
25:15, 26:9, 27:2, 32:18,
32:21, 33:3, 35:21, 36:16
**local** [1] - 3:22
**located** [1] - 35:15

**London** [1] - 21:23
**Look** [1] - 9:10
**look** [14] - 9:14, 13:18, 14:18,
16:2, 20:25, 23:4, 24:8,
24:9, 26:16, 27:7, 28:19,
33:11, 36:11, 36:23
**looked** [2] - 4:23, 20:1
**looking** [3] - 19:16, 24:24,
31:4
**looks** [1] - 31:4
**lose** [1] - 9:13
**Love** [9] - 2:2, 2:7, 3:12,
3:17, 18:9, 21:22, 23:21,
30:22, 32:1
**love** [5] - 28:1, 28:5, 28:10,
28:20, 28:22
**LOVE** [12] - 3:12, 18:8,
23:21, 24:2, 24:12, 30:22,
31:1, 32:1, 32:3, 35:3,
35:19, 35:21

### M

**MA** [1] - 2:15
**main** [2] - 22:21, 23:4
**map** [1] - 18:16
**March** [2] - 1:5, 23:13
**MARCO** [1] - 1:17
**Marie** [1] - 2:10
**Markowitz** [1] - 2:11
**Mashood** [1] - 3:21
**mashood** [1] - 2:19
**match** [3] - 4:25, 23:13,
31:20
**material** [2] - 20:4, 29:19
**math** [4] - 28:22, 30:23, 31:3,
35:9
**matter** [7] - 4:2, 4:11,
28:22, 30:9, 35:9
**McAndrew** [3] - 2:6, 3:15,
3:17
**McLemore** [1] - 29:24
**mean** [8] - 13:11, 19:8, 20:6,
28:23, 31:11, 32:15, 36:12,
36:16
**meaningfully** [2] - 12:22,
15:2
**meet** [3] - 7:20, 13:13, 13:16
**meeting** [1] - 8:7
**meets** [1] - 15:25
**Memory** [2] - 7:1, 9:23
**mentioned** [2] - 19:14, 25:20
**merely** [1] - 13:7
**met** [3] - 10:1, 15:20, 28:13
**methodology** [6] - 14:19,
14:22, 14:24, 29:8, 29:9,
34:12
**Michael** [5] - 2:13, 3:19, 5:9,
27:23, 33:6
**Micro** [2] - 6:18, 6:20

**middle** [1] - 24:24
**might** [1] - 27:25
**minutes** [1] - 4:23
**mix** [1] - 31:20
**moment** [1] - 26:3
**Monday** [3] - 5:23, 12:17,
30:18
**month** [2] - 16:6, 19:19
**months** [8] - 11:6, 11:20,
16:14, 16:15, 16:16, 17:19,
20:6, 29:18
**most** [2] - 10:7, 24:3
**MOTION** [1] - 1:15
**motion** [9] - 4:12, 5:6, 16:12,
17:11, 17:25, 18:3, 25:24,
25:25, 27:20
**motions** [2] - 3:5, 10:13
**move** [1] - 4:10
**moving** [2] - 25:21, 28:13
**MR** [31] - 3:10, 3:12, 3:15,
3:18, 5:8, 6:9, 7:9, 8:4,
18:8, 18:10, 18:14, 21:12,
23:3, 23:17, 23:21, 24:2,
24:12, 27:23, 28:4, 30:22,
31:1, 32:1, 32:3, 33:6,
35:3, 35:19, 35:21, 36:6,
36:9, 37:4, 37:5
**MS** [1] - 3:24
**muffled** [1] - 21:9
**multiple** [11] - 6:17, 13:9,
13:13, 13:15, 16:22, 17:18,
18:21, 18:22, 19:1, 20:12,
32:17
**multiplied** [1] - 35:14
**must** [1] - 12:8
**mute** [1] - 18:11

### N

**name** [1] - 3:10
**Nancy** [1] - 38:11
**nancy** [1] - 2:20
**NANCY** [1] - 38:12
**narrow** [11] - 5:25, 6:17,
12:17, 20:20, 22:17, 24:21,
26:8, 30:8, 34:20, 35:10,
35:11
**narrowed** [3] - 12:22, 13:14,
30:19
**narrower** [1] - 34:11
**narrowing** [5] - 6:1, 12:3,
15:1, 24:23, 36:1
**nature** [1] - 5:11
**need** [6] - 21:9, 21:15, 21:18,
22:11, 22:13, 23:9
**needed** [1] - 22:3
**never** [1] - 35:7
**new** [17] - 6:4, 15:4, 15:7,
15:11, 16:10, 17:12, 18:1,
22:23, 24:8, 28:6, 28:7,

5

28:12, 30:19, 32:20, 33:5, 34:13
**next** [1] - 4:10
**night** [2] - 5:23, 12:18
**nobody** [1] - 22:9
**noise** [1] - 18:11
**non** [2] - 8:20, 21:23
**non-plaintiff** [2] - 8:20, 21:23
**none** [1] - 4:25
**normal** [3] - 8:14, 8:16, 20:10
**Northern** [7] - 4:4, 4:7, 4:8, 6:25, 9:4, 9:19, 30:9
**notations** [1] - 12:25
**note** [1] - 3:6
**notice** [2] - 5:18, 6:16
**November** [16] - 5:12, 6:12, 7:3, 11:18, 13:11, 14:19, 14:24, 15:13, 15:16, 15:22, 18:2, 23:2, 23:14, 28:9, 29:10, 34:16
**number** [13] - 7:4, 8:16, 17:22, 19:3, 25:11, 25:13, 25:17, 26:11, 27:25, 30:15, 34:13
**NW** [1] - 2:17

### O

**O2** [2] - 6:18, 6:20
**OF** [2] - 1:2, 1:16
**Official** [1] - 38:13
**once** [1] - 21:2
**one** [29] - 4:1, 4:3, 4:6, 13:25, 16:22, 18:25, 20:22, 22:8, 23:9, 23:23, 24:25, 25:6, 25:15, 25:20, 26:14, 27:1, 27:3, 28:13, 28:17, 29:15, 29:23, 31:5, 32:24, 33:1, 34:9, 34:13, 34:15, 36:7
**One** [1] - 2:8
**ones** [3] - 8:11, 9:13, 22:4
**ongoing** [4] - 19:13, 20:3, 20:13, 20:18
**oOo** [1] - 38:1
**operation** [1] - 29:20
**opinion** [1] - 37:1
**opportunity** [1] - 12:5
**opposite** [2] - 5:21, 7:3
**OR** [3] - 2:5, 2:12, 2:21
**oranges** [1] - 34:6
**OREGON** [1] - 1:2
**Oregon** [2] - 1:6, 38:13
**original** [9] - 5:1, 11:15, 18:17, 22:18, 24:17, 25:21, 34:19, 34:21, 38:6
**originally** [3] - 5:4, 15:19, 16:3
**ors** [5] - 13:2, 13:17, 26:24, 29:5, 32:6
**otherwise** [1] - 20:21

### P

**page** [6] - 6:22, 16:24, 17:10, 20:12, 20:22, 24:3
**pages** [1] - 11:8
**paper** [1] - 18:12
**papers** [1] - 5:14
**pare** [5] - 19:10, 19:12, 19:24, 19:25
**part** [7] - 4:19, 18:21, 24:20, 24:21, 27:10, 27:15, 27:16
**particular** [1] - 24:16
**particularly** [2] - 26:11, 30:23
**parties** [3] - 6:21, 17:8, 21:17
**partner** [1] - 28:23
**party's** [2] - 16:24, 17:1
**patent** [4] - 5:15, 7:16, 19:2, 23:24
**patentee** [2] - 12:4, 12:8
**patentee's** [1] - 12:6
**Path** [2] - 9:3, 9:4
**Patrick** [2] - 2:6, 3:16
**PC** [1] - 2:11
**PCU** [1] - 25:10
**Pennsylvania** [1] - 2:17
**people** [2] - 23:9, 27:12
**phone** [1] - 18:11
**pick** [2] - 34:18, 34:21
**Pickering** [2] - 2:14, 2:17
**picking** [1] - 4:21
**piece** [2] - 10:25, 33:4
**pin** [1] - 6:23
**place** [1] - 26:21
**plaintiff** [12] - 3:9, 4:20, 8:20, 9:6, 9:21, 9:24, 12:2, 12:4, 18:6, 18:7, 21:23, 35:17
**PLAINTIFF** [1] - 2:2
**plaintiff's** [1] - 6:24
**plaintiff-patentee** [1] - 12:4
**plaintiffs** [22] - 3:11, 3:13, 3:16, 4:13, 4:16, 5:19, 7:10, 7:11, 8:25, 10:17, 11:2, 13:13, 15:8, 16:6, 17:1, 23:22, 26:7, 28:9, 30:15, 31:17, 31:21, 35:4
**Plaintiffs** [1] - 1:4
**plaintiffs'** [8] - 4:3, 5:3, 5:12, 7:2, 17:11, 17:25, 31:25, 35:6
**plan** [1] - 27:20
**PLR** [1] - 18:18
**PLRs** [1] - 18:15
**plus** [1] - 32:11
**point** [8] - 5:17, 6:15, 6:20, 6:25, 10:4, 17:15, 22:20, 24:23, 29:11, 30:2, 30:23, 31:3, 34:24, 36:7, 36:10

**points** [5] - 6:5, 23:23, 28:1, 28:4
**Portland** [4] - 1:6, 2:5, 2:12, 2:21
**possibilities** [9] - 31:23, 35:6, 35:7, 35:8, 35:13, 35:16, 35:18, 35:23, 36:3
**possibility** [1] - 33:1
**potentially** [2] - 10:11, 15:4
**PowerPoint** [1] - 24:4
**precisely** [2] - 11:24, 17:20
**prejudice** [4] - 11:2, 21:21, 30:20, 34:25
**prepare** [3] - 6:14, 26:2
**preparing** [2] - 10:23, 28:17
**PRESENT** [1] - 2:19
**present** [6] - 3:6, 8:8, 11:3, 13:8, 14:20, 19:11
**presented** [5] - 7:14, 13:1, 15:8, 15:15, 34:16
**presenting** [2] - 8:10, 9:16
**presents** [1] - 34:10
**presiding** [1] - 3:4
**pressure** [1] - 24:21
**presumption** [2] - 16:20, 16:24
**pretty** [2] - 25:16, 37:1
**previously** [1] - 13:9
**primarily** [2] - 20:23, 25:15
**problem** [7] - 6:3, 12:15, 15:3, 15:5, 27:3, 27:4
**problems** [1] - 12:20
**proceeding** [1] - 10:5
**proceedings** [2] - 37:8, 38:5
**PROCEEDINGS** [1] - 1:16
**process** [3] - 10:16, 16:17, 19:10
**produce** [1] - 20:10
**produced** [7] - 11:7, 11:8, 11:10, 12:2, 18:18, 19:18, 29:19
**producing** [1] - 20:17
**product** [1] - 12:6
**production** [2] - 20:12, 20:15
**products** [2] - 29:21
**prohibited** [1] - 17:22
**Property** [1] - 16:23
**proposed** [8] - 12:21, 14:23, 15:4, 16:18, 17:12, 17:17, 22:16, 26:20
**prosecution** [1] - 19:11
**proverbial** [1] - 12:7
**provided** [1] - 10:2
**purport** [3] - 6:1, 12:19, 30:18
**purported** [4] - 13:1, 13:4, 13:10, 13:23
**purportedly** [1] - 13:14
**purporting** [2] - 15:20, 30:18

**pursue** [9] - 6:13, 8:11, 8:12, 8:22, 9:7, 10:8, 10:18, 11:6, 11:23
**pursuing** [1] - 10:20
**put** [5] - 6:16, 16:1, 19:19, 36:2, 36:20
**PWM** [1] - 23:8

### Q

**questions** [2] - 22:3, 31:3
**quite** [1] - 36:9
**quoting** [1] - 9:11

### R

**raise** [2] - 19:15, 36:7
**raised** [4] - 19:6, 19:23, 22:9
**raising** [1] - 24:23
**Rassam** [2] - 2:19, 3:21
**rationale** [1] - 10:4
**reached** [1] - 20:9
**reading** [1] - 35:5
**real** [1] - 11:22
**really** [5] - 4:24, 13:6, 24:25, 25:23, 27:9
**rearranged** [1] - 24:19
**rearranging** [1] - 28:11
**reason** [3] - 11:1, 13:25, 18:25
**reasonable** [1] - 12:5
**reasons** [1] - 6:11
**receive** [1] - 7:6
**received** [3] - 4:19, 11:14, 36:24
**recent** [1] - 24:4
**recently** [2] - 4:18, 29:11
**recess** [1] - 37:2
**recognize** [2] - 5:24, 19:10
**recognized** [2] - 8:25, 11:2
**recognizing** [2] - 12:15, 12:16
**record** [5] - 3:8, 17:12, 17:25, 35:17, 38:4
**red** [2] - 15:12, 15:23
**reduce** [2] - 9:9, 12:19
**refers** [1] - 26:18
**regards** [1] - 31:5
**regulation** [1] - 31:13
**regulator** [26] - 18:23, 18:24, 25:3, 25:5, 25:8, 26:10, 27:6, 27:10, 27:12, 27:15, 31:7, 31:8, 31:9, 31:10, 31:15, 31:16, 32:6, 32:7, 32:12, 33:1, 33:2, 34:7, 35:12, 36:13, 36:14
**Regulator** [15] - 13:20, 14:1, 14:4, 14:6, 14:9, 23:6, 28:25, 31:7, 31:15, 33:11, 33:15, 33:18, 33:21, 33:24,

36:17
**regulators** [2] - 18:21, 19:5
**related** [2] - 29:19, 29:22
**relating** [1] - 11:10
**remainder** [1] - 12:12
**reply** [2] - 29:25, 30:24
**report** [1] - 30:4
**reporter** [3] - 3:6, 8:2, 21:9
**REPORTER** [3] - 2:20, 8:1, 21:8
**Reporter** [1] - 38:13
**representative** [1] - 32:18
**representing** [3] - 3:11, 3:12, 3:15
**request** [1] - 17:24
**requested** [1] - 18:3
**require** [5] - 6:21, 18:1, 30:10, 30:12, 30:14
**required** [8] - 7:16, 9:20, 12:16, 16:3, 20:16, 22:6, 34:18, 34:20
**resolve** [1] - 4:1
**respect** [4] - 12:9, 24:17, 32:3, 32:4
**respectfully** [1] - 28:21
**respond** [1] - 27:25
**response** [5] - 4:23, 10:23, 22:21, 22:23, 28:1
**restructured** [2] - 13:7
**review** [2] - 12:5, 16:6
**reviewed** [2] - 11:9, 30:1
**revise** [1] - 17:2
**rewrite** [3] - 16:12, 17:14, 34:24
**Riverway** [1] - 2:8
**RMR** [2] - 2:20, 38:12
**Ronald** [1] - 2:7
**Ronnie** [2] - 3:17, 23:10
**Room** [1] - 2:21
**roughly** [1] - 11:20
**routinely** [1] - 30:14
**row** [4] - 24:9, 24:24, 32:3
**Rowan** [3] - 2:16, 3:20, 28:23
**rules** [5] - 4:4, 4:7, 4:9, 30:10, 35:24
**rustling** [1] - 18:11

**S**

**Salmon** [1] - 2:4
**sands** [1] - 17:21
**scenarios** [3] - 26:13, 32:14, 32:15
**second** [8] - 10:4, 15:3, 16:13, 26:17, 28:19, 29:16, 33:17
**section** [1] - 23:7
**see** [5] - 13:19, 14:17, 15:14, 23:5, 26:16
**seeking** [1] - 16:12

**select** [2] - 11:5, 18:2
**send** [1] - 22:16
**senior** [1] - 11:13
**sense** [2] - 8:4, 18:19
**sensed** [2] - 24:13, 24:15
**sent** [1] - 4:14
**separate** [2] - 7:16, 30:1
**separately** [1] - 34:2
**serve** [2] - 26:1, 27:19
**served** [1] - 7:10
**set** [9] - 3:5, 5:14, 5:23, 13:12, 15:24, 16:21, 18:17, 28:17, 29:14
**sets** [2] - 13:15, 34:1
**seven** [2] - 25:14, 26:8
**shall** [1] - 16:25
**Shared** [2] - 7:1, 9:23
**sheer** [1] - 25:11
**shifting** [1] - 17:21
**shortly** [1] - 37:1
**show** [4] - 17:2, 17:13, 22:17, 29:8
**showing** [1] - 15:23
**shown** [3] - 13:17, 14:2, 15:19, 15:21, 34:14
**shows** [6] - 7:12, 7:14, 15:11, 15:18, 29:23, 29:25
**side** [2] - 29:3, 29:4
**signature** [3] - 38:6, 38:7
**signed** [1] - 38:7
**significant** [5] - 10:6, 10:13, 30:20, 34:5, 34:25
**significantly** [4] - 15:6, 25:12, 34:11, 34:24
**signing** [1] - 38:3
**similar** [1] - 11:25
**simple** [2] - 26:24, 27:2
**simplify** [1] - 25:23
**single** [4] - 8:18, 13:12, 30:4, 34:15
**situation** [3] - 12:1, 20:14, 27:15
**six** [2] - 5:16, 7:22
**slide** [19] - 7:12, 12:24, 12:25, 13:19, 14:18, 15:7, 15:10, 15:17, 15:19, 15:23, 28:6, 28:19, 29:9, 31:4, 33:9, 34:14, 36:11
**slides** [1] - 7:5
**small** [2] - 25:16, 26:11
**software** [1] - 12:6
**soon** [1] - 27:21
**sorry** [4] - 8:5, 18:6, 18:9, 18:11
**sounding** [1] - 21:9
**sounds** [1] - 23:14
**source** [9] - 11:8, 12:2, 12:5, 19:20, 19:21, 20:1, 20:2, 20:8, 30:1

**Sparkman** [1] - 2:3
**specific** [6] - 9:18, 9:21, 12:9, 12:13, 15:18, 20:24
**specifically** [3] - 12:11, 17:5, 30:12
**specifications** [1] - 11:10
**specs** [1] - 27:13
**spent** [1] - 19:24
**standard** [1] - 17:8
**standpoint** [1] - 23:18
**start** [5] - 4:6, 6:5, 9:12, 21:10, 28:4
**starting** [1] - 3:9
**State** [1] - 2:14
**statement** [2] - 22:2, 22:23
**STATES** [2] - 1:1, 1:18
**states** [1] - 16:24
**States** [1] - 2:20
**status** [2] - 9:6, 17:4
**still** [5] - 12:3, 18:8, 20:2, 20:3, 35:18
**stop** [1] - 19:16
**Straight** [2] - 9:3, 9:4
**Street** [2] - 2:4, 2:14
**structures** [1] - 29:15
**stuff** [1] - 20:17
**subject** [1] - 16:11
**submission** [3] - 4:19, 6:6, 24:4
**submit** [6] - 8:9, 9:21, 11:21, 16:3, 16:8, 25:25, 30:18
**submitted** [10] - 5:1, 7:4, 7:6, 8:16, 16:9, 16:10, 16:15, 17:16, 26:4, 36:25
**sufficient** [1] - 11:4
**suggest** [1] - 5:19
**suggested** [1] - 4:20
**suggesting** [1] - 35:17
**suggestion** [1] - 29:16
**Suite** [3] - 2:4, 2:9, 2:12
**sum** [1] - 22:15
**summary** [3] - 5:5, 10:20, 20:22
**summersgill** [1] - 2:13
**SUMMERSGILL** [9] - 3:18, 5:8, 6:9, 7:9, 8:4, 27:23, 28:4, 33:6, 37:4
**Summersgill** [8] - 3:19, 5:9, 19:14, 21:20, 22:8, 27:24, 33:7, 35:4
**Summersgill's** [1] - 36:10
**supplement** [2] - 17:11, 17:25
**support** [1] - 27:21
**supporting** [1] - 25:24
**switched** [1] - 28:18
**system** [6] - 9:15, 18:21, 22:15, 27:7, 27:10, 29:20
**Systems** [1] - 11:25

**T**

**TABAIAN** [1] - 1:3
**Tabaian** [1] - 3:3
**table** [1] - 36:3
**technical** [6] - 11:7, 11:8, 11:17, 16:7, 23:9, 23:23
**TELEPHONIC** [1] - 1:15
**terms** [14] - 10:22, 16:18, 17:17, 21:2, 21:12, 21:13, 21:15, 21:16, 21:18, 21:20, 22:18, 23:4, 29:16
**terrific** [1] - 27:20
**tester** [1] - 26:18
**testing** [3] - 19:5, 26:21, 26:22
**THE** [28] - 1:1, 1:2, 1:17, 2:2, 2:10, 3:2, 3:25, 6:8, 7:8, 8:1, 18:4, 18:13, 21:8, 22:22, 23:12, 23:20, 24:1, 24:11, 28:3, 30:25, 31:2, 32:2, 35:1, 35:14, 35:20, 36:5, 36:8, 36:22
**theme** [1] - 19:1
**theories** [74] - 4:13, 4:15, 4:21, 4:24, 4:25, 5:1, 5:2, 5:13, 6:1, 6:3, 6:4, 6:11, 6:13, 6:21, 6:24, 7:13, 7:17, 7:18, 7:21, 8:9, 8:10, 8:12, 8:16, 8:17, 8:18, 8:21, 9:17, 9:18, 10:6, 10:17, 10:21, 11:3, 11:5, 12:19, 13:2, 13:8, 13:9, 13:10, 13:12, 13:15, 13:24, 14:11, 14:12, 14:14, 14:17, 14:20, 14:21, 15:7, 15:8, 15:14, 15:21, 16:11, 18:1, 18:2, 19:3, 19:6, 19:8, 22:4, 22:24, 23:1, 25:14, 28:6, 29:6, 29:9, 29:12, 30:20, 32:24, 32:25, 33:3, 34:13, 34:19, 34:21
**theory** [17] - 12:7, 12:9, 13:18, 13:25, 14:14, 14:15, 16:18, 26:20, 26:23, 28:20, 30:4, 32:20, 32:23, 32:24, 33:5, 33:13, 36:10
**they've** [16] - 7:18, 7:21, 11:2, 11:4, 11:12, 13:4, 13:6, 13:7, 14:13, 14:25, 15:24, 27:4, 29:25, 33:12, 34:22
**third** [5] - 10:25, 19:7, 26:17, 33:20
**Third** [1] - 2:21
**thornier** [1] - 4:11
**thorny** [2] - 4:2, 5:10
**thousand** [1] - 20:12
**thousand-page** [1] - 20:12
**Three** [1] - 8:3

**three** [23] - 4:13, 4:16, 4:21, 4:24, 5:1, 6:1, 6:10, 7:24, 11:12, 12:19, 13:1, 13:5, 13:10, 15:21, 16:6, 18:2, 24:5, 26:9, 26:15, 34:18, 34:20, 34:21
**three-month** [1] - 16:6
**titled** [1] - 38:5
**today** [3] - 7:6, 20:12, 36:24
**Todd** [2] - 2:16, 3:20
**top** [12] - 7:14, 11:14, 13:23, 14:1, 14:2, 14:4, 14:7, 15:19, 33:14, 33:15, 33:18, 33:21
**Townshend** [1] - 16:22
**TRANSCRIPT** [1] - 1:16
**transcript** [3] - 17:10, 38:4, 38:6
**trial** [2] - 8:9, 10:9
**tried** [3] - 17:13, 18:16
**trim** [1] - 23:8
**trolling** [2] - 12:7, 19:16
**try** [3] - 8:5, 17:6, 22:17
**trying** [13] - 19:1, 19:9, 19:12, 19:25, 20:3, 23:6, 23:23, 25:25, 27:4, 27:14, 36:2, 36:19
**turn** [6] - 7:9, 7:12, 12:23, 15:10, 15:17, 28:5
**turning** [1] - 31:24
**two** [32] - 8:20, 9:9, 9:11, 11:12, 11:13, 12:20, 14:13, 16:15, 19:3, 21:16, 21:23, 24:14, 25:3, 31:23, 32:4, 32:5, 32:6, 32:12, 32:15, 32:23, 33:3, 33:5, 34:13, 35:5, 35:6, 35:8, 35:11, 35:13, 35:14, 35:16
**TX** [1] - 2:9
**type** [1] - 17:20

## U

**ultimately** [4] - 9:8, 10:3, 10:17, 11:17
**under** [9] - 13:20, 13:21, 14:13, 31:6, 31:8, 32:16, 34:3, 36:12
**understood** [1] - 28:24
**unfair** [1] - 17:15
**unfairly** [1] - 9:1
**United** [1] - 2:20
**UNITED** [2] - 1:1, 1:18
**up** [13] - 4:25, 8:5, 9:13, 9:14, 14:16, 14:22, 16:3, 22:13, 29:5, 29:7, 31:20, 31:22, 34:3

## V

**variation** [1] - 32:13
**variations** [3] - 19:1, 26:9, 32:12
**various** [1] - 8:7
**versions** [1] - 24:14
**versus** [1] - 3:3
**VIN** [2] - 24:10, 25:10
**voice** [1] - 8:5
**Voltage** [7] - 13:22, 14:13, 24:9, 29:2, 32:17, 34:3, 35:15
**voltage** [37] - 18:21, 18:23, 18:24, 19:4, 20:25, 21:1, 24:12, 24:13, 24:14, 24:15, 25:5, 25:8, 25:9, 25:15, 26:9, 26:10, 27:2, 27:6, 27:10, 27:12, 27:15, 31:8, 31:10, 31:13, 32:7, 32:11, 32:18, 32:21, 32:25, 33:2, 33:4, 34:7, 35:11, 35:21, 36:14, 36:16
**VOUT** [1] - 25:10
**vs** [1] - 1:5

## W

**WALKER** [1] - 38:12
**Walker** [2] - 2:20, 38:11
**wants** [2] - 27:7
**warranted** [1] - 6:10
**Washington** [1] - 2:18
**wasted** [1] - 10:8
**watermelons** [1] - 34:6
**waters** [1] - 12:7
**ways** [2] - 26:15, 34:9
**week** [1] - 22:25
**whole** [4] - 27:8, 28:15, 32:19, 33:5
**willing** [2] - 35:10
**Wilmer** [4] - 2:14, 2:17, 3:19, 3:21
**word** [2] - 23:18, 23:19
**works** [1] - 6:7
**worried** [1] - 21:21
**Wright** [2] - 2:8, 3:16

## Y

**year** [2] - 12:1, 23:2
**yourself** [1] - 3:7

## Z

**zones** [1] - 18:23
**Zubler** [3] - 2:16, 3:20, 20:7